# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF GEORGIA, *et al*,<br><br>        Plaintiffs,<br>        v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>        Defendant. | Case No.  1:21-CV-3138 (TNM)<br><br>**DECLARATION OF**<br>**JOHN A. RUSS, IV** |

I, John Albert Russ, IV, declare as follows:

1.      I am a deputy chief in the Voting Section at the U.S. Department of Justice, Civil Rights Division.  I have been in the Division since September 1999 and in the Voting Section specifically since May 2002.

2.      My duties include, among other things, supervising litigation, including the United States' lawsuit under Section 2 of the Voting Rights Act over SB 202, a law passed by the State of Georgia in 2021.  *See United States v. State of Georgia*, 1:21-cv-02575 (N.D. Ga., complaint filed June 25, 2021); *In re: Georgia Senate Bill 202,* 1:21-mi-55555 (N.D. Ga.) (consolidating six cases challenging SB 202 for discovery purposes including the United States lawsuit).  This case is ongoing, with the end of discovery currently scheduled for February 2023.

3.      I make this declaration based upon my personal knowledge and information available to me in my official capacity.  I have personally reviewed the Civil Rights Division's withholdings pursuant to Exemption 5 in productions in this case.

4.      The purpose of this declaration is to explain the discovery process and court orders in the

Voting Rights Act Section 2 litigation filed by the Department against the State of

Georgia, the United States' experience in conducting voting rights litigation such as the

Georgia case, as well as the harms that would be caused by releasing privileged

information that has been redacted or withheld in this FOIA litigation.

The <em>United States v. Georgia</em> Litigation and Relevant Orders

5.      On June 25, 2021, pursuant to its authority to enforce the Voting Rights Act, 52 U.S.C.

§ 10308(d), the United States filed a complaint in the Northern District of Georgia

alleging that several defendants (the State of Georgia, the Georgia State Election Board,

and the Georgia Secretary of State) had violated Section 2 of the Voting Rights Act with

the enactment of Georgia Senate Bill 202.  Seven other plaintiff groups also sued Georgia

officials in the Northern District of Georgia over the passage of SB 202, with the first

lawsuit filed on March 25, 2021, the same day the law was signed by the governor.  *See*

*New Georgia Project, et al. v. Brad Raffensperger, et al.*, 1:21-cv-1229 (N.D. Ga.,

complaint filed Mar. 25, 2021).  All eight cases are assigned to the Honorable J.P. Boulee

in the Northern District of Georgia.

6.      Many of the other lawsuits challenge provisions of SB 202 that overlap with or are the

same as those provisions challenged by the United States, and five of the groups also

brought claims under the Voting Rights Act.

7.      In Judge Boulee's standing order issued in *United States v. Georgia* and other cases, the

court encouraged the parties to take steps, such as scheduling conferences with the court,

to promote the "speedy, just and efficient resolution of cases."  *See* Russ Decl. Ex. 1 at

2

14, Standing Order Regarding Civil Litigation for Cases Proceeding Before the Honorable J.P. Boulee (June 29, 2021).

8.    On July 28, 2021, plaintiffs' counsel in various of the cases challenging Georgia's SB 202 exchanged an email confirming that multiple plaintiff groups, including the United States, agreed that they "share a common interest in the successful prosecution of this litigation, and that they may share (but are not required to share) privileged communications and other litigation material between and among them without waiving the attorney-client privilege, the work product protection or any other privilege or protection."  *See* Russ Decl. Ex. 2, at 8, Email from Ezra Rosenberg (July 28, 2021).

9.    The July 2021 email included counsel for the following seven cases, and noted that the common interest agreement included "any other counsel associated with them, in the suits they have filed challenging the Georgia law known as SB 202":  the *New Georgia Project v. Raffensperger*, No. 1:21-cv-1229; *Georgia NAACP v. Raffensperger*, No. 1:21-cv-1259 (N.D. Ga., complaint filed Mar. 28, 2021); *the Sixth District of the AME Church v. Kemp*, No. 1:21-cv-1284 (N.D. Ga., complaint filed Mar. 29, 2021); *AAAJ v. Raffensperger*, No. 1:21-cv-1333 (N.D. Ga., complaint filed April 1, 2021); *VoteAmerica v. Raffensperger*, No. 1:21-cv-1390 (N.D. Ga., complaint filed April 7, 2021); the *Concerned Black Clergy of Metro Atlanta v. Raffensperger,* No. 1:21-cv-1728 (N.D. Ga., complaint filed April 27, 2021); and *United States v. Georgia*, No. 1:21-cv-2575.  *See* Russ Decl. Ex. 2, at 8, Email from Ezra Rosenberg (July 28, 2021).

10.   On February 10, 2022, the United States and plaintiffs from each of the cases challenging SB 202 memorialized the previously-entered common interest agreement in a more formal, written document signed by counsel for each plaintiff group.  *See* Russ Decl. Ex.

3

3, Agreement Regarding Common Interest and Disclosure of Information.[1]  The affected cases included the seven identified in the preceding paragraph, as well as the *Coalition for Good Governance v. Raffensperger*, No. 1:21-cv-2070 (N.D. Ga., complaint filed May 17, 2021).

11.   On December 23, 2021, after rejecting several motions to dismiss, the district court consolidated for discovery purposes five other cases challenging SB 202 with the case filed by the United States, under the umbrella of the new consolidated case captioned as *In Re Georgia Senate Bill 202*, No. 1:21-mi-55555-JPB (N.D. Ga.).[2]  The district court also directed the two unconsolidated cases challenging SB 202 to coordinate with the consolidated plaintiff groups on discovery.[3]  *See* Russ Decl. Ex. 4, at 9, Order.   In consolidating the six cases, the Court considered "the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."  *Id.* at 7 (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).  The Court noted that these cases

---

[1]  The February 2022 agreement (Russ Decl. Ex. 3) included two attachments:  the July 2021 email between the private parties and the United States (attached separately here as Russ Decl. Ex. 2) and an August 2021 agreement on common interest and confidentiality among some of the private plaintiffs.  Because the United States is not a party to the August 2021 agreement, the United States has not attached that document to this declaration.

[2]  The consolidated cases are *The New Georgia Project v. Raffensperger*, No. 1:21-cv-1229; *Georgia State Conference of the NAACP v. Raffensperger*, No. 1:21-cv-1259; *Sixth District of the AME Church v. Kemp*, No. 1:21-cv-1284; *Asian Americans Advancing Justice-Atlanta v. Raffensperger*, No. 1:21-cv-1333; *Concerned Black Clergy of Metropolitan Atlanta, Inc. v. Raffensperger*, No. 1:21-cv-1728; and *United States v. Georgia*, No. 1:21-cv-2575.

[3]  The additional unconsolidated cases are *VoteAmerica v. Raffensperger*, No. 1:21-cv-1390; and *Coalition for Good Governance v. Raffensperger*, No. 1:21-cv-2070.

"involve virtually identical defendants and mostly the same facts and legal issues." *Id.* at

7. In particular, "allegations of race discrimination arguably predominate the

complaints" in the cases being consolidated. *Id.* The Court said it would decide at a

"later date whether consolidation for additional purposes is warranted." *Id.* at 8 n.2.

Further, the Court cited cases that make clear that one of the purposes of consolidation

under Federal Rule of Civil Procedure 42 is to eliminate repetition and expedite trial. *Id.*

at 6. The court ordered all parties to conduct a joint conference under Rule 26(f), and

ordered the parties in the consolidated cases to file a single Rule 26(f) Report. *Id.* at 9.

12.     Pursuant to the court's order, on January 21, 2022, the parties in the consolidated cases

filed a Joint Preliminary Report and Discovery Plan.

13.     On February 1, 2022, the Court issued its scheduling order. The order placed limits on

discovery that require the consolidated plaintiffs to coordinate and cooperate on written

discovery requests and depositions, among other things. For example, the consolidated

plaintiffs "may take a total of sixty fact witness depositions, plus one deposition of each

expert witness" and are limited to 25 interrogatories on each County Defendant. *See*

Russ Decl. Ex. 5, Scheduling Order at 3 (Feb. 1, 2022). The Court further "encourage[d]

the parties to bear in mind Rule 1's admonition of a 'just, speedy, and inexpensive

determination of every action. . . .'" *Id.* at 4.

14.     In the interests of efficiency and to avoid duplication in discovery requests on State

Defendants, on February 14, 2022, the Consolidated Plaintiffs served a joint set of

requests for production of documents on the state defendants in the SB 202 litigation.

15.     Following the Court's consolidation order, the parties in the consolidated case negotiated

the terms of a joint stipulation governing discovery and electronically stored information.

*See* Russ Decl. Ex. 6, Consent Motion for Entry of ESI Order.  The March 18, 2022 joint stipulation was agreed to by the state defendants (including the State of Georgia and Secretary of State Raffensperger) and provides the following:  "For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged *on or after* March 25, 2021, the date on the which the first of the related cases was filed, the Parties agree that they do not need to collect, review, or produce such materials created by and, if shared with any other(s), exchanged *solely among*: (1) attorneys for any of the Plaintiffs in this case (and their staff); or (2) attorneys for any of the Defendants in this case (and their staff)."[4]  *See id*. at p. 6, ¶ 1.

16.     On March 21, 2022, the Court granted the parties' consent motion for entry of the agreed upon ESI order.  *See* Russ Decl. Ex. 7, Order.

<u>Description of the FOIA Request at Issue</u>

17.     Counsel for the State of Georgia and the Georgia Secretary of State sent a Freedom of Information Act request dated August 31, 2021, to the Department of Justice for communications between the Department of Justice and 62 entities, almost all of whom are plaintiffs or plaintiffs' counsel in the SB 202 litigation in the Northern District of Georgia.  On December 1, 2021, the State of Georgia and Secretary Raffensperger filed a lawsuit pursuant to the Freedom of Information Act with this Court to enforce that FOIA request.

---

[4] The State of Georgia, therefore, also benefits from this agreement, in that it does not have to produce communications or create a privilege log for any communications on or after March 25, 2021, among attorneys for the various defendants, including the intervenor defendants, in the SB 202 litigation.

18.     Forty-five of the 62 entities listed in the FOIA request are plaintiffs or plaintiffs' counsel

        in the consolidated SB 202 litigation, *In re Georgia Senate Bill 202*.  An additional 11 of

        the 62 entities are plaintiffs or plaintiffs' counsel in the related cases*, VoteAmerica v.

        Raffensperger*, 1:21-cv-1390 (N.D. Ga.) and *Coalition for Good Governance v.

        Raffensperger*, 1:21-cv-2070 (N.D. Ga.).  Two additional entities were previously

        involved with the consolidated lawsuits but are no longer involved (the New Birth

        Missionary Baptist Church was a named plaintiff in *Concerned Black Clergy v.

        Raffensperger*, No. 1:21-cv-1728 and the law firm Perkins Coie previously represented

        plaintiffs in *The New Georgia Project v. Raffensperger*, No. 1:21-cv-1229).  Another

        group, Arc Georgia, is not explicitly a named plaintiff, but it appears to be affiliated with

        the named plaintiff, Arc of the United States, in the case *Sixth District of the AME

        Church v. Kemp*, No. 1:21-cv-1284, and Arc Georgia's work is described in the *AME*

        complaint.  Only three of the 62 entities are not a party or counsel in the eight cases

        challenging SB 202 (Fair Fight, Care in Action, Inc., and Stacey Abrams).  The

        documents at issue here do not involve these three entities or individuals.[5]

19.     The Freedom of Information Office of the Civil Rights Division responded to the State's

        FOIA request, and the Voting Section, including myself, worked with the FOIA office as

        it prepared its response.

20.     The request sought communications between the Department and 62 non-governmental

        entities about Georgia's Election Integrity Act of 2021 (SB 202), communications

        between Departmental staff and members of Congress (or their staff) regarding SB 202,

---

[5]  The Civil Rights Division documents at issue here also do not include any communications
with members of Congress.

and internal guidance documents that the Department uses to determine when a state

election law violates the VRA.

21.     On June 3, 2022, the parties filed a joint status report in the present FOIA case.  The

report notes that two components of the Department processed potentially responsive

records:  the Office of Information Policy (OIP) and the Civil Rights Division (CRT).  As

described in that status report, OIP produced 21 pages of responsive, non-exempt records

to Plaintiffs and CRT produced 990 pages of responsive, non-exempt records to

Plaintiffs.  The Department also withheld portions of these records pursuant to FOIA

exemptions 5, 6, and 7(C).

22.     Plaintiffs have challenged the Department's assertion of FOIA Exemption 5 "based on

the deliberative process privilege and/or the attorney work product doctrine for

communications with entities outside the Executive Branch."  *See* Joint Status Report,

ECF No. 12, at 2.

### Withholding of Department of Justice Records under FOIA Exemptions

23.     I understand that it is the Department's assertion of FOIA Exemption 5, 5 U.S.C.

§ 552(b)(5), that Plaintiffs challenge in this case.[6]

---

[6]  The plaintiffs also challenged the adequacy of CRT's and OIP's search, but that topic will not be addressed in this declaration.  I would also note that the State of Georgia has discovery requests similar to the FOIA request here pending in the SB 202 litigation, and in that litigation, the United States is producing responsive non-privileged documents.  For example, state defendants' request for production number 4 in the SB 202 litigation asks for "All communications exchanged between DOJ personnel and any outside entity or individual discussing SB 202."  Pursuant to the ESI agreement in the SB 202 litigation, the United States is not producing in that case communications between plaintiffs' counsel created on or after March 25, 2021.

24.    Exemption 5 exempts from disclosure: "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date the records were requested."  5 U.S.C. § 552(b)(5).  Consequently, Exemption 5 permits the withholding of all or portions of any documents that are subject to the deliberative process privilege or another litigation privilege.  In addition to the deliberative process privilege, the Department invoked the attorney work-product and common interest doctrines to withhold documents or portions of documents.

25.    The United States shares a common interest with the plaintiffs in the five other consolidated cases as well as plaintiffs in two unconsolidated cases that also challenge SB 202 ("Common Interest Group").  The Common Interest Group shares a common interest in enforcing the U.S. Constitution and federal voting rights laws to protect the right to vote.  The Common Interest Group also shares a common interest in ensuring that the State of Georgia complies with its obligations under the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution, Section 2 of the Voting Rights Act, the Americans with Disabilities Act, and other federal voting rights laws.

26.    In the Voting Rights Act enforcement action in the Northern District of Georgia, the United States contends that SB 202's challenged provisions were adopted with the purpose of denying or abridging Black citizens' equal access to the political process, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.  Because of the discriminatory harms that the challenged provisions of SB 202 have on minority voters,

the Common Interest Group, including the United States, also shares an interest in prevailing in their lawsuits to enjoin the discriminatory provisions of SB 202.

27.    The common interest doctrine maintains the protection of the work product doctrine when attorney work product is shared with those who share the common interest.  The common interest doctrine also protects documents shared with third-parties which would otherwise be protected by the work-product doctrine.  *See United States v. Deloitte LLP*, 610 F.3d 129, 141 (D.C. Cir. 2010); *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 137 (D.D.C. 2019).

28.    The work-product doctrine protects work product of Department attorneys and those working under the attorneys' direction.  The material withheld in this case comprises attorney work-product privileged material exchanged within the Common Interest Group. The withheld material was created in anticipation of litigation (specifically, the ongoing SB 202 litigation).  Indeed, all of the Departmental records at issue in the current FOIA litigation were created on or after the day that the United States filed its lawsuit against the State of Georgia, and the withheld information thus relates to litigation that was ongoing at the time.  These records include documents discussing legal strategy, potential witnesses, types of discovery needed, division of labor in a case that would likely be consolidated, and the efficient presentation of the case.  The documents also include legal research and attorney notes in furtherance of the ongoing litigation concerning SB 202, and related communications among Department attorneys and the Common Interest Group regarding litigation strategy after the United States had commenced its litigation challenging aspects of SB 202.  The emails and other documents at issue were prepared by attorneys for the United States or attorneys for the Common Interest Group and

include those attorneys' mental impressions, conclusions, opinions, and legal theories concerning positions that might be taken in the litigation.

29.     In addition, the documents withheld or redacted in this FOIA case include discussions with the Common Interest Group in the SB 202 case about witnesses and questions of strategy, as counsel for the United States carefully consider the presentation of its case before the district court.  The ability to coordinate with other plaintiffs allows counsel for the United States to consider steps that will promote the most efficient and effective presentation of its case without needlessly burdening the judge with duplicative testimony, or unnecessarily burdening witnesses with uncoordinated outreach or questioning.  To make these decisions, Department attorneys must be able to have free and confidential communication with counsel for the other plaintiffs challenging SB 202.

30.     Privileged communications among the Common Interest Group are necessary to efficiently and effectively litigate the SB 202 litigation.  Under the orders issued by the District Court for the Northern District of Georgia, the Common Interest Group must work together on discovery, which necessitates coordinating legal strategy and advice between and among the members of the Common Interest Group.  For example, the consolidated plaintiffs jointly drafted discovery requests, and joint filings with the District Court for the Northern District of Georgia.

31.      Public disclosure of the withheld material here, which is protected by the attorney work-product privilege, the deliberative process privilege, and the common interest doctrine, would have articulable harm.  That harm would include hampering the ability of the United States and other plaintiff groups, including both the consolidated and unconsolidated plaintiffs, to coordinate various aspects of discovery to avoid duplication

and confusion, having a chilling effect on the coordination efforts of the Common

Interest Group in the ongoing litigation, and reducing the efficiency of the entire

litigation process in the District Court for the Northern District of Georgia.

32. In fact, being required to turn over information withheld in the documents at issue here

would reveal litigation strategy decisions about matters such as witnesses in the SB 202

case, as well as attorney work product on questions to ask of those witnesses.  It would

also reveal legal research shared among the parties about issues relevant to this case.  The

communications at issue occurred while the Common Interest Group worked together to

ensure that individual witnesses were not being approached by multiple sets of plaintiffs'

counsel and to identify potential legal issues that could well require briefing.  Revealing

these communications would not only harm future cooperation among the plaintiffs but

also would provide insight to the SB 202 defendants on the Department's litigation

strategy in ongoing litigation, which is information protected by the attorney work

product and deliberative process privileges in this case.

33. Further, it would harm the efficient operation of the District Court in the Northern

District of Georgia, by preventing efforts to reduce duplication of witnesses, discovery

requests, filings, legal arguments, and court proceedings, if the United States had to

reveal the substance of its communications with private plaintiffs in the Common Interest

Group.

34. In large state-wide voting rights cases such as the SB 202 challenge, the United States

routinely is required by district court judges to file coordinated briefs, written discovery,

and other legal documents with other aligned parties to avoid duplication and ensure the

smooth operation of the court proceedings.  A ruling in favor of Plaintiffs in this FOIA

litigation (allowing litigants in one case to circumvent litigation privileges through the use of FOIA on a government litigant) would cause grave injury to the United States' ability to pursue complex litigation involving multiple plaintiffs all pursuing the enforcement of the Voting Rights Act and other federal voting rights statutes.  Allowing Plaintiffs in the FOIA litigation to circumvent traditional discovery rules would have a drastic effect on the operation of the Department.

35.    For example, in my own litigation experience with Voting Rights Act cases, my colleagues in the Voting Section and I have been ordered on a number of occasions by courts to file joint filings (such as briefs, findings of fact and conclusions law, etc.) reflecting the views of multiple plaintiffs including the United States, or to coordinate all manner of discovery to promote the efficient use of judicial resources.  Such coordinated filings necessarily require the ability to have privileged communications between and among aligned parties in litigation that share a common interest.  That past experience in large litigation matters under the Voting Rights Act necessarily informs the steps taken in coordination with aligned parties in the present litigation over Georgia's SB 202.

36.    For example, from 2013 to 2015, I was the manager reviewing litigation in which the Department sued the State of North Carolina under Section 2 of the Voting Rights Act. *See United States v. State of North Carolina,* 1:13-cv-861 (M.D.N.C., complaint filed Sept. 30, 2013).  The court there consolidated multiple cases challenging the same state law, requiring all plaintiffs to coordinate on discovery, operate under joint limits on the number of depositions and written discovery requests, divide up the hours allocated to the plaintiffs' side for trial, and even file joint documents, including an extensive 153-page

post-trial proposed findings of fact and conclusions of law reflecting the position of all plaintiffs.

37.    Likewise, in 2011, the State of Florida brought a declaratory judgment action asserting that its proposed election law changes did not violate Section 5 of the Voting Rights Act, at a time when certain jurisdictions were required to obtain preclearance of election changes.  *See State of Florida v. United States of America*, 1:11-cv-1428 (D.D.C., complaint filed Aug. 1, 2011).  The United States was the defendant, and private parties intervened in the case as defendant-intervenors.  I was the manager reviewing that litigation, as well.  There, too, the three-judge court required the United States and other aligned defendant parties to file numerous joint briefs, as the court sought clarification on legal and factual issues in the case.

38.    All parties in the SB 202 litigation, including the State of Georgia and Secretary of State Raffensperger, agreed to limit the scope of collection, review, and production, to exclude communications, drafts, versions, and collaboration on case-related work created by and exchanged solely among "the attorneys for the plaintiffs in this case (and their staff)" if created or exchanged after March 25, 2021, the date on which the first of the related cases was filed.  *See* Russ Decl. Ex. 6 at 6, ¶ 1, Consent Motion for Entry of ESI Order.

39.    Among the attorneys representing parties in the Common Interest Group in the SB 202 litigation, it was the shared understanding of the senders and recipients of the communications that the contents of those communications would be kept confidential among entities within the Common Interest Group, including the information that later was withheld or redacted pursuant to FOIA in this case.  Indeed, the whole point of memorializing in the July 2021 email, *see* Russ Decl. Exhibit 2, and elsewhere that the

Common Interest Group's communications were protected by privilege was the understanding that these communications would be kept confidential. And the fact that the defendants in the SB 202 agreed to the terms of the ESI Order that protected against disclosure communications among plaintiffs' counsel (as well as communications among defendants' counsel) suggests to me that defendants also expected those communications to be confidential.

40.    In addition to the attorney work-product privilege, the material withheld or redacted pursuant to Exemption 5 in this case was withheld pursuant to the deliberative process privilege. The deliberative process privilege permits agencies to withhold "materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (internal citation omitted). Here, the withheld information was part of the Department's deliberative process relating to conducting the United States' lawsuit regarding SB 202, for example, making numerous litigation strategy decisions regarding that lawsuit. The withheld information was predecisional because it comprised discussions in advance of the Department's ultimate litigation decisions. The withheld information includes documents discussing legal strategy, potential witnesses, types of discovery needed, the division of labor among members of the Common Interest Group, legal research, and attorney notes. The communications that the Department exchanged with members of the Common Interest Group contributed to the Department's process for making litigation strategy and coordination decisions. The staff attorneys at the Voting Section who wrote or received the withheld communications did so to generate ideas for litigation strategy and to discuss those ideas

with members of the Common Interest Group.  The withheld material reflects the authors' ideas and opinions, as well as legal research and litigation plans and was used by attorneys at the Voting Section and myself in making litigation strategy and coordination decisions, including decisions about witnesses to call in the presentation of the Department's case to the court and arguments to make on legal issues, some of which are made by staff level attorneys and others by Voting Section leadership.

41.    Based on my longtime experience and understanding of the Department's role in litigating Voting Rights Act cases on behalf of the United States, public disclosure of the withheld material would foreseeably harm the Department's interests by reducing the Department's ability to effectively and candidly deliberate on such litigation strategy issues.  My opinion is that, absent the expectation that the withheld communications would be kept confidential, the Department and others in the Common Interest Group would not have been able to communicate openly about litigation strategy in the cases concerning SB 202.  Accordingly, disclosure would impede the Department's ability to consult with counsel sharing a common interest about such litigation strategy issues, which would harm the Department's decision-making processes in shared litigation matters by reducing the free flow of information and coordination among entities sharing a common interest.

42.    In producing responsive records in this case, every effort was made to provide Plaintiffs with all reasonably segregable, nonexempt information in the responsive records.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my information and belief.  28 U.S.C. § 1746.  Executed this 25th day of August, 2022.

_John A. Russ IV_
_____
John Albert Russ IV

Russ Declaration
Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

IN RE:                                  :
                                        :
CASES ASSIGNED TO                       :
JUDGE J. P. BOULEE                      :

## STANDING ORDER REGARDING CIVIL LITIGATION
## FOR CASES PROCEEDING BEFORE
## THE HONORABLE J. P. BOULEE

This case has been assigned to Judge J. P. Boulee. These guidelines are furnished to inform the parties and their counsel of the Court's policies, procedures and practice and to promote the just, speedy and economical disposition of cases. This Order, in combination with the Local Rules of this Court and the Federal Rules of Civil Procedure, shall govern this case.

# TABLE OF CONTENTS

I. GENERAL MATTERS ........................................................................................ 4

II. CASE ADMINISTRATION ............................................................................. 4

   a.  Contacting Chambers ................................................................................. 4

   b.  Transcripts ...................................................................................................... 5

   c.  Courtesy Copies of Documents ................................................................ 5

   d.  Attorneys ........................................................................................................ 6

      i. Admission of Counsel Pro Hac Vice ................................................ 6

      ii. Electronic Registration for All Counsel ........................................ 6

      iii. Leaves of Absence .............................................................................. 7

      iv. Withdrawal or Substitution of Counsel ........................................ 7

      v. Corporate Representation .................................................................. 7

      vi. Proposed Orders ................................................................................. 7

   e.  Pro Se Litigants ........................................................................................... 8

III. CASE MANAGEMENT ................................................................................. 11

   a.  Extensions of Time ................................................................................... 11

   b.  Page Limitations for Objections to Reports and Recommendations ................. 12

   c.  Page Limit Extensions ............................................................................. 12

   d.  Legal Citations ........................................................................................... 12

   e.  Jurisdiction Based on Diversity of Citizenship ................................ 12

   f.  Motions for Temporary Restraining Orders or Preliminary Injunctive Relief .. 13

   g.  Conferences ................................................................................................. 14

   h.  Early Planning Conference and Joint Preliminary Report and Discovery Plan . 14

   i.  Detailed Discovery Plan .......................................................................... 15

   j.  Discovery ...................................................................................................... 16

      i. General Principles of Discovery ...................................................... 16

      ii. Discovery Responses: Boilerplate and General Objections ............ 18

      iii. Interrogatories ................................................................................... 19

      iv. Requests for Production or Inspection ........................................ 21

      v. Requests for Admission .................................................................... 22

vi. Depositions ........................................................................................... 22

vii. Discovery Disputes .............................................................................. 25

k.  Confidentiality Agreements, Protective Orders and Motions to Seal ............... 26

i. Legal Standards ...................................................................................... 26

ii. Procedures for Requesting the Court to Seal Information ............................... 28

l.  Electronic Filings of Exhibits, Attachments and Briefs .................................... 30

m. Motions for Summary Judgment ............................................................... 30

n.  Statements of Material Facts .................................................................... 31

o.  Requests for Oral Argument on Motions ..................................................... 31

p.  Pretrial Order ....................................................................................... 32

q.  Pretrial Conference ................................................................................ 34

r.  Proposed Findings of Fact and Conclusions of Law ........................................ 35

s.  Jury Trial ............................................................................................. 36

i. Voir Dire .............................................................................................. 37

ii. Courtroom Communications .................................................................... 39

iii. Exhibits .............................................................................................. 41

iv. Jury Charges ........................................................................................ 42

t.  Courtroom Technology and Security ........................................................... 43

Exhibit A: CIVIL QUALIFYING JURY QUESTIONS ........................................... 45

Exhibit B: CIVIL BACKGROUND JURY QUESTIONS ......................................... 46

Exhibit C: CIVIL JUROR QUESTIONNAIRE ..................................................... 47

# I. GENERAL MATTERS

Attorneys and pro se litigants appearing in this Court in civil litigation must observe three sets of rules:

1. The Federal Rules of Civil Procedure.  These rules are available at www.uscourts.gov/RulesAndPolicies/FederalRulemaking/Overview.aspx.

2. The local rules of this District Court and Instructions Regarding Pretrial Proceedings.   The local rules of this Court are available for downloading at www.gand.uscourts.gov/local-rules.  Various forms and the Court's pretrial instruction package are available at http://www.gand.uscourts.gov/rules-standing-orders-forms.

3. The rules and practices of the district judge, and magistrate judge if appropriate, assigned to your case.

# II. CASE ADMINISTRATION

## a. <u>Contacting Chambers</u>

Brittney Walker, the Courtroom Deputy Clerk, is your principal point of contact on matters related to this case.  Where possible, communications with the Courtroom Deputy Clerk should be by email or in writing, addressed as follows:

> Chambers of Judge J. P. Boulee
> ATTN: Courtroom Deputy Clerk
> 1988 United States Courthouse
> 75 Ted Turner Drive, S.W.  Atlanta, GA 30303-3309
> Brittney_Walker@gand.uscourts.gov

If a telephone call is necessary, you may reach the Courtroom Deputy Clerk at (404) 215-1410.  Please note that the Courtroom Deputy Clerk is often in the courtroom, so telephone messages may not be returned for 24 hours.  Neither the

4

parties nor their counsel should discuss the merits of the case with the Courtroom Deputy Clerk or any of the Court's law clerks.

**b.** **Transcripts**

Communications regarding transcripts should be directed to the Official Court Reporter, Penny Coudriet, at penny_coudriet@gand.uscourts.gov or at 404-215-1486. If any party desires a daily copy or rough draft copy of a proceeding, that party must contact Ms. Coudriet at least two weeks before the proceeding.

**c.** **Courtesy Copies of Documents**

Parties frequently forward copies of motions or other filings directly to chambers for the Court's convenience. Courtesy copies are not required except for emergency motions filed pursuant to the Local Rules of the United States District Court for the Northern District of Georgia ("Local Rules, NDGa"), specifically Local Rule 7.2B, motions for temporary restraining orders and/or preliminary injunctions and motions for summary judgment. Courtesy copies of other motions that have voluminous exhibits should also be submitted to chambers.

Courtesy paper copies of emergency motions and motions for temporary restraining orders and/or motions for preliminary injunctions should be hand-delivered to chambers in Room 2342 on the 23rd floor of the United States Courthouse located at 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303. Courtesy paper copies of motions for summary judgments, including all exhibits,

and other motions with voluminous exhibits may be either hand-delivered to chambers in Room 2342 or submitted via regular mail to the attention of the Courtroom Deputy Clerk at the above provided address.

All courtesy copies of motions and exhibits should be printed double-sided directly from the docket on the Court's Case Management/Electronic Case Filing ("CM/ECF") system with the docket header across the top of the document so that the case number, docket number and page numbers appear on each page. Courtesy copies should be assembled in a tabbed, indexed three-ring binder.

**d.** <u>**Attorneys**</u>

**i. Admission of Counsel Pro Hac Vice**

In the event that lead counsel has been admitted pro hac vice, local counsel is required to be familiar with the case and may be called upon to attend hearings or participate in conferences on behalf of lead counsel.

**ii. Electronic Registration for All Counsel**

All counsel—including counsel admitted pro hac vice—must register and participate in the Court's electronic filing system, CM/ECF. <u>See</u> this Court's Standing Order 19-01. Pro se litigants are not part of the Court's electronic filing system and should be served directly.

6

### iii. Leaves of Absence

All requests for or notices of leaves of absence must be electronically filed. Counsel are encouraged to review their calendars and file any requests for leave of absence as early as possible. Leave requests shall comply with Local Rule 83.1, NDGa.

### iv. Withdrawal or Substitution of Counsel

It is counsel's responsibility to keep the Court informed of any change in his or her status. Counsel should comply with Local Rule 83.1, NDGa, when substituting or withdrawing as counsel. Counsel who do not comply with this Local Rule will not be allowed to withdraw from the case until compliance is achieved.

### v. Corporate Representation

Corporate entities must be represented in court by an attorney. A corporate officer may not represent the corporation unless that officer is also licensed to practice law in the state of Georgia. See Local Rule 83.1, NDGa. Failure to comply with this rule can result in dismissal of a corporation's complaint or default being entered against a corporation.

### vi. Proposed Orders

For all consent, unopposed or joint motions, the filing party shall include a proposed order granting the motion.

e.   **Pro Se Litigants**

Parties proceeding pro se (without an attorney) are **ADVISED** that they must comply with the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") as well as the Local Rules of the United States District Court for the Northern District of Georgia ("Local Rules, NDGa.").  Pro se parties may obtain certain basic materials and hand-outs from the Office of the Clerk of Court located on the 22nd Floor of the United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303. Many documents are also available on the Court's website at www.gand.uscourts.gov.  Pro se litigants may also utilize the law library located on the 23rd floor of the United States Courthouse at the above provided address.

Counsel and parties representing themselves are prohibited from engaging in ex parte communications with the Court or the Court's staff.  "Ex parte communications" mean any form of contact with the Court outside the presence of the opposing party or opposing party's counsel.  This includes, but is not limited to, telephone calls, written correspondence or in-person contact by one party or party's counsel.  If counsel or a pro se litigant seeks court action, the appropriate procedure is to put the request in writing, in the form of a motion, file the motion with the Clerk's Office and serve the opposing party or party's counsel.  See Fed. R. Civ. P. 5; Local Rules 5.1 and 5.2, NDGa; see also Local Rule 7.4, NDGa. ("Communications to judges seeking a ruling or order, including an extension of

time, shall be by motion and not by letter. A letter seeking such action ordinarily will not be treated as a motion. Counsel [and pro se litigants] shall not provide the Court with copies of correspondence among themselves relating to matters in dispute.").

The Clerk of Court and the U.S. Marshals Service will not serve documents filed by either party, unless expressly directed to do so by the Court. The Court will only direct the Clerk or the U.S. Marshals Service to serve documents in the following instances: (1) in the event a plaintiff is granted leave to proceed *in forma pauperis* (without prepayment of fees), the Court will direct the Clerk to prepare (and deliver to the U.S. Marshals Service if necessary) a service package containing the case initiating document(s) or (2) in exceptional circumstances under the Court's discretion. The National Association of Professional Process Servers provides a search engine for locating process servers across the nation at its website ([www.napps.org](www.napps.org)).

A pro se plaintiff is **REQUIRED** to provide the Clerk with an original of any further pleadings or other papers filed with the Court after the complaint and is further **REQUIRED** to **SERVE** upon the defendant(s) or counsel for the defendant(s), by mail or by hand delivery under Fed. R. Civ. P. 5, a copy of every additional pleading or other paper described in Fed. R. Civ. P. 5.

Each pleading or paper described in Fed. R. Civ. P. 5, including pleadings, papers related to discovery required to be served, motions, notices and similar papers, shall include a certificate stating the date on which an accurate copy of that pleading or document was mailed or hand-delivered to the defendant(s) or their counsel. This Court shall disregard any papers submitted which have not been properly filed with the Clerk or which do not include a certificate of service. Pro se parties are also **ADVISED** that, under Local Rule 7, NDGa, "PLEADINGS ALLOWED; FORM OF MOTIONS," if the deadline for a response to a motion passes without a response being filed, the motion is treated as unopposed. <u>See</u> Local Rule 7.1B, NDGa. Furthermore, under Local Rule 56.1, NDGa, the failure by a respondent to a motion for summary judgment to contest the movant's statement of material facts will be taken as an admission of those facts not objected to in the respondent's statement.

Pro se parties are further **REQUIRED** to keep the Court advised of their current address at all times during the pendency of the lawsuit. Local Rule 83.1D(3), NDGa provides that counsel and parties appearing pro se have, in all cases, a duty to notify the Clerk's Office by letter of any change in address and/or telephone number. Per this rule, "[i]f a failure to provide notice of any such change causes delay or adversely affects the management of a case, the Court may impose an appropriate sanction." Local Rule 83.1D(3), NDGa. Pro se parties are

encouraged to provide the opposing party or opposing party's counsel with an email address for purposes of communicating regarding the case and serving copies of pleadings filed and served via regular mail. If a pro se party provides an email address, opposing counsel shall serve copies of all pleadings via email <u>and</u> regular mail. Pro se parties are **ADVISED**, however, that the Court serves documents via <u>paper only</u> and not via email.

## III. CASE MANAGEMENT

### a.  <u>Extensions of Time</u>

The Court, along with counsel for the parties, is responsible for processing cases toward prompt and just resolutions. To that end, the Court seeks to set reasonable but firm deadlines. Motions for extension, whether joint, unopposed or designated as consent, will not be granted as a matter of course. Parties seeking an extension should explain with specificity the unanticipated or unforeseen circumstances necessitating the extension and should set forth a timetable for the completion of the tasks for which the extension is sought. Parties should indicate whether opposing counsel consents to the extension. A proposed order must be provided.

**b.**     <u>**Page Limitations for Objections to Reports and Recommendations**</u>

Objections to a magistrate judge's or special master's report and recommendation and any responses to those objections shall be limited to twenty pages, absent special permission of the Court.

**c.**     <u>**Page Limit Extensions**</u>

The Court generally does not approve extensions of page limitations. Parties seeking an extension of the page limit must do so at least five days in advance of their filing deadline and should explain with specificity the reasons necessitating the extension. If a party files a motion to extend the page limit at the same time his or her brief is due, the extension request will be denied absent a compelling and unanticipated reason for violating the rule. The Court will also not consider any arguments made in pages which exceed the Local Rules' requirements.

**d.**     <u>**Legal Citations**</u>

Legal citations should be in Bluebook Bluepages form (i.e., citations should appear in the text of a brief immediately following the propositions they support, not in footnotes or endnotes).

**e.**     <u>**Jurisdiction Based on Diversity of Citizenship**</u>

For a limited liability company ("LLC"), or other unincorporated entity, the plaintiff or removing defendant must list each member of the LLC or unincorporated entity and provide specific factual allegations to support the

12

citizenship of each member of the LLC or unincorporated entity.  See Carden v. Arkoma Assocs., 494 U.S. 185, 195–96 (1990) (citizenship of an unincorporated entity generally depends on the citizenship of all the members composing the organization; limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens); Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) ("To sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company . . . ."); RES-GA Creekside Manor, LLC v. Star Home Builders, Inc., No. 2:10-CV-207-RWS, 2011 WL 6019904, at *3 (N.D. Ga. Dec. 2, 2011) (citation omitted) (". . . when an entity is composed of multiple layers of constituent entities, the citizenship determination requires an exploration of the citizenship of the constituent entities as far down as necessary to unravel fully the citizenship of the entity before the court").

**f.**    **Motions for Temporary Restraining Orders or Preliminary Injunctive Relief**

Any request for a temporary restraining order or preliminary injunctive relief must be made by a separate motion.  A request for a temporary restraining order or preliminary injunction found only in the complaint will not be considered.  After

13

filing an appropriate motion, the movant must contact the Courtroom Deputy Clerk to request expedited consideration.

**g.** **Conferences**

Scheduling, discovery, pretrial and settlement conferences promote the speedy, just and efficient resolution of cases. Therefore, the Court encourages the parties to request a conference with the Court when counsel believes that a conference will be helpful, and counsel has specific goals and an agenda for the conference. Conferences may be requested by contacting the Courtroom Deputy Clerk via email or telephone. If a conference is requested, counsel should prepare an agenda for the conference and submit it to chambers at least three business days before the conference.

**h.** **Early Planning Conference and Joint Preliminary Report and Discovery Plan**

Local Rule 16.1, NDGa provides that, prior to filing the Joint Preliminary Report and Discovery Plan, lead counsel for all parties are required to confer in an effort to settle the case, discuss discovery, limit issues and discuss other matters addressed in the Joint Preliminary Report and Discovery Plan. This Early Planning Conference may be conducted by lead counsel via telephone.

With respect to deadlines addressed in the Joint Preliminary Report, the Court requires specific due dates to be provided. For example, the parties should

14

set forth in the proposed Scheduling Order submitted with the Joint Preliminary Report the dates for the end of discovery based on the track set forth by the Court for the category of case involved.

After reviewing the Joint Preliminary Report and Discovery Plan, the Court may schedule a Rule 16 conference. The Court may also do so at the request of counsel.

## i.    **Detailed Discovery Plan**

The Court may require the parties to file a detailed discovery plan. These plans are often required when the parties request to conduct discovery over a period longer than the discovery period assigned when the case is filed or when the parties request a discovery extension. The parties, however, are encouraged to submit detailed discovery plans even in cases for which a plan is not required by the Court. The information that the parties are required to include in a detailed discovery plan depends on the status of the case.

Generally, when a detailed discovery plan is required early in a case, it should provide, at a minimum, the date on which written discovery will be served, a beginning and end date for the period during which depositions will be conducted, the date on which specific depositions will be conducted (understanding that not all deponents will have been identified), the date on which

experts will be designated and counter-designated and a beginning and end date for the period during which expert depositions will be conducted.

When a detailed discovery plan is required later in a case, it should provide, at a minimum, the date on which discovery will be served, the persons and entities to be deposed, the date on which each deposition is scheduled to be conducted, the date on which experts will be designated and counter-designated and the dates on which each expert will be deposed.

**j.**     **<u>Discovery</u>**

Initial disclosures should be as complete as possible based upon information reasonably available. Responses may not be reserved for later supplementation.

**i. General Principles of Discovery**

Counsel and pro se litigants should be guided by courtesy, candor and common sense and should conform to the Fed. R. Civ. P., the Local Rules, NDGa and applicable orders in conducting discovery. In particular, counsel and pro se litigants should have in mind the restrictions on the scope of discovery stated in Fed. R. Civ. P. 26(b) and the good faith obligations implicit in Fed. R. Civ. P. 26(g). Direct and informal communication between counsel is encouraged to facilitate discovery and resolve disputes.

All discovery must be served early enough so that the responses thereto are due on or before the last day of the discovery period. Requests for extension of the

discovery period or deadlines within the discovery period must be made in accordance with Local Rule 26.2B, NDGa.  All requests for extensions of the discovery period must be made via motion, must explain in detail why an extension is necessary and must state: (1) the original (and if applicable, current) date from which the extension is being sought; (2) the number of previous requests for extensions, if any; (3) whether these previous requests were granted or denied and (4) whether the adversary consents, and if not, the reasons given by the adversary for refusing to consent.  An agreed upon or consent motion to extend the discovery period or deadlines therein should be clearly designated as a consent motion.  Motions must be filed prior to the expiration of the existing discovery period.  Such motions ordinarily will be granted only in cases where counsel could not have anticipated, at the time they submitted the Joint Preliminary Report and Discovery Plan, that the specific circumstances necessitating the requested extension would arise.

The Court will not enforce any private agreements between the parties and/or their counsel to conduct discovery beyond the conclusion of the discovery period.  The Court also will not compel responses to discovery requests that were not served in time for responses to be made before the discovery period ended. The Court does not allow evidence at trial which was requested and not revealed during the discovery period.

Lastly, the Court will not permit the taking of depositions for the preservation of testimony after the close of discovery, absent a good faith reason to do so. A party must request the Court's permission to conduct a preservation deposition.

### ii. Discovery Responses: Boilerplate and General Objections

Federal Rules of Civil Procedure 33(b)(4) and 34(b)(2)(B) prohibit boilerplate and general objections in response to discovery requests. Parties should not carelessly invoke the usual litany of rote objections, e.g., attorney client privilege, work-product immunity from discovery, overly broad/unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Moreover, general objections are prohibited. A party shall not include in a response to a discovery request a "Preamble" or a "General Objections" section stating that the party objects to the discovery request "to the extent that" it violates some rule pertaining to discovery, e.g., the attorney-client privilege; the work product immunity from discovery; the requirement that discovery requests be reasonably calculated to lead to the discovery of admissible evidence and the prohibition against discovery requests that are vague, ambiguous, overly broad or unduly burdensome. Instead, each individual discovery request must be met with every specific objection thereto—but only those objections that actually apply to

18

that particular request.  Otherwise, it is impossible for the Court or the party upon whom the discovery response is served to know exactly what objections have been asserted to each individual request.  All such general objections shall be disregarded by the Court.

Finally, a party who objects to a discovery request but then responds to the request must indicate whether the response is complete, i.e., whether additional information or documents would have been provided but for the objection(s).  See Fed. R. Civ. P. 34(b)(2)(C).  For example, in response to an interrogatory, a party is not permitted to raise objections and then state, "Subject to these objections and without waiving them, the response is as follows . . ." unless the party expressly indicates whether additional information would have been included in the response but for the objection(s).

### iii. Interrogatories

The parties are expected to observe the limitations regarding the number and scope of interrogatories as stated in Fed. R. Civ. P. 26(b) and 33. Counsel's or a pro se litigant's signature on the interrogatories constitutes a certification of compliance with those limitations.  Interrogatories should be brief, straightforward, neutral, particularized and capable of being understood by jurors when read in conjunction with the answer.  Ordinarily, they should be limited to requesting objective facts, such as the identification of persons or documents, dates, places,

transactions and amounts.  Argumentative interrogatories, attempts to cross-examine and multiple repetitive interrogatories are objectionable.

The parties are directed to consult Fed. R. Civ. P. 26(b) and 33(b)-(d) about the permissible scope of discovery and objections.  Counsel's or a pro se litigant's signature on the answer constitutes a certification of compliance with the requirements of Fed. R. Civ. P. 26(g).

Federal Rule of Civil Procedure 33(b)(3) requires the respondent to provide separate written answers to each interrogatory unless it is objected to.  If an objection is made, the reason(s) for the objection shall be stated and the interrogatory is to be answered to the extent it is not objectionable.  When in doubt about the meaning of an interrogatory, give it a reasonable interpretation (which may be specified in the response) and answer it so as to provide rather than deny information.  Generally, the responding party is required to produce information only in the form in which it is maintained or is available.  If an answer is made by reference to a document, attach it or identify it and make it available for inspection.  Generalized cross-references, such as to a deposition, are not acceptable answers.

If an objection is based on privilege, the claim of privilege must be supported by a statement of particulars sufficient to enable the Court to assess its validity.  In the case of a document, such a statement should specify the privilege relied on and include the date, the title, a description, the subject, the purpose of

the document, the name and position of the author and the addresses of other recipients. In the case of a communication, the statement should include the privilege relied on and the date, the place, the subject, the purpose of the communication and the names and positions of all persons present. See Fed. R. Civ. P. 26(b)(5).

### iv. Requests for Production or Inspection

Please consult Fed. R. Civ. P. 26(b) and 34 about the permissible scope of discovery and objections. To the extent possible, requests should specify with particularity the title and description of documents or records requested. (Information needed for specification can often be obtained by informal discovery, by deposition or by interrogatories, if necessary.) The certification requirement of Fed. R. Civ. P. 26(g) applies.

When responding to requests, materials (including electronically stored information), should be produced in accordance with Fed. R. Civ. P. 34(b)(2)(E). Documents should be produced either with labels corresponding to the categories in the specific requests to which they respond or in the manner in which they are kept in the usual course of business. Opening a warehouse for inspection by the requesting party, burying the responsive documents in a mass of materials and similar procedures do not meet the good faith requirements of the rules. The certification procedure of Fed. R. Civ. P. 26(g) is applicable.

21

### v. Requests for Admission

Requests for admission are an economical and efficient means of narrowing issues and of making a record of informal exchanges of information, stipulations and matters subject to judicial notice. Each request should be brief, clear, simple, addressed to a single point and stated in neutral, non-argumentative words. Requests ordinarily should deal with only objective facts. They may be combined with interrogatories to ask for the factual basis of a claim or a denial. The attorney's or pro se litigant's signature certifies compliance with Fed. R. Civ. P. 26(g). Federal Rule of Civil Procedure 36(a)(4) requires that a response shall specifically deny a matter or set forth in detail the reasons why the party cannot admit or deny. A denial shall fairly meet the substance of the request, and when good faith requires, a party shall specify so much as is true and qualify or deny the remainder. The responding party has a duty to make reasonable inquiry before responding. The certification requirement of Fed. R. Civ. P. 26(g) applies.

### vi. Depositions

Barring extraordinary circumstances, opposing counsel and pro se litigants should be consulted, and the convenience of counsel, witnesses and the parties accommodated, before a deposition is noticed. Concurrent depositions are not permitted in the absence of stipulation or order.

When counsel enter (or a party enters) into stipulations at the beginning of a deposition, the terms of the stipulations should be fully stated on the record of the deposition.

At the beginning of the deposition, deposing counsel shall instruct the witness to ask deposing counsel, rather than the witness's own counsel, for clarifications, definitions or explanations of any words, questions or documents presented during the course of the deposition. The witness shall abide by these instructions.

Questions should be brief, clear and simple. A deposition should not be used to harass or intimidate a witness. Normally, except in the case of impeachment, a witness should be shown a document before being questioned about it.

Under Fed. R. Civ. P. 30(c)(2), objections to the manner of taking the deposition, to the evidence or to the conduct of a party shall be noted on the record, but the evidence objected to shall be taken subject to the objection. In the absence of a good faith claim of privilege, instructions not to answer are rarely justified and may lead to sanctions under Fed. R. Civ. P. 37. Speaking objections and other tactics for coaching a witness during depositions are not permissible. Counsel and their witness-clients SHALL NOT engage in private, off-the-record conferences during depositions or during breaks regarding any of counsel's questions or the

witness's answers, except for the purpose of deciding whether to assert a privilege. Any conferences that occur pursuant to, or in violation of, this rule are a proper subject for inquiry by deposing counsel to ascertain whether there has been any witness-coaching and, if so, what. Any conferences that occur pursuant to, or in violation of, this rule shall be noted on the record by the counsel who participated in the conference. The purpose and outcome of the conference shall also be noted on the record.

Unless the parties agree otherwise, breaks in the interrogation shall occur no more frequently than once every ninety minutes, breaks in the interrogation shall not last longer than fifteen minutes and any lunch break shall last one hour and fifteen minutes. Breaks do not count when computing the duration of the deposition.

If counsel or a pro se litigant believes that a motion to terminate or limit the examination under Fed. R. Civ. P. 30(d) would be warranted, counsel and/or the pro se litigant should promptly initiate a conference call to the Court with opposing counsel for a pre-motion conference to attempt to resolve the problem.

Federal Rule of Civil Procedure 26(b)(4) should be consulted regarding expert disclosures. Experts who are prospective witnesses are normally produced for deposition by the opposing party as a matter of course.

The parties are expected to observe the limitations on depositions specified in Fed. R. Civ. P. 26(b) and 30 and, in particular, to avoid unnecessary depositions.

**vii. Discovery Disputes**

The Court requires parties to submit their discovery disputes to the Court before filing discovery motions (including motions to compel, motions for protective order and motions for sanctions). These disputes are often resolved in a conference with the Court, thus avoiding a delay of discovery.

In the event a discovery dispute arises, the parties are required to meet and confer in an effort to resolve the dispute. Counsel or pro se litigants are required to confer, by telephone or in person, in good faith before bringing a discovery dispute to the Court. See Fed. R. Civ. P. 26(c) and 37(a)(1); Local Rule 37.1A, NDGa. The duty to confer is NOT satisfied by sending a written document, such as a letter, email or fax, to the adversary, UNLESS repeated attempts to confer by telephone or in person are unsuccessful due to the conduct of the adversary.

If the dispute cannot be resolved, the parties shall file on the case docket via the CM/ECF system a Consolidated/Joint Discovery Statement in which the parties describe the dispute and succinctly summarize their respective positions and the relief requested. The Consolidated Statement is not to exceed 6 pages double-spaced.

The parties are required to attach as an exhibit to the Consolidated Statement an excerpt of the relevant discovery requests including only the language of the specific requests and, potentially, the disputed responses that are the subject of the dispute. The parties should not attach an entire copy of their Interrogatories, Requests for Production of Documents or Requests for Admission. No other exhibits are allowed without prior permission from the Court. The Court will determine whether the dispute can be resolved on the papers or whether a conference is necessary and will notify the parties accordingly.

All discovery conferences will be recorded by a court reporter. If the differences cannot be resolved during the conference with the Court, the Court will direct further proceedings. If a bona fide dispute arises during a deposition that the parties cannot resolve despite a good-faith effort to do so, counsel should not hesitate to call the Court at (404) 215-1410. The Court is usually available by telephone to resolve objections and disputes that arise during depositions.

**k.** **Confidentiality Agreements, Protective Orders and Motions to Seal**

**i. Legal Standards**

The Court disfavors the excess use of consent protective confidentiality orders that allow counsel to designate documents, tangible things and information as "Confidential" and/or "Confidential—For Attorney's Eyes Only." While the Court recognizes the legitimacy of such orders in some cases, the Court's

experience is that such orders are used—and abused—more often than truly necessary.  The Court is aware that the parties will at times agree to designate documents as "Confidential."  However, the Court will not approve consent protective orders that conflict with the Court's view on the sealing of materials.

As a guide to counsel, the Court notes that documents, tangible things and information ordinarily are not truly confidential unless they constitute either (1) a "trade secret," as defined by Section 1(4) of the Uniform Trade Secrets Act, or for cases applying Georgia law, O.C.G.A. § 10-1-761(4); (2) personal identifying information, such as a Social Security number or (3) personal health information protected by the Health Insurance Portability and Accountability Act.  Counsel should also be aware that the Court is not hesitant to sanction a party and/or counsel for abusing a protective confidentiality order by too readily designating documents, tangible things and/or information as "Confidential" and/or "Confidential—For Attorney's Eyes Only."

As further clarification, the Court notes that a mere reference or discussion of confidential information does not warrant sealing of the entire document and all attachments to be filed.  Instead, the Court is only interested in sealing (or filing in a redacted format) very specific portions of documents that contain or refer to confidential information.

### ii. Procedures for Requesting the Court to Seal Information

If the parties find that a consent protective confidentiality order is necessary, the following language should be included (and shall be deemed included) therein:

> Any documents (including briefs), tangible things or information designated as Confidential that are submitted to the Court in support of or in opposition to a motion or introduced at a hearing or during trial may retain their protected confidential status only by order of the Court in accordance with the procedures outlined in Section III.k. of the Court's Standing Order Regarding Civil Litigation.

Those procedures are as follows.

For documents filed other than during a hearing or trial, counsel shall electronically file on CM/ECF a motion to seal that lists the document(s) that counsel wants filed under seal and a proposed order granting the motion. The documents that counsel wish to be sealed should be provisionally filed on CM/ECF, per the directions set out in Procedures for Electronic Filing Under Seal in Civil Cases on the Court's website under "Electronic Case Filing Info." See also Appendix H to the Local Rules, NDGa. Counsel should not send paper copies of the documents to chambers or to the Clerk's Office.

For tangible things other than documents, the parties shall deliver the items to the Courtroom Deputy Clerk in chambers along with a proposed order permitting the tangible things to be filed under seal.

The Court will review, in camera, the documents and tangible things sought to be sealed.  If the Court agrees that they should be sealed, the proposed order will be filed.

The Court will normally not seal documents used in open court at a hearing or trial absent extraordinary circumstances.   A party who seeks to introduce protected documents, tangible things or information at a hearing or during trial shall orally advise the Court at the time of introduction that the documents, tangible things or information sought to be introduced are protected.  The Court will review the protected documents, tangible things or information in camera and make an oral ruling.  If the oral motion to seal is granted, the Clerk will file any such documents or tangible things under seal.

If a document contains some discrete material that is deemed confidential and subject to protection from public disclosure under Fed. R. Civ. P. 26(c), the parties will be entitled to redact only those portions of the document deemed confidential.  The Court cautions that only in rare instances will it be appropriate to seal an entire document from public access.  Thus, pleadings, motions or briefs which mention or reference a document containing confidential information, without disclosing the nature or contents of the protected information, shall not be sealed or filed in a redacted format.  Where it is necessary for the parties to quote

or disclose protected confidential information in pleadings, motions or briefs, the parties shall file redacted versions of their pleadings, motions or briefs.

**l.** **Electronic Filings of Exhibits, Attachments and Briefs**

The parties should make every effort to label all electronically uploaded exhibits and attachments according to their content to assist the Court in making its ruling. For example, the Court would prefer to have documents uploaded as Ex. A: Smith Deposition, Ex. B: Employment Contract and Ex. C: Jones Letter, rather than simply Ex. A, Ex. B and Ex. C.

Briefs should be titled on CM/ECF as follows: The initial brief of a movant should be titled "Brief in Support of [state the motion]." The brief of the responding party should be titled "[name of respondent]'s Response in Opposition to [state the motion]." The reply of the moving party should be titled "Reply in Support of [state the motion]." Though surreplies should not be filed in the normal course, if the Court authorizes a surreply, it should be titled "[name of party filing the surreply]'s Surreply to [name of motion]."

**m.** **Motions for Summary Judgment**

All citations to the record evidence should be contained in each party's brief, not just in the party's statement of undisputed (or disputed) facts. The party should include in the brief, immediately following the deposition reference, a citation indicating the page and line numbers of the transcript where the referenced

testimony can be found.  The party should also include as an exhibit to the brief a copy of the specific pages of the deposition that are referenced in the brief.  The party should not attach to the brief a copy of the entire deposition transcript.  The entire deposition transcript is to be filed separately.

**n.**     **Statements of Material Facts**

In addition to following the form instructions set out in Local Rule 56.1(B), NDGa, a party responding to a statement of material facts shall copy into its response document the numbered statement to which it is responding and provide its response to that statement immediately following.  A party that chooses to reply to a response shall (1) copy into its reply document its original numbered statement of material fact and the opposing party's response and then (2) provide its reply to that statement immediately following.  Each party shall file its documents in a text-searchable PDF format.  Statements of material fact that do not conform with these instructions will be returned to counsel for revision.

**o.**     **Requests for Oral Argument on Motions**

In accordance with Local Rule 7.1(E), NDGa, motions are usually decided without oral argument, but the Court will consider any request for a hearing.  If oral argument is requested, the party or parties should specify the particular reasons argument may be helpful to the Court and what issues will be the focus of the proposed argument.

The Court will strongly consider granting oral argument on a contested, substantive motion in any case where a lawyer with less than seven years of experience will conduct the oral argument (or at least a large majority), it being the Court's belief that young lawyers need more opportunities for Court appearances than they usually receive.

**p.  <u>Pretrial Order</u>**

The proposed consolidated Pretrial Order shall be filed no later than thirty days after the close of discovery, or entry of the Court's ruling on any pending motions for summary judgment, whichever is later, unless another specific date has been set by the Court.

Local Rule 16.4, NDGa sets forth the requirements for the Pretrial Order. This includes a statement of any pending motions or other matters.  The parties should identify any motions in limine that they anticipate filing as well as any motions objecting to expert testimony based upon <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993).  Upon receipt of the Pretrial Order, the Court will issue a Scheduling Order setting the date for a pretrial conference and the date on which the trial will begin.

The statement of contentions in the Pretrial Order governs the issues to be tried.  Plaintiff should make certain that all theories of liability are explicitly stated, together with the type and amount of each type of damage sought.  The specific

actionable conduct should be set out and, in a multi-defendant case, the actionable conduct of each defendant should be identified. Defendant should explicitly set out any affirmative defenses upon which it intends to rely at trial as well as satisfy the above requirements with respect to any counterclaims.

Local Rule 16.4, NDGa also requires the parties to provide proposed voir dire requests. Before proposing voir dire questions, please review the Court's qualifying questions, background questions and juror questionnaire, which contain questions that are regularly asked by the Court in all civil trials. These questions are attached as Exhibits A, B and C. Please do not duplicate any of these questions in your proposed voir dire requests.

The exhibits intended to be introduced at trial shall be specifically identified. The parties shall mark their exhibits using Arabic numbers (Plaintiff's Exhibit 1 or Plaintiff Jones-1 if more than one plaintiff, for example). The parties shall adhere to the guidelines of color coding of exhibit stickers set forth in Local Rule 16.4B(19)(b), NDGa.

In listing witnesses or exhibits, a party may not reserve the right to supplement their list nor may a party adopt another party's list by reference. Witnesses and exhibits not identified in the Pretrial Order may not be used during trial unless a party can establish that the failure to permit their use would cause a manifest injustice.

In preparing the Pretrial Order, each party shall identify to opposing counsel each deposition, interrogatory and request to admit response, or portion thereof, which the party expects to or may introduce at trial, except for impeachment. All exhibits, depositions, interrogatories and requests to admit responses shall be admitted at trial when offered unless the opposing party asserts a specific objection in the Pretrial Order.

**q.**     **Pretrial Conference**

The Court will normally conduct a pretrial conference prior to trial. The purpose of the conference is to simplify the issues to be tried, to rule on evidentiary objections raised in the Pretrial Order and to resolve motions in limine and Daubert motions. Parties should bring to the conference a copy of the proposed Pretrial Order and attachments thereto, as well as any outstanding motions.

The parties are required, seven days before the pretrial conference, to identify in writing to the Court the specific witnesses they will call in their case-in-chief at trial. This may be done by sending the list via email to the Courtroom Deputy Clerk. The Court generally does not require the parties to bring with them to the pretrial conference the exhibits to which there are objections. It is the Court's practice to consider the admissibility of exhibits during trial when the Court will have better context for ruling on the objections. If counsel identifies an

issue that would affect the admissibility of a number of related exhibits, such an issue may be addressed at the pretrial conference.

Unless otherwise directed, all motions in limine shall be filed at least fourteen days before the pretrial conference. Briefs in opposition to motions in limine should be filed at least seven days before the pretrial conference. Unless otherwise indicated, the Court will decide motions in limine prior to or at the pretrial conference.

In accordance with Local Rule 26.2C, NDGa, Daubert motions must be filed no later than the date the proposed Pretrial Order is submitted. Briefs in opposition must be filed within fourteen days following the Daubert motion and reply briefs must be filed seven days thereafter.

The attorneys for all parties are further directed to meet together by agreement, initiated by counsel for the plaintiff, no later than ten days before the date of the pretrial conference to (1) discuss settlement and (2) stipulate to as many facts and issues as possible. The Court will discuss settlement with the parties if the case is to be tried by jury.

**r.    Proposed Findings of Fact and Conclusions of Law**

When counsel is required to submit proposed findings of fact and conclusions of law, see Local Rule 16.4B(25), NDGa, the parties should confer and provide the court a single, unified set of proposed findings of fact and

conclusions of law.  In other words, the Court requires a consolidated set of proposed findings to which all parties agree.  Following the agreed upon proposed findings, the parties should include their proposed findings to which opposing counsel objects.  Where a proposed finding is not agreed upon, the parties should indicate who is proposing the finding, the legal or factual basis for the proposed finding and the other party's objection to the proposed finding.  The Court should be able to work out of one consolidated document rather than a myriad of filings on the docket.

In addition to electronically filing the consolidated proposed findings, counsel should provide an electronic copy thereof (in Microsoft Word format) to the Courtroom Deputy Clerk.

**s.**    **Jury Trial**

The Court is usually in session from 9:00 a.m. until 5:00 p.m.  There will be a fifteen-minute recess mid-morning and again mid-afternoon as well as a lunch break.

Opening statements are generally limited to twenty minutes per side.  Closing arguments generally are limited to thirty minutes per side.  Parties requesting more time for these presentations must seek leave of Court at the pretrial conference.  During opening statements, counsel may refer to the contents of, and show the jury, exhibits—provided that counsel is unaware of a genuine

issue as to the admissibility of the exhibit into evidence and counsel genuinely expects that each such exhibit will be admitted into evidence.

When the jury is in the courtroom, it is the Court's and the litigants' responsibility to use the jury's time efficiently. If matters need to be taken up outside the presence of the jury, they should be raised during breaks or before the start of the trial day. It is each party's responsibility to have enough witnesses on hand for each day's proceedings.

### i. Voir Dire

Proposed voir dire questions shall be filed with the Pretrial Order as provided in Local Rule 16.4(B), NDGa and Section III.q. of this Standing Order. Voir dire will be conducted as follows.

In civil cases that are not expected to last more than one week, the Court will empanel eight jurors, none of whom will serve as an alternate. The panel from which the eight will be selected will normally consist of eighteen to twenty prospective jurors. If counsel anticipate the need for a larger panel, e.g., in cases with media attention or in cases involving a mutual insurance company (which may be owned in part by one or more panel members), counsel should alert the Court promptly upon calendaring of the case for trial.

The jurors will enter the courtroom and be seated in the order listed on the juror list. The Court will briefly inform the jury of the name and nature of the case

and will then collectively ask the jurors a series of qualifying questions. One question will be whether any juror knows any witness in the case, so counsel should be prepared to identify the witnesses who may be called to testify (whether live or by deposition). The Court will then individually question each juror from a series of background questions and from a juror questionnaire. Following the qualifying and background questions asked by the Court, counsel for each side will be permitted to question the jurors collectively and individually using voir dire questions previously approved by the Court.

The jury will then be excused from the courtroom for a fifteen-minute recess. Once the jury is excused, the parties shall make motions to strike any juror(s) for cause. Prior to returning the jury to the courtroom, the Court will consider any requests by counsel to ask any brief, follow-up questions to any particular juror(s). After the Court rules on any such requests, the jury will be brought back into the courtroom. After the Court asks the follow-up questions (if any), counsel shall strike the jury. Each side shall be entitled to three peremptory strikes. The Courtroom Deputy Clerk will pass the peremptory strike sheet back and forth between counsel, beginning with plaintiff, and counsel will write one juror number to be stricken. This will continue until each side has exercised its allotted strikes. The Court will then call the names of the jurors who have been selected, and they shall take a seat in the jury box. At this time, counsel may make

motions challenging the makeup of the jury at a sidebar. The remaining panel will be excused, and the selected jury will be sworn.

### ii. Courtroom Communications

To assist the Court Reporter, all communications to the Court should be made before a microphone from a position at counsel table or from the lectern. During trial, a portable microphone is available that will allow counsel to move about the courtroom. Any witness not testifying from the witness stand must also use a portable microphone.

Counsel should refrain from making disparaging remarks or displaying ill will toward other counsel and from causing or encouraging any ill feeling among the litigants. Counsel and litigants are to refrain from making gestures, facial expressions or audible comments as manifestations of approval or disapproval of testimony, argument or rulings by the Court.

Only one attorney per party may object to the testimony of a witness being questioned by an opposing party. The objection must be made by the attorney who has conducted or is to conduct the examination of the witness. Only one attorney for each party may address the Court during the charge conference.

Examination of a witness should be limited to questions addressed to the witness. Counsel and witnesses are to refrain from making extraneous statements, comments or remarks during examination.

39

Offers or requests for stipulations should be made privately, not within the hearing of the jury.

Counsel should refrain from putting any matter before the jury in the form of a question that counsel knows or expects will be subject to an objection that is likely to be sustained. Such matters should be taken up with the Court outside the presence of the jury.

Counsel should not ordinarily make motions in the presence of the jury. Such matters may be raised at the first recess or at a sidebar. A motion for mistrial must be made immediately, but the Court may require argument at the next recess or excuse the jury. When making an objection, counsel shall state only the legal basis of the objections (e.g., "leading" or "hearsay") and should not elaborate, argue or refer to other evidence unless asked to do so by the Court.

Counsel are prohibited from addressing comments or questions to each other. All arguments, objections and motions should be addressed to the Court.

The Court expects five to six hours of testimony per day in jury trials and will not allow sidebar conferences or lengthy hearings outside the presence of the jury to disrupt the orderly presentation of evidence.

### iii. Exhibits

Arrangements with the Courtroom Deputy Clerk for the use of chalkboards, view boxes, tripods or other visual aids should be made sufficiently in advance so that they may be set up while court is not in session.

Exhibits must be examined and marked before trial in compliance with Local Rule 16.4, NDGa. Exhibits need not be shown to counsel during trial for the purpose of interposing objections or foundational inquires. A notebook containing all exhibits should be tendered to the Courtroom Deputy Clerk prior to the start of trial, for use by the Judge on the bench during proceedings.

Because enlarged exhibits and demonstrative boards are often placed on an easel in front of the jury and thus out of the Court's view, it would be helpful if counsel, when showing such an exhibit or board to the jury, would provide the Court with a small (e.g., letter- or legal-sized) copy of the exhibit or board so that the Court can view its contents.

All papers intended for the Judge should be handed to the Courtroom Deputy Clerk, who will pass them to the Judge. Counsel are not required to obtain permission from the Court to approach a witness in order to show the witness an exhibit or other document.

### iv. Jury Charges

Ordinarily, the Court will charge the jury before closing argument.  A single, unified set of requests to charge and proposed verdict forms are required to be filed on CM/ECF no later than five days before the date of trial, unless otherwise ordered by the Court.  Local Rule 51.1(A), NDGa.  The parties must also email to the Courtroom Deputy Clerk an electronic copy of the proposed jury instructions in Microsoft Word format.

In other words, the Court requires a consolidated set of jury instructions to which all parties agree.  Following the agreed upon jury instructions, the parties should include their instructions to which opposing counsel objects.  Where an instruction is not agreed upon, the parties should indicate who is proposing the instruction and the legal basis for the instruction and for the other party's opposition to the instruction.

Counsel must use the Eleventh Circuit Pattern Jury Instructions and O'Malley's Federal Jury Practice and Instructions, if applicable.  A party proposing a change to a pattern instruction should submit a redline version of the pattern instruction showing the requested change.  If state law applies, counsel shall present the appropriate pattern instruction from the applicable state.  Charges for which no pattern charge exists must contain citations to the legal authorities supporting the charge requested.

t.      **Courtroom Technology and Security**

The courtroom has various electronic equipment for use by counsel at trial. For more information on the equipment, or to schedule an opportunity to test the equipment, please contact the Courtroom Deputy Clerk.  It is the parties' responsibility to make sure they know how to use the equipment available, to have the cables necessary to hook up their equipment and to ensure that their equipment will interface with the Court's technology.

A court order is required to bring boxes of exhibits, projectors and laptops— virtually anything necessary for use at trial—into the courthouse.  The parties should file a motion, with a proposed order, identifying the electronic equipment the party or counsel desires to bring, specifying the date(s) of the hearing or trial to which the party or counsel desires to bring the equipment and identifying the courtroom to which the equipment will be brought.  This should be done not less than three business days prior to the hearing or trial to allow for proper notification to the U.S. Marshals Service.

Members of the Northern District of Georgia's Bar may apply for an attorney ID card (commonly referred to as the "Blue Card").  The Blue Card will allow approved attorneys to bring cellular telephones with cameras and some other electronic equipment into the courthouse without a court order.  The procedure for obtaining a Blue Card is explained on the Court's website under the "Attorney

Information" page.  Please contact the U.S. Marshals Service to clarify what equipment attorneys are permitted to bring into court with a Blue Card.

**IT IS SO ORDERED** this 29th day of June, 2021.

_____
**J. P. Boulee**
United States District Judge

## Exhibit A: CIVIL QUALIFYING JURY QUESTIONS

1. Does any member of the panel know or are you related to (Plaintiff's attorney)?

2. Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by, the law firm of_____?

3. Does any member of the panel know or are you related to (Defendant's attorney)?

4. Does any member of the panel know any employees of, or has any member of the panel or their immediate family worked for or been represented by, the law firm of_____?

5. Does anyone know or are you related to Plaintiff in the case?

6. Does anyone know or are you related to Defendant in the case?

7. Does anyone know any of the following individuals who may be witnesses in this case?  [Witnesses listed]

8. Does anyone believe you know anything about this case or that you have heard anything about this case before coming into court today?

9. Is there any member of the panel who would not accept the law as I give it to you in my instructions even if you disagree with the law?

10. Is there any member of the panel who has any special disability or problem that would make serving as a member of this jury difficult or impossible?

11. Does any juror hold any belief, religious or otherwise, which discourages or prevents jury service?

**Exhibit B: CIVIL BACKGROUND JURY QUESTIONS**

1. State your name.

2. (a) Where do you live?
   (b) Where else have you lived in the last fifteen years?

3. (a) Are you married?
   (b) Is your spouse employed outside the home?  If so, what kind of work does your spouse do?

4. (a) Do you have children?
   (b) Tell us their ages.
   (c) If they are employed, tell us who they work for and what kind of work they do.

5. (a) Are you employed?
   (b) If so, tell us what kind of work you do—whether you work for someone else or you are self-employed.
   (c) If you work for someone else, for whom do you work?
   (d) If you are retired, what kind of work did you do before you retired?
   (e) Tell us briefly where else you have worked in the last twelve years.

6. Have you ever served on a jury before?  If so:
   (a) When?
   (b) Where?
   (c) What type of case?
   (d) Were you the foreperson?
   (e) Have you ever served on a jury that deadlocked and could not reach a verdict?

7. Have you ever served on a grand jury before?

8. If you served in the military, state the branch and years of service.

## Exhibit C: CIVIL JUROR QUESTIONNAIRE

1. State your name.

2. Have you or any member of your immediate family ever been a plaintiff or defendant in a lawsuit (other than a divorce case)?  If so,

   a. State the nature of the suit.
   b. State the name or relationship of the person involved in the lawsuit and whether that person was the plaintiff (the party who brought the suit) or the defendant (the party who was sued).
   c. State how the case ended (jury verdict, settlement or dismissed by the judge).
   d. State who won the case.
   e. Would that experience affect your ability to be a fair and impartial juror in a case?

3. Have you ever been a witness in a court case?  If so, briefly describe the case.

4. State the name of any professional, social or religious organizations to which you belong and state the name of any office you hold in such organization.

5. What level of education have you completed (include any special training or schooling)?  If you have a college degree, state the college or university, the degree and the area of study.

Russ Declaration
Exhibit 2

GA000000937

**From:** Ezra Rosenberg < [b(7)(c)] awyerscommittee.org>
**Sent:** Wednesday, July 28, 2021 1:59 PM
**To:** Hillary Li <[b(7)(c)]advancingjustice-atlanta.org>; Russ, John (CRT) < [b(7)(c)] usdoj.gov>; Richardson, Jasmyn (CRT)
< [b(7)(c)] usdoj.gov>; McFarland, Ernest A (CRT) < [b(7)(c)] usdoj.gov>; Leah Aden
< [b(7)(c)] naacpldf.org>; Sophia LIn Lakin < [b(7)(c)] aclu.org>; Pichaya Poy Winichakul < [b(7)(c)] splcenter.org>;
Nkwonta, Uzoma (Perkins Coie) < [b(7)(c)] perkinscoie.com>; Jasrasaria, Jyoti (Perkins Coie)
< [b(7)(c)] perkinscoie.com>; Esperanza Segarra < [b(7)(c)] advancementproject.org>; Niyati Shah
< [b(7)(c)] advancingjustice-aajc.org>; [b(7)(c)] keker.com; Tania Faranasso < [b(7)(c)] wilmerhale.com>; Zatz,
Clifford < [b(7)(c)] crowell.com>; Kurt Kastorf <[b(7)(c)]kastorflaw.com>; Jonathan Diaz
< [b(7)(c)] campaignlegalcenter.org>; Caleb Jackson < [b(7)(c)] campaignlegalcenter.org>; Valencia Richardson
< [b(7)(c)] campaignlegalcenter.org>; Hayes, Vilia B. < [b(7)(c)] hugheshubbard.com>; Jon Greenbaum
< [b(7)(c)] lawyerscommittee.org>; Julie Houk < [b(7)(c)] lawyerscommittee.org>
**Subject:** RE: Agenda for tomorrow's call

[Caution: EXTERNAL EMAIL]

HI, all. As confirmed on today's call, each of the entities that participated in today's call (ACLU, ACLU of Georgia, Lawyers' Committee for Civil Rights Under Law, NAACP Legal Defense Fund, Southern Poverty Law Center, Advancement Project, Campaign Legal Center, Perkins Coie LLP, Hughes Hubbard & Reed, Wilmer Hale; Keker, Van Nest & Peters LLP; Crowell & Moring; Kurt Kastorf Law Firm; Rogers & Hardin; The Law Office of Bryan L. Sells; Gerry Weber Law Offices; the United States Department of Justice, and any other counsel associated with them, in the suits they have filed challenging the Georgia law known as SB 202), agree on their own behalf and on behalf of their respective clients in this litigation, that they share a common interest in the successful prosecution of this litigation, and that they may share (but are not required to share) privileged communications and other litigation material between and among them without waiving the attorney-client privilege, the work product protection or any other privilege or protection.

Ezra D. Rosenberg

(Pronouns: he/him/his)

Co-Director, Voting Rights Project

Lawyers' Committee for Civil Rights Under Law

1500 K Street, NW, Suite 900

Washington, DC 20005



[b(7)(c)] lawyerscommittee.org

Russ Declaration
Exhibit 3

## AGREEMENT REGARDING COMMON INTEREST
## AND DISCLOSURE OF INFORMATION

This document sets forth the Common Interest Agreement (the "Agreement") between and among the undersigned parties regarding the sharing of information in connection with litigation challenging Georgia Senate Bill 202 ("SB 202") filed in the United States District Court for the Northern District of Georgia, including *The New Georgia Project v. Raffensperger*, No. 1:21-cv-1229; *Georgia State Conference of the NAACP v. Raffensperger*, No. 1:21-cv-1259; *Sixth District of the AME Church v. Kemp*, No. 1:21-cv-1284; *Asian Americans Advancing Justice-Atlanta v. Raffensperger*, No. 1:21-cv-1333; *Vote America v. Raffensperger*, No. 1:21-cv-1390; *Concerned Black Clergy of Metropolitan Atlanta, Inc. v. Raffensperger*, No. 1:21-cv-1728, and *Coalition for Good Governance v. Raffensperger*, No. 1:21-cv-2070, all cases consolidated therewith, and any additional litigation that may be filed challenging SB 202 under the U.S. Constitution, the Voting Rights Act of 1965, or other provisions of federal law (the "Litigation"). The Court has subsequently consolidated six of the lawsuits for discovery purposes. *See In re Georgia Senate Bill 202*, 21-MI-55555.

This Agreement is made by counsel for the undersigned private plaintiffs ("Private Plaintiffs") and for the United States and includes any other lawyers, employees, contractors and other agents of each organization signing this Agreement (collectively, the "parties" or the "Common Interest Group").

1. Following the filing of the lawsuits described above, certain plaintiff groups entered into a Common Interest agreement orally and as memorialized via a July 28, 2021 email [which is attached and incorporated herein by reference as Exhibit 1]. In addition, a subset of private plaintiff groups entered into a written Common Interest, Confidentiality, and Non-Disclosure Agreement on August 12, 2021 [which is attached and incorporated herein by reference as Exhibit 2]. The written agreement signed today expands upon these pre-existing agreements.

2. The Common Interest Group believes that a common legal interest exists between and among the Private Plaintiffs and the United States. The Common Interest Group shares a common interest in enforcing the U.S. Constitution and federal voting rights laws to protect the right to vote. The Common Interest Group shares a common interest in ensuring that the State of Georgia complies with its obligations under the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution, Section 2 of the Voting Rights Act of 1965, the Americans with Disabilities Act, and other federal voting rights laws.

3. The Common Interest Group believes that coordination of legal strategy and advice between and among the parties signing this Agreement is necessary to effectuate the parties' best interests. In furtherance of their common interest, the parties may find it beneficial to disclose to each other information that is protected under the attorney-client privilege, work product doctrine, or other privileges.

4. Accordingly, the parties have agreed that all oral or written communications, materials, information, analyses, proposed strategies, and other insights shared between and among the parties to pursue the common interest of the Common Interest Group, shall be considered confidential, privileged, or otherwise protected from disclosure to third parties, and the sharing

of such information will not, in itself, constitute a waiver of any privileges, the work product doctrine, or other exceptions to or immunities from disclosure that would otherwise apply.

5.  Each member of the Common Interest Group shall treat information shared pursuant to this Agreement as they treat their own privileged and protected materials.

6. Members of the Common Interest Group will not reveal the substance of  confidential, privileged, or otherwise protected communications they receive from other members of the Common Interest Group to third parties, and to the extent allowed by law will defend against any attempt on the part of third parties to obtain such information through discovery in this case, in any other case, or otherwise.

7.  If any member of the Common Interest Group receives a subpoena, request for production of documents, or other legal demand (including from a third party) for Common Interest Material provided by another member of the Common Interest Group under the Agreement, that member of the Common Interest Group that received the Material shall undertake reasonable efforts to give prompt notice to the other members of the Common Interest Group, and  will cooperate in defending against the production of such Common Interest Material to the extent allowable by law, as determined by the member of the Common Interest Group who received the legal demand for the Common Interest Material.

8.  Nothing in this Agreement requires or allows any member of the Common Interest Group to ignore, defy, or violate a court order related to the production of arguably confidential, privileged, or protected information.

9.  The sharing of information under this Agreement is entirely voluntarily and does not create or alter any obligations to share or produce materials between or among any of the parties. This Agreement does not affect the attorney-client relationship between each individual client and his, her, or its counsel; each counsel shall retain full authority to direct strategy and litigation as they see fit in consultation with their client(s).  Furthermore, any information already in the possession of a member of the Common Interest Group is not brought within the Agreement by the subsequent receipt of the same information from another member of the Common Interest Group and can be disclosed or used in any manner without the consent of any other member.

10. The parties' common interest predates this Agreement, and this Agreement shall apply to any information that the parties have shared before or will share after the date of this Agreement.

11. Information shared pursuant to this Agreement and any information derived therefrom shall be used exclusively by the parties for the limited purpose of investigating, negotiating a settlement, and litigating the Litigation and may be so used without the prior written consent of the party that made the information available in the first instance.

12. On issues where the parties' interests diverge, the members of the Common Interest Group will preserve the sanctity of the shared privilege and do nothing to interfere with the ability of any other member to assert a privilege or to seek protection from the court before releasing any potentially confidential, privileged, or otherwise protected information.

13. Any party to this Agreement is free to withdraw from the Agreement at any time upon giving express written notification to the other members of the Common Interest Group. Following the withdrawal of a party to this Agreement, this Agreement shall continue to protect all information covered by the Agreement and disclosed to or by the withdrawing party prior to the party's notification of withdrawal.

14. This agreement is effective upon execution by the parties, without regard to filing with a court, and may be signed in counterparts.

The undersigned have executed this Agreement on behalf of the parties on the dates indicated below:

Agreed to by counsel for the parties on this 10 day of February 2022:


*/s/ Jasmyn G. Richardson*
Jasmyn G. Richardson
Voting Section
Civil Rights Division
U.S. DEPARTMENT OF JUSTICE
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Phone: (800) 253-3931
Fax: (202) 307-3961
jasmyn.richardson@usdoj.gov

*For Plaintiff the United States of America*


*/s/ Ezra D. Rosenberg*
Ezra D. Rosenberg
erosenberg@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

*/s/ Vilia Hayes*
Vilia Hayes
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*For Plaintiffs Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, Inc., League of Women Voters of Georgia, Inc., GALEO Latino Community Development Fund, Inc., Common Cause, Lower Muskogee Creek Tribe*

Leah C. Aden
*laden@naacpldf.org*
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592

*For Plaintiffs Sixth District of the African Methodist Episcopal Church, Delta Sigma Theta Sorority, Georgia ADAPT, Georgia Advocacy Office, and Southern Christian Leadership Conference*

*/s/ Pichaya Poy Winichakul*
Pichaya Poy Winichakul
*poy.winichakul@splcenter.org*
Southern Poverty Law
Center
P.O. Box 1287
Decatur, Georgia 30031-1287
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

*For Plaintiffs Georgia Muslim Voter Project, Women Watch Afrika, Latino Community Fund Georgia, and The Arc of the United States*

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
ELIAS LAW GROUP LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
unkwonta@elias.law

*For Plaintiffs The New Georgia Project, Black Voters Matter Fund, Rise, Inc., Elbert Solomon, Fannie Marie Jackson Gibbs, and Jauan Durbin*

4

/s/ *Kimberly Leung*
Kimberly Leung
Advancing Justice - ALC
55 Columbus Avenue
San Francisco, CA 94111
Tel: (415) 234-0748
kimberlyl@advancingjustice-alc.org

*For Plaintiffs Asian Americans Advancing Justice–Atlanta, Steven J. Paik, Deepum Patel, Nora Aquino, Thuy Hang Tran, Thao Tran, and Anjali Enjeti-Sydow*

/s/ *Clifford J. Zatz*
Clifford J. Zatz
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
CZatz@crowell.com

*For Plaintiffs The Concerned Black Clergy of Metropolitan Atlanta, Inc., The Justice Initiative, Inc., Samuel Dewitt Proctor Conference, Inc., Mijente, Inc., Sankofa United Church of Christ Limited, New Birth Missionary Baptist Church, Inc., Metropolitan Atlanta Baptist Ministers Union, Inc., First Congregational Church, United Church of Christ Incorporated, Georgia Latino Alliance for Human Rights, Inc., Faith in Action Network, Greater Works Ministries Network, Inc., Exousia Lighthouse International C.M., Inc.*

/s/ *Danielle M. Lang*
Danielle M. Lang
Senior Director, Voting Rights
Campaign Legal Center
1101 14th St NW Ste 400
Washington, DC 20011
Tel: 202-856-7911

*For Plaintiffs VoteAmerica; Voter Participation Center; and Center for Voter Information*

/s/ *Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 386-6856

bbrown@brucepbrownlaw.com

*For Plaintiffs Coalition For Good Governance, Adam Shirley, Ernestine Thomas-Clark, Antwan Lang, Patricia Pullar, Judy McNichols, Jackson County Democratic Committee, Georgia Advancing Progress Political Action Committee, Ryan Graham, Rhonda Martin, Jeanne Dufort, Aileen Nakamura, Elizabeth Throop, and Bradley Friedman*

Russ Declaration
Exhibit 4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE NEW GEORGIA PROJECT, et al.,

        Plaintiffs,

     v.

BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, et al.,

        Defendants.

CIVIL ACTION NO.
1:21-cv-01229-JPB

GEORGIA STATE CONFERENCE OF THE NAACP, et al.,

        Plaintiffs,

     v.

BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, et al.,

        Defendants.

CIVIL ACTION NO.
1:21-cv-01259-JPB

SIXTH DISTRICT OF THE
AFRICAN METHODIST
EPISCOPAL CHURCH, et al.,

       Plaintiffs,

    v.

BRIAN KEMP, Governor of the State
of Georgia, in his official capacity, et
al.,

       Defendants.

CIVIL ACTION NO.
1:21-cv-01284-JPB

---

ASIAN AMERICANS ADVANCING
JUSTICE–ATLANTA, et al.,

       Plaintiffs,

    v.

BRAD RAFFENSPERGER, in his
official capacity as the Georgia
Secretary of State, et al.,

       Defendants.

CIVIL ACTION NO.
1:21-cv-01333-JPB

VOTEAMERICA, et al.,

     Plaintiffs,

   v.

BRAD RAFFENSPERGER, in his
official capacity as the Secretary of
State of the State of Georgia, et al.,

     Defendants.

CIVIL ACTION NO.
1:21-cv-01390-JPB

THE CONCERNED BLACK
CLERGY OF METROPOLITAN
ATLANTA, INC., et al.,

     Plaintiffs,

   v.

BRAD RAFFENSPERGER, in his
official capacity as the Georgia
Secretary of State, et al.,

     Defendants.

CIVIL ACTION NO.
1:21-cv-01728-JPB

COALITION FOR GOOD
GOVERNANCE, et al.,

       Plaintiffs,

    v.

BRIAN KEMP, in his official capacity
as Governor of the State of Georgia, et
al.,

       Defendants.

CIVIL ACTION NO.
1:21-cv-02070-JPB

UNITED STATES OF AMERICA,

       Plaintiff,

    v.

THE STATE OF GEORGIA, et al.,

       Defendants.

CIVIL ACTION NO.
1:21-cv-02575-JPB

IN RE GEORGIA SENATE BILL 202

MASTER CASE NO.
1:21-MI-55555-JPB

4

## ORDER

This matter is before the Court on the Court's *sua sponte* Order dated December 9, 2021 ("Order"), directing the parties in the above-styled related actions ("Related Actions") to inform the Court of their position regarding consolidation of the actions at least for discovery purposes.[1]  Having fully considered the parties' responses to the Order, the Court finds as follows:

### I.    BACKGROUND

The plaintiffs in the Related Actions (collectively "Plaintiffs") filed complaints seeking declarations that certain provisions of Georgia Senate Bill 202 ("SB 202") violate the United States Constitution and various federal statutes.

Governor Brian Kemp signed SB 202 into law on March 25, 2021, and the challenged provisions regulate election-related processes and activities ranging from absentee ballot voting to election monitoring.  Plaintiffs oppose the specified regulations on several grounds, including race discrimination, undue burden on the right to vote and abridgement of free speech, expression and association.

In response to the Court's Order, all parties in the following cases indicated that they consent to consolidation:  1:21-cv-01229; 1:21-cv-01259; 1:21-cv-01284;

---

[1] "A district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) *sua sponte*."  *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).

1:21-cv-01333; 1:21-cv-01728; and 1:21-cv-02575 (the "Consenting Cases"). The plaintiffs in Case Nos. 1:21-cv-01390 and 1:21-cv-02070 do not consent to consolidation (the "Objecting Cases").

The plaintiffs in the Objecting Cases contend in part that the issues of fact and law in their specific cases are distinct in significant respects and will not require the same type and scope of discovery as the claims alleged in the Consenting Cases. Therefore, they assert that consolidation of their matters with the Consenting Cases will compel them to engage in needless discovery and motion practice and thereby cause unnecessary delay and undue prejudice.

## II. **DISCUSSION**

Federal Rule of Civil Procedure 42(a) authorizes a court to consolidate matters that "involve a common question of law or fact." The power to consolidate is discretionary, and Rule 42(a) "codifies a district court's inherent managerial power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Young v. City of Augusta*, 59 F.3d 1160, 1168 (11th Cir. 1995) (quoting *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)) (internal punctuation omitted); *see also Hendrix*, 776 F.2d at 1495 (encouraging district courts to use Rule 42(a) as a tool to eliminate repetition and expedite trial).

In exercising its discretion, a district court must consider:

[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Hendrix*, 776 F.2d at 1495 (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)) (alteration in original).  Consolidation is generally appropriate where there is overlap regarding important facts and core liability questions.  *See Young*, 59 F.3d at 1169.

Here, the Related Actions involve virtually identical defendants and mostly the same facts and legal issues.  However, as the plaintiffs in the Objecting Cases point out, there are important distinctions between the Objecting Cases and the Consenting Cases.  The most notable difference is perhaps the lack of allegations of race discrimination in the Objecting Cases.  Because the allegations of race discrimination arguably predominate the complaints in the Consenting Cases, and those issues will likely require significant discovery, the plaintiffs in the Objecting Cases argue that consolidation of the Related Actions for discovery purposes will cause them to expend substantial resources engaging in discovery and other trial practice that will ultimately be irrelevant to their cases.

Applying the reasoning of *Young* and *Hendrix*, and in light of the consent of the parties, the Court finds that it is appropriate to consolidate the Consenting Cases (1:21-cv-01229; 1:21-cv-01259; 1:21-cv-01284; 1:21-cv-01333; 1:21-cv-01728; and 1:21-cv-02575) at least for discovery purposes.[2]  Going forward, the parties in the Consenting Cases are hereby **DIRECTED** to file all documents (whether or not related to discovery) in Master Docket File No. 1:21-MI-55555-JPB ("In re Georgia Senate Bill 202"), which was created to facilitate consolidation of these matters.

The Clerk is **DIRECTED** to add the instant order as well as all counsel of record in the Related Actions to the Master Docket File.  The individual Consenting Cases shall be **ADMINISTRATIVELY CLOSED** for docket management purposes.  Administrative closure will not prejudice the rights of the parties in the Consenting Cases in any manner, and the parties may request to reopen an individual case at any time if necessary.

The Court declines to consolidate the Objecting Cases into the Master File Docket for reasons including the possible prejudice to the plaintiffs in those matters of burdensome discovery unrelated to their claims.  As such, these matters

---

[2] The Court will decide at a later date whether consolidation for additional purposes is warranted.

will remain on their individual dockets.  The parties in the Objecting Cases are not required to participate in discovery with the Consenting Cases, but they may elect and are strongly encouraged to coordinate with those cases on specific issues, such as document requests, a central document repository, deposition scheduling, etc.

The Court will, however, endeavor to keep the Related Actions on the same general timeline where possible.  To that end, the following directions apply to all Related Actions:

- Any defendant who has not yet answered the complaint must do so by January 7, 2022.

- The parties (Consenting and Objecting Cases) must meet collectively pursuant to Rule 26(f) by January 14, 2022.

- Rule 26(f) reports must be filed by January 21, 2022.  The Objecting Cases may join the Rule 26(f) report of the Consenting Cases or file separate reports highlighting where they differ from the Consenting Cases.

- The Court **DENIES** as moot and without prejudice to being re-filed any pending motion relating to discovery.

- All discovery is stayed pending the Court's entry of an order pursuant to Rule 26(f).

**SO ORDERED** this 23rd day of December, 2021.

**J. P. BOULEE**
United States District Judge

Russ Declaration
Exhibit 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | CIVIL ACTION NO.<br>1:21-mi-55555-JPB |

## **SCHEDULING ORDER**

After reviewing the parties' Joint Preliminary Report and Discovery Plan

("Plan") (ECF No. 50) and considering the discussion with the parties at the Status

Conference held on January 31, 2022 ("Conference"), the Court orders that the

time limits and provisions for adding parties, amending the pleadings, filing

motions, conducting discovery and discussing settlement are as set out in the

Federal Rules of Civil Procedure and the Local Rules of this Court, except as

follows:

| EVENT | DEADLINE |
|---|---|
| Beginning of discovery period | February 1, 2022 |
| Initial disclosures | February 7, 2022 |
| Motion for preliminary injunction related to the primary election | February 28, 2022 |

| Motion for preliminary injunction related to the general election | June 3, 2022 |
|---|---|
| Expert reports | September 16, 2022 |
| Expert rebuttal reports | October 7, 2022 |
| Expert sur-rebuttal reports | October 21, 2022 |
| Close of discovery, except for expert depositions and supplemental discovery related to the November 8, 2022 election and December 6, 2022 runoff election | November 21, 2022 |
| Depositions of experts who do not plan to submit a supplemental report | November and December 2022 |
| Supplemental expert reports (limited to the November 2022 election and any December 2022 runoff) | January 6, 2023 |
| Expert supplemental rebuttal reports | January 20, 2023 |
| Depositions of experts who submit supplemental reports | January 30 – February 10, 2023 |
| Close of supplemental discovery | February 10, 2023 |
| Motions for summary judgment | March 27, 2023 |
| Opposition to motions for summary judgment | May 11, 2023 |
| Reply in support of motions for summary judgment | June 12, 2023 |

**Depositions**

Consolidated Plaintiffs[1] may take a total of sixty fact witness depositions plus one deposition of each expert witness. All defendants (State Defendants, Intervenor-Defendants and County Defendants) may take a total of sixty fact witness depositions plus one deposition of each expert witness. If the defendants cannot agree on the fact witnesses to be deposed, State Defendants and Intervenor-Defendants collectively may take a total of fifty fact witness depositions, and County Defendants collectively may take a total of ten fact witness depositions.

**Interrogatories**

Each Plaintiff Group may serve twenty-five interrogatories on State Defendants and twenty-five interrogatories on Intervenor-Defendants; (2) Consolidated Plaintiffs may serve twenty-five interrogatories on each County Defendant; (3) State Defendants may serve twenty-five interrogatories on each Plaintiff Group; (4) Intervenor-Defendants may serve twenty-five interrogatories on each Plaintiff Group; and (5) County Defendants may serve twenty-five interrogatories on each Plaintiff Group.

---

[1] Defined terms are as set forth in the parties' Plan.

**Other Items**

The Court notes the following additional matters taken up at the Conference:

- The setting of deadlines for motions for preliminary injunction does not waive any objections State Defendants may wish to raise under *Purcell v. Gonzalez*, 549 U.S. 1 (2006).

- As permitted under applicable law, County Defendants are not required to attend all depositions taken in this case.

- The Court encourages the parties to bear in mind Rule 1's admonition of a "just, speedy, and inexpensive determination of every action" but finds that Consolidated Plaintiffs may request from any defendant documents already in Consolidated Plaintiffs' possession, which were obtained through other means, including the Georgia Open Records Act.

- The parties may file a statement for the Court's consideration regarding issues that may affect the possibility of settlement between any Plaintiff Group and the County Defendants.

**SO ORDERED** this 1st day of February, 2022.

**J. P. BOULEE**
United States District Judge

Russ Declaration
Exhibit 6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | MASTER CASE NO. 1:12-MI-55555-JPB |

## CONSENT MOTION FOR ENTRY OF ESI ORDER

Plaintiffs move, with the consent of all Defendants and Intervenor-Defendants, for entry of a proposed stipulation and order among the Plaintiffs, State Defendants,[1] the District Attorney for Dougherty County, and Intervenor-Defendants[2] governing production of electronically stored information ("ESI") in these actions. The Plaintiffs, State Defendants, the District Attorney for Dougherty County, and Intervenor-Defendants have negotiated and reached agreement on the proposed ESI agreement attached as Exhibit 1.

---

[1] The "State Defendants" are the State of Georgia, Brian Kemp in his official capacity as Governor of Georgia, Brad Raffensperger in his official capacity as Secretary of State of Georgia, the Georgia State Election Board, and Edward Lindsey, Janice W. Johnston, Sara Tindall Ghazal, and Matthew Mashburn in their official capacities as members of the Georgia State Election Board.

[2] The "Intervenor-Defendants" are the Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, and Georgia Republican Party, Inc.

Plaintiffs and County Defendants[3] continue to negotiate in good faith to come to an agreement to govern the production of ESI. Plaintiffs and County Defendants believe they will be able to come to an agreement, and they consent to the entry of a separate order governing production of ESI among the other parties while they continue to negotiate.

Accordingly, in order for discovery to continue proceeding without delay, Plaintiffs, with the consent of Defendants and Intervenor-Defendants, respectfully request that the Court enter the proposed stipulated ESI agreement filed contemporaneously herewith.

Respectfully submitted this 18th day of March, 2022.

Kurt R. Erskine
United States Attorney
Northern District of Georgia

*/s/ Aileen Bell Hughes*
Aileen Bell Hughes
Georgia Bar No. 375505

Pamela S. Karlan
Principal Deputy Assistant
Attorney General
Civil Rights Division

*/s/ Maura Eileen O'Connor*
T. Christian Herren, Jr.

---

[3] The "County Defendants" are the Fulton County Solicitor and the county election officials and county election offices named as defendants in the following cases: *The New Georgia Project et al. v. Raffensperger et al.*, Case No. 21-cv-01229-JPB; *Georgia State Conference of the NAACP et al. v. Raffensperger et al.*, Case No. 21-cv-01259-JPB; *Sixth District of the African Methodist Episcopal Church et al. v. Kemp et al.,* Case No. 1:21-CV-01284-JPB; *Asian Americans Advancing Justice-Atlanta, et al. v. Raffensperger et al.,* Case No. 1:21-cv-01333-JPB. Here, the "County Defendants" does not include the District Attorney for Dougherty County.

Assistant U.S. Attorney
OFFICE OF THE UNITED STATES
ATTORNEY
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
Phone: (404) 581-6000
Fax: (404) 581-6181
*Attorneys for Plaintiff the United
States of America*

*/s/ Bryan L. Sells*
Bryan L. Sells
Georgia Bar No. 635562
THE LAW OFFICE OF BRYAN
SELLS, LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

Jon Greenbaum*
Ezra D. Rosenberg*
Julie M. Houk*
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Vilia Hayes*
Neil Oxford*
Gregory Farrell*

John A. Russ IV
Jasmyn G. Richardson
Maura Eileen O'Connor
Rachel R. Evans
Ernest A. McFarland
Elizabeth M. Ryan
Sejal Jhaveri
Attorneys, Voting Section
Civil Rights Division
U.S. DEPARTMENT OF JUSTICE
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Phone: (800) 253-3931
Fax: (202) 307-3961
john.russ@usdoj.gov
eileen.o'connor2@usdoj.gov
*Attorneys for Plaintiff the United
States of America*

*/s/ Nancy G. Abudu*
Nancy G. Abudu (Bar 001471)
*nancy.abudu@splcenter.org*
Pichaya Poy Winichakul (Bar 246858)
*poy.winichakul@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
P.O. Box 1287
Decatur, Georgia 30031-1287
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

*/s/ Adam S. Sieff*
Adam S. Sieff*
*adamsieff@dwt.com*
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Fl.

3

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for Plaintiffs Georgia State
Conference of the NAACP, Georgia
Coalition for the People's Agenda, Inc.,
League of Women Voters of Georgia,
Inc., GALEO Latino Community
Development Fund, Inc., Common Cause
and Lower Muskogee Creek Tribe*

/s/ Sean J. Young
Sean J. Young (Bar 790399)
*syoung@acluga.org*
Rahul Garabadu (Bar 553777)
*rgarabadu@acluga.org*
ACLU FOUNDATION OF GEORGIA,
INC.
P.O. Box 77208
Atlanta, Georgia 30357
Telephone: (678) 981-5295
Facsimile: (770) 303-0060

/s/ Sophia Lin Lakin
Sophia Lin Lakin*
*slakin@aclu.org*
Davin M. Rosborough*
*drosborough@aclu.org*
Jonathan Topaz*
*jtopaz@aclu.org*
Dale E. Ho*
*dho@aclu.org*
ACLU FOUNDATION
125 Broad Street, 18th Floor

Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

Matthew Jedreski*
*mjedreski@dwt.com*
Grace Thompson*
*gracethompson@dwt.com*
Brittni Hamilton*
*brittnihamilton@dwt.com*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
David M. Gossett*
*davidgossett@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, D.C. 20005-7048
Telephone: (202) 973-4288
Facsimile: (202) 973-4499

*Attorneys for Plaintiffs Georgia Muslim
Voter Project, Women Watch Afrika,
Latino Community Fund Georgia, and
The Arc of the United States*

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta*
Jacob D. Shelly*
Jyoti Jasrasaria*
Tina Meng*
Marcos Mocine-McQueen*
Spencer McCandless*
ELIAS LAW GROUP LLP

New York, New York 10004
Telephone: (212) 519-7836
Facsimile: (212) 549-2539

Susan P. Mizner*
smizner@aclu.org
ACLU FOUNDATION, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0781
Brian Dimmick*
bdimmick@aclu.org
ACLU FOUNDATION, INC.
915 15th Street NW
Washington, D.C. 20005
Telephone: (202) 731-2395

/s/ Leah C. Aden
Leah C. Aden*
laden@naacpldf.org
John S. Cusick*
jcusick@naacpldf.org
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592

/s/ Debo P. Adegbile
Debo P. Adegbile*
debo.adegbile@wilmerhale.com
Ilya Feldsherov*
ilya.feldsherov@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York 10007

10 G St. NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
unkwonta@elias.law
jshelly@elias.law
jjasrasaria@elias.law
tmeng@elias.law
mmcqueen@elias.law
smccandless@elias.law

Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN & HORST, LLC
1201 W. Peachtree St., NW
One Atlantic Center, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlwafirm.com
sparks@khlawfirm.com
*Attorneys for Plaintiffs The New Georgia
Project, Black Voters
Matter Fund, Rise, Inc., Elbert Solomon,
Fannie Marie Jackson
Gibbs, and Jauan Durbin*

/s/ Kurt Kastorf
Kurt Kastorf
KASTORF LAW, LLC
1387 Iverson Street, N.E., Suite 100
Atlanta, GA 30307
Telephone: (404) 900-0330
kurt@kastorflaw.com

Telephone: (212) 230-8800
Facsimile: (212) 230-8888

George P. Varghese*
george.varghese@wilmerhale.com
Stephanie Lin*
stephanie.lin@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Tania Faransso*
tania.faransso@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Nana Wilberforce*
nana.wilberforce@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Avenue,
Suite 2400
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Attorneys for Plaintiffs Sixth District
of the African Methodist Episcopal
Church, Delta Sigma Theta Sorority,
Georgia ADAPT, Georgia Advocacy*

Judith Browne Dianis*
Gilda R. Daniels
Georgia Bar No. 762762
Sabrina Khan*
Jess Unger*
ADVANCEMENT PROJECT
1220 L Street, N.W., Suite 850
Washington, DC 20005
Telephone: (202) 728-9557
Jbrowne@advancementproject.org
Gdaniels@advancementproject.org
Skhan@advancementproject.org
Junger@advancementproject.org

Clifford J. Zatz*
William Tucker*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
CZatz@crowell.com
WTucker@crowell.com

*Attorneys for Plaintiffs The Concerned
Black Clergy of Metropolitan Atlanta,
Inc., The Justice Initiative, Inc., Samuel
Dewitt Proctor Conference, Inc.,
Mijente, Inc., Sankofa United Church of
Christ Limited, Metropolitan Atlanta
Baptist Ministers Union, Inc., First
Congregational Church, United Church
of Christ Incorporated, Georgia Latino
Alliance for Human Rights, Inc., Faith in
Action Network, Greater Works
Ministries Network, Inc., Exousia
Lighthouse International C.M., Inc.*

*Office, and Southern Christian Leadership Conference*

/s/ *Phi Nguyen*
Phi Nguyen
 (Georgia Bar No. 578019)
Meredyth L. Yoon
(Georgia Bar No. 204566)
Laura Murchie
(*pro hac vice* application pending)
ASIAN AMERICANS ADVANCING
JUSTICE-ATLANTA
5680 Oakbrook Parkway, Suite 148
Norcross, Georgia 30093
(404) 585 8446 (Telephone)
(404) 890 5690 (Facsimile)
*pnguyen@advancingjustice-atlanta.org*
*myoon@advancingjustice-atlanta.org*
*lmurchie@advancingjustice-atlanta.org*

/s/ *Eileen Ma*
Eileen Ma*
Kimberly Leung*
ASIAN AMERICANS ADVANCING
JUSTICE-ASIAN LAW CAUCUS
55 Columbus Avenue
San Francisco, CA 94111
(415) 896 1701 (Telephone)
(415) 896 1702 (Facsimile)
*eileenm@advancingjustice-alc.org*
*kimberlyl@advancingjustice-alc.org*

/s/ *Niyati Shah*
Niyati Shah*
Terry Ao Minnis*°

7

ASIAN AMERICANS ADVANCING
JUSTICE-AAJC
1620 L Street, NW, Suite 1050
Washington, DC 20036
(202) 815 1098 (Telephone)
(202) 296 2318 (Facsimile)
*nshah@advancingjustice-aajc.org*
*tminnis@advancingjustice-aajc.org*
º Not Admitted in DC

*/s/ R. Adam Lauridsen*
Leo L. Lam*
R. Adam Lauridsen*
Connie P. Sung*
Candice Mai Khanh Nguyen*
Luis G. Hoyos*
Rylee Kercher Olm*
KEKER, VAN NEST AND
PETERS LLP
San Francisco, CA 94111-1809
(415) 391 5400  (Telephone)
(415) 397 7188 (Facsimile)
*llam@keker.com*
*alauridsen@keker.com*
*csung@keker.com*
*cnguyen@keker.com*
*lhoyos@keker.com*
*rolm@keker.com*

*Attorneys for Plaintiffs Asian Americans
Advancing Justice–Atlanta, Steven J.
Paik, Deepum Patel, Nora Aquino, Thuy
Hang Tran, Thao Tran, and Anjali Enjeti-
Sydow*

*Admitted pro hac vice

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing

Consent Motion for Entry of ESI Order has been prepared in Times New Roman

14, a font and type selection approved by the Court in L.R. 5.1(C).


*/s/ Maura Eileen O'Connor*
Maura Eileen O'Connor

# CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record in this case.


*/s/ Maura Eileen O'Connor*
Maura Eileen O'Connor

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| IN RE GEORGIA SENATE BILL 202 | MASTER CASE NO.<br><br>1:21-MI-55555-JPB |
|---|---|

---

## STIPULATION AND ORDER REGARDING DISCOVERY

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the undersigned Parties have entered into this Stipulation and Order to reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI"), and to govern discovery obligations in this action.

## I.     GENERAL PROVISIONS

**A.**  The Parties, as well as their officers, directors, employees, and agents are referred to as the "Parties" solely for purposes of this stipulation.

**B.**  "Plaintiff" or "Plaintiffs" as used herein shall mean the parties listed in Appendix A.

**C.**  "Plaintiff Group" refers to the Plaintiff Groups defined in Appendix A.

**D.**  "Defendant" or "Defendants" as used herein shall mean the parties listed in Appendix B.

**E.**     "Defendant Group" refers to the Defendant Groups defined in Appendix

B, as of March 13, 2022.

**F.**     The county election offices and county election officials who are named

defendants in the above-captioned matter, and the Solicitor General for

Fulton County, are not Parties to this agreement.

## II.     PRESERVATION AND PRODUCTION OF DOCUMENTS

### A.     Preservation

1.     The Parties agree that by preserving documents, things, and ESI for

the purpose of this litigation, they are not conceding that such material

is discoverable, nor are they waiving any claim of privilege.

2.     This Stipulation and Order does not modify any Party's obligation to

maintain and preserve documents, things, and ESI where otherwise

required by law, pursuant to a court order or administrative order, or

in response to other anticipated litigation.

### B.     Limitations on Obligation to Preserve and Produce

Subject to § II.E.1.c, for purposes of this action, the Parties agree to limit

the scope of preservation as described in this section.

1.    The Parties agree that they do not need to take specific, affirmative

steps to preserve for purposes of this litigation the following

categories of ESI:

a.    Delivery or read receipts of e-mail;

b.    Logs or other data from video-conferencing (including, *e.g.*, Teams

or Zoom) or instant messaging tools involving (i) attorneys for the

Plaintiffs in this case (and their staff) and/or (ii) attorneys for

Defendants in this case (and their staff);

c.    Temporary or cache files, including internet history, web browser

cache, and cookie files, wherever located;

d.    Internally facing server system logs;

e.    Externally facing or hosted file sharing system logs;

f.    System data from photocopiers or fax machines;

g.    Auto-saved copies of electronic documents;

h.    Deleted, slack, fragmented, or other data only accessible by

forensics; and

i.    Random access memory ("RAM"), temporary files, or other

ephemeral data that are difficult to preserve without disabling the

operating system.

     j.     Logs of or other data from audio calls (including, *e.g.*, landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP")) made to or from (i) attorneys for the Plaintiffs in this case (and their staff) and/or (ii) attorneys for Defendant(s) in this case (and their staff);

     k.     Voicemail messages on the voicemail systems of (i) attorneys for the Plaintiffs in this case (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff);

2.     When duplicate copies[1] of relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

     a.     ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *provided that* duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

---

[1] A "duplicate" in the context of this Order means a copy of an identical document, identified by matching hash values, as described in paragraph II.E.2.f, below.

b.   ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *provided that* duplicate copies of relevant ESI have been preserved in another reasonably accessible location.  However, if a Party knows that relevant ESI exists *only* on a Party's Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced.  If the Parties cannot reach agreement, they will seek a ruling from the Court.

3.   The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to § II.B.1-2 above.  As provided in § II.E.1.c below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

**C.   Limitations on Obligation to Collect, Review, and Produce**

Subject to § II.E.1.c, for purposes of this action, the Parties agree to limit the scope of collection, review, and production as described in this section.

1.  For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged *on or after* March 25, 2021, the date on which the first of the related cases was filed, the Parties agree that they do not need to collect, review, or produce such materials created by and, if shared with any other(s), exchanged *solely among*: (1) attorneys for any of the Plaintiffs in this case (and their staff); or (2) attorneys for any of the Defendants in this case (and their staff). The Parties further agree that they do not need to collect, review, or produce privileged communications exchanged solely between the Parties and their attorneys, created on or after March 25, 2021, provided that the communications do not include non-privileged materials.

2.  For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged *before* March 25, 2021, the Parties agree that they do not need to collect, review, or produce such materials

created by and, if shared with any other(s), exchanged *solely among* (1) the attorneys for a particular Plaintiff or Plaintiff Group (and their staff); or (2) the attorneys for a particular Defendant or Defendant Group (and their staff).

3.     The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to collect, review, or produce pursuant to § II.C.1-2 above.  As provided in § II.E.1.c below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

**D.     Identification & Production of Documents, Things, and ESI**

1.     <u>Search Process and Criteria</u>

a. It is the responsibility of the Party responding to a discovery request to identify and produce responsive information including ESI.  The Parties agree to meet and confer if either believes that date ranges or the use of keyword search criteria or analytic tools should be used to identify responsive ESI.  The Parties will also meet and confer prior to the use of any advance culling or technology assisted review methodologies.

b. The Parties shall produce responsive, non-privileged ESI and hard copy materials from a list of custodians that the Parties will attempt to agree upon. The Parties will cooperate with each other in advising which of their custodians, if any, are likely to have responsive information in their possession, custody or control. In addition, the parties will be responsible for identifying, searching, and producing from all non-custodial data sources (including but not limited to databases, information archives, shared drives, etc.) reasonably likely to have requested information.

c. The Parties agree that the use of an agreed-on search process or set of search criteria shall not be construed as a waiver of any Party's right to request subsequent searches and productions, where there is a showing that the agreed-to search process and criteria have resulted in inadequate productions or failed to identify relevant materials. The Parties also reserve their right to object to any additional requests or subsequent searches.

2. <u>Production Format</u>

a. ESI and hard copy paper documents will be produced as specified herein.

8

b.  Each hard copy paper document must be scanned and produced in
    electronic form as specified herein.

c.  Unless the Parties agree to a different production format, for ESI and
    scanned hard copy paper documents, black and white content shall be
    scanned or converted to single page Tagged Image File Format
    ("TIFF"), using CCITT Group IV compression at 300 d.p.i. and that
    accurately reflects the full and complete information contained in the
    original document.  One image file shall represent one page of the
    document.  Color content shall be produced as JPEG files at 300 d.p.i.
    using a high-quality setting.  Nothing in this provision prevents a
    Party from scanning, converting, and/or producing documents or
    content as color images.  Documents that cannot be accurately
    represented in black and white or documents that are primarily in
    color shall be scanned or converted to JPEG files using a high-quality
    setting.

d.  For ESI and scanned hard copy paper documents, the text of all pages
    in the document must be saved as one file.  For ESI, the text must be
    extracted from the native file.  If the extracted text of a native
    document does not exist or does not represent the entire document,

Optical Character Recognition ("OCR") will be provided instead.  For hard copy documents and for any redacted documents, OCR text will be provided.

e.  Metadata must be preserved and produced for the fields listed in Appendix C. However, the Parties agree to meet and confer to renegotiate the metadata fields identified in Appendix C should such metadata prove unreasonably burdensome for the producing Party to extract, given the needs of the case or the state in which documents exist in the ordinary course of business.  A Party is not obligated to populate manually any of the fields in Appendix C, with the exception of the following, which must always be populated for Documents and ESI: (a) Begin Bates, (b) End Bates, (c) Custodian, (d) Prod Volume, and (e) SourceParty.

f.  The Parties shall make reasonable efforts to deduplicate ESI. ESI shall be globally deduplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching hash value (e.g., MD5 or SHA-1) as compared against the same document type (i.e., family or

stand-alone file).  Custodian information for deduplicated documents

must be preserved and produced in the All_Custodians metadata field.

g.  All productions will provide a consistent load file with the same

number and order of fields regardless of the types of documents in the

production.

h.  All images (*e.g.*, TIFF, JPEG) will be produced in a directory labeled

IMAGES.  Subdirectories may be created so that one directory does

not contain more than 5000 files.

i.  All native files (with the proper Windows-associated extension) will

be produced in a directory labeled NATIVE. Subdirectories may be

created so that one directory does not contain more than 5000 files.

j.  An image cross reference file (a file in Concordance

Opticon/Relativity .log format that contains Bates Numbers, paths to

images, and document break indicators for all ESI in each production)

and a load file containing all required metadata fields will be

produced in a directory labeled DATA.

k.  All extracted text and/or OCR will be produced in a directory labeled

TEXT.  OCR is searchable text generated for scanned documents or

native files that is in ASCII format, where all pages in the document

will be represented in one file.  The Parties agree to provide a text file

for all documents, even if the size of the file is zero. Subdirectories

may be created so that one directory does not contain more than 5000

files.

l. If a Party needs to redact a portion of a document for which only a

native file would be produced, the Parties will meet and confer

regarding production of the redacted document.

m. Except for native files, the Parties will produce responsive documents

Bates-stamped with a prefix to indicate the Party producing the

documents.  The Bates numbering convention shall be in the format

"XXX######" where "XXX" represents the short character

abbreviation for the producing Party and "######" represents the six-

digit sequential number of the page being produced by that Party.

Each Party, Plaintiff Group, or Defendant Group will use a unique

abbreviation.  For native files, which cannot be Bates-stamped, the

Parties will rename the file as [Bates Number].[extension] with a

single-page placeholder image in the production containing the

original name of the file and stamped with the corresponding Bates

number.

n.  Specifications for Specific File Types:

(i)      Text Messages. The Parties will meet and confer to seek

agreement on an appropriate production format if a Party

identifies text messages that are potentially responsive to a

request.

(ii)     Audio files and video files shall be produced as native

files unless the native form is a proprietary format, in which

case the Parties will meet and confer regarding production.

Any such conference shall be held within seven (7) days of

identification of such materials in initial disclosures, a direct

request for the production of audio or video files, or a

determination by a producing Party that such materials are

responsive to a broader request, and any such conference shall

include the technicians with sufficient knowledge to explain the

content and format of the material at issue.

(iii)    Excel or other types of spreadsheets shall be produced as

native files with all cells unlocked.  For each Excel or

spreadsheet file, a placeholder image containing the file name

shall be included in the production.

(iv)      Presentations (e.g., PowerPoint) shall be produced as both (1) color images with extracted text and (2) native files with all notes unaltered and viewable. For each presentation file, a placeholder image containing the file name shall be included in the production.

(v)      Social media content (including comments, "likes," sharing, and other interactions with the post(s)) should be produced as individual images with extracted text, including information about the participants and the date and time of the communications.

(vi)      The Parties will meet and confer regarding the production of records or data from systems of record or databases in an agreed upon format. Any such conference shall be held within fourteen (14) days (unless the Parties agree to a later date) of identification of databases in initial disclosures, a direct request for the production of databases, or a determination by a producing Party that databases are responsive to a broader request, and any such conference shall

include the technicians with sufficient knowledge to explain the
content and format of the databases.

o. The Parties agree to meet and confer regarding alternative production
formats, including native files or pdf, should the producing Party find
that it is unduly burdensome to adhere to the production format
specified in this section for certain documents, in light of the format in
which the documents are maintained in the ordinary course of
business.

3.  Production Media

a.  Except for records or data produced from large databases or
database systems (*e.g.*, state voter files), responsive documents and
ESI will be produced via .zip file(s) uploaded to an electronic file
transfer site, or as otherwise agreed by the Parties.  Productions
produced via an electronic file transfer site will be divided into .zip
files of no more than 20 gigabytes each.  In the case of documents
and ESI produced by the United States, responsive information
will be produced via .zip file(s) uploaded to the Justice Enterprise
File Sharing System (JEFS).

b.  Productions via electronic file transfer will be uploaded in a manner (or otherwise clearly labeled) to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates-range(s).

c.  Records or data produced from large databases or database systems (*e.g.*, state voter files, etc.) will be produced on CD, DVD, thumb drive, or hard drive appropriate to the size of the production via overnight delivery to counsel for the requesting Party.  Such production media will be clearly labeled to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates-range(s).

d.  The Parties agree to remove all encryption or password protection for all ESI produced or, if applicable, to provide passwords or assistance needed to open encrypted files.

**E.  Privileged Documents, Things and ESI**

1.  <u>Privilege Logs and Redactions</u>

a.  Where a producing Party has any document that contains both privileged and non-privileged responsive information, the responsive information shall be produced, but the privileged information may be

redacted.  Unless the Parties agree otherwise, for all documents withheld in whole or in part based on privilege, the Parties agree to furnish logs which comply with the legal requirements under the Federal Rules of Civil Procedure. At minimum, the privilege log must contain a Bates range, the type of document, the date of the creation or last modification or transmission of the document, the author or authors of the document with any attorneys designated as such, the recipients of the document (including individuals copied or blind-copied, if available) with any attorneys designated as such, whether the document contains attachments, the privilege or privileges claimed, and the basis for the assertion of the privilege or protection.

b.  Privilege logs may be produced on a rolling basis, but, in any event, no later than 30 days after each associated production. If any log is produced less than 30 days before the close of discovery, the receiving Party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), and shall have the right to have those complaints resolved, and have any non-privileged documents produced, regardless of the date of the close of discovery.

c.  If any discovery request appears to call for the production of
documents, things or ESI covered by § II.B or II.C, the responding
Party is not required to produce or identify such information on a
privilege log.  However, if a Party preserves relevant documents,
things, or ESI covered by § II.B or II.C in order to support a claim or
defense in this case, the Party shall produce such information or
identify it on a privilege log notwithstanding this subsection.

2.  Inadvertent Disclosure of Privileged or Protected Information

a.  The Parties agree that a disclosure of information contained within
documents, things, and ESI that is protected by attorney-client
privilege, work product protection, common interest privilege,
and/or applicable governmental privileges (such as deliberative
process privilege) does not operate as a subject matter waiver in
this case if: (1) the disclosure is inadvertent and is made in
connection with this litigation; (2) the holder of the privilege or
protection took reasonable steps to prevent disclosure; and (3) the
holder promptly took reasonable steps to rectify the error.

b.  If the producing Party inadvertently discloses information that it
asserts is privileged or protected, it will notify the receiving Party

within 14 days of discovery of inadvertent disclosure and provide
the production date, number, and volume of the disc or drive on
which the production was produced, if applicable, ("production
media"), and the Bates number(s) or Document ID (for native
files) of all material that it believes contains the inadvertently
disclosed information.

c.     If a production contains information that the receiving Party
believes is privileged or protected and was inadvertently produced,
it will promptly notify the producing Party and provide the Bates
number(s) or Document ID (for native files) of the item it believes
was inadvertently produced.  Within 14 days after receiving
notification, the producing Party may make a written request for
return of the material.  If the producing Party does not send a
written request for return of the material to the receiving Party
within 14 days of the notification, the producing Party waives all
claims of privilege or protection as to the material, but this still
does not operate as a subject matter waiver.

d.     When the receiving Party receives a written demand for return of
the material, it will make reasonable, good faith efforts to promptly

sequester, return or destroy all inadvertently produced material identified by the producing Party. If copies of inadvertently produced materials are located or stored on the receiving Party's Backup System(s), those copies need not be affirmatively removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures.

e. If the receiving Party must destroy or delete production media (*e.g.,* CD, DVD, thumb drive, or downloaded file(s)) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

f. If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will sequester and retain the inadvertently produced material while seeking a ruling from the Court. Nothing in this Stipulation prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work,

systems or locations where inadvertently produced material is sequestered.

**F.    Costs of Document Production**

Each Party shall bear the costs of producing its own documents, things, and ESI.

## III.   MISCELLANEOUS

**A.**    The Stipulation may be executed in counterparts.

**B.**    The terms of this Stipulation and Order are not exhaustive.  Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

**C.**    None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request.

**D.**    The Parties agree that discovery requests may be served by email.

Agreed to by counsel for the Parties:

For the United States:

_____/s/ Elizabeth M. Ryan_____          Date:  March 18, 2022

For the AME Plaintiff Group:

     /s/ *Matt Jedreski*                            Date:  March 18, 2022

For the Ga. NAACP Plaintiff Group:

     /s/ *Ezra Rosenberg*                       Date:  March 18, 2022

For the New Georgia Project Plaintiff Group:

     /s/ *Uzoma Nkwonta*                      Date:  March 18, 2022

For the Concerned Black Clergy Plaintiff Group:

     /s/ *Jess Unger*                              Date:  March 18, 2022

For the Advancing Justice Plaintiff Group:

     /s/ *R. Adam Lauridsen*                   Date:  March 18, 2022

For the State Defendants Group:

     /s/ *Bryan P. Tyson*                       Date:  March 18, 2022

For the District Attorney for Dougherty County:

_____/s/ *Bryan P. Tyson*_____          Date:  March 18, 2022

For the Intervenor Defendants Group

_____/s/ *Cameron T. Norris*_____          Date:  March 18, 2022

So ORDERED:

DATE:_____          _____

# APPENDIX A

The Plaintiffs in this action are:

1. The United States;

2. The "AME Plaintiff Group" consists of the Sixth District of the African Methodist Episcopal Church, Georgia Muslim Voter Project, Women Watch Afrika, Latino Community Fund Georgia, Delta Sigma Theta Sorority, Inc., The Arc of The United States, Georgia Adapt, Georgia Advocacy Office, and Southern Christian Leadership Conference;

3. The "Ga. NAACP Plaintiff Group" consists of the Georgia State Conference of the NAACP; Georgia Coalition for the People's Agenda, Inc.; League of Women Voters of Georgia, Inc.; Galeo Latino Community Development Fund, Inc.; Common Cause; Lower Muskogee Creek Tribe; and Urban League of Greater Atlanta, Inc.;

4. The "New Georgia Project Plaintiff Group" consist of The New Georgia Project, Black Voters Matter Fund, Rise, Inc., Elbert Solomon, Fannie Marie Jackson Gibbs, and Jauan Durbin;

5. The "Concerned Black Clergy Plaintiff Group" consists of The Concerned Black Clergy of Metropolitan Atlanta, Inc., The Justice Initiative, Inc., Samuel Dewitt Proctor Conference, Inc., Mijente, Inc., Sankofa United

Church of Christ Limited, Metropolitan Atlanta Baptist Ministers Union, Inc., First Congregational Church, United Church of Christ Incorporated, Georgia Latino Alliance for Human Rights, Inc., Faith in Action Network, Greater Works Ministries Network, Inc., and Exousia Lighthouse International C.M., Inc.; and

6. The "Advancing Justice Plaintiff Group" consists of Asian Americans Advancing Justice–Atlanta, Steven J. Paik, Deepum Patel, Nora Aquino, Thuy Hang Tran, Thao Tran, and Anjali Enjeti-Sydow.

# APPENDIX B

The Defendants are:

1. The "State Defendants Group" consists of The State of Georgia, Brian Kemp in his official capacity as Governor of Georgia, Brad Raffensperger in his official capacity as Secretary of State of Georgia, the Georgia State Election Board, and Edward Lindsey, Janice W. Johnston, Sara Tindall Ghazal, and Matthew Mashburn in their official capacities as members of the Georgia State Election Board;

2. The "Intervenor Defendants Group" consists of the Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, and Georgia Republican Party, Inc.; and

3. The District Attorney for Dougherty County.

**APPENDIX C**

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| **Begin_Bates** | Bates number for the first image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| **End_Bates** | Bates number for the last image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| **Begin_Attach** | <u>Only</u> for document | Y | Y | Y |

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| | families,[2] provide Bates number for the first image of the first attachment or embedded file. Leave this field blank if there is no document family. | | | |
| **End_Attach** | <u>Only</u> for document families, provide Bates number for the last image of the last attachment or embedded file. Leave this field blank if there is no document family. | Y | Y | Y |

---

[2] Document Family means a group of related documents, including: (1) paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc.; (2) email with its attachment(s); and (3) files with embedded documents.

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| **Parent ID** | Bates number of the parent document (filled in only for "child" documents). | Y | Y | Y |
| **PgCount** | The number of images produced for this document (1 for placeholder). | Y | Y | Y |
| **From** | "From" field in email. | Y | | |
| **To** | "To" field in email. | Y | | |
| **CC** | "CC" field in email. | Y | | |
| **BCC** | "BCC" field in email. | Y | | |
| **Subject** | "Subject" field in email. | Y | | |
| **Attachments** | File names of the attachments. | Y | | |

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| **DateSent** | DateSent field from email. Include both date and time (format: 9/28/2012 1:16 PM or 9/28/2012 13:16:34). | Y | | |
| **Redacted** | "Yes" if the document has been redacted. | Y | Y | Y |
| **Confidential** | Confidential Designation (if any). | Y | Y | Y |
| **MD5Hash** | The MD5 hash value calculated when the file was collected or processed. | Y | Y | |
| **Prod_FilePath** | The path to the native file on the production media. | | Y | |
| **Native_filename** | Original name of the native | Y | Y | |

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| | file when the file was collected or processed. | | | |
| Text File Path | Path to the text file on the production media. | Y | Y | Y |
| All_Custodians | Additional custodians who had a copy of the document prior to de-deduplication, including duplicate custodians. | Y | Y | |
| Custodian | Name of custodian associated to original produced file (Last Name, First Name format) Where redundant names occur, individuals | Y | Y | |

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| | should distinguished by an initial which is kept constant throughout productions. For instance: Smith, John A. and Smith, John B. | | | |
| Calendar_Start_Time | Start date and time of calendar or appointment | | Y | |
| Author | Author of document | | Y | Y |
| LastAuthor | Last author or editor of document, from document properties | | Y | |
| Email Importance | Whether an e-mail was marked with "high importance." | Y | | |

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| **Comments** | Comments field value pulled from the metadata of the native file. | | Y | |
| **Has_Comments** | Microsoft Word, Excel or PowerPoint document contains comments. | | Y | |
| **Has_Track_Changes** | Microsoft Word or Excel document contains tracked changes. | | Y | |
| **Hidden_Text** | Document has hidden text. | | Y | |
| **DateCreated** | Date the document was created (format: MM/DD/YYYY) | | Y | |

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| TimeCreated | Time at which document was created | | Y | |
| DateLastModified | Date an electronic document was last modified (format: MM/DD/YYYY) | | Y | |
| TimeLastModified | Time at which document was last modified | | Y | |
| FileName | File name of an electronic document | | Y | |
| FileExt | File extension | Y | Y | |
| FileSize | The original file size of the produced document | | Y | |
| ProdVolume | The production volume associated with | Y | Y | Y |

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
|  | the produced file |  |  |  |
| **SourceParty** | The name of the Producing Party | Y | Y | Y |

Russ Declaration
Exhibit 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE GEORGIA SENATE BILL 202

MASTER CASE NO.
1:21-mi-55555-JPB

## **ORDER**

Before the Court is the parties' Consent Motion for Entry of ESI Order

("Motion").[1]  ECF No. 120.  For good cause shown, the Motion is **GRANTED**.

The Stipulation and Order Regarding Discovery (ECF No. 120-1) that is

attached to the Motion is approved and incorporated by reference as if fully set

forth herein.

**SO ORDERED** this 21st day of March, 2022.

_____
J. P. BOULEE
United States District Judge

---

[1] The Motion and Order do not apply to County Defendants (as they are defined in the Motion).