# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STATE OF GEORGIA, *et al.*,

    Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE,

    Defendant.

Case No. 1:21-cv-3138 (TNM)

## DECLARATION OF VANESSA R. BRINKMANN

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.     I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice ("DOJ" or "Department"). In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP – a role I have served in some form since 2008. Prior to becoming Senior Counsel, I served as Counsel to the IR Staff, as an Attorney-Advisor and, from 2003-2008, as a Government Information Specialist (formerly FOIA Specialist) on the IR Staff. The IR Staff is responsible for processing FOIA requests for records within OIP, as well as within six senior leadership offices of the DOJ: the Office of the Attorney General (OAG), the Office of the Deputy Attorney General (ODAG), the Office of the Associate Attorney General (OASG), the Office of Legal Policy (OLP), the Office of Legislative Affairs (OLA), and the Public Affairs Office (OPA).

2.     The IR Staff devises appropriate records searches for each FOIA request it processes on behalf of itself and the Department's senior leadership offices and determines whether records are appropriate for release in accordance with the FOIA. In processing such

requests, the IR Staff consults with personnel in the Department's senior leadership offices and, when appropriate, with other components within the DOJ, as well as with others in the Executive Branch.

3.      I make the statements herein on the basis of personal knowledge, including my extensive experience with the FOIA, with OIP, and in handling FOIA requests for senior leadership office records, as well as on information acquired by me in the course of performing my official duties.

4.      This declaration addresses OIP's receipt of Plaintiffs' FOIA request, OIP's processing of and responses to the request, and the searches OIP performed in response to Plaintiffs' request.  With the parties' June 3, 2022 Joint Status Report, see ECF No. 12, Plaintiffs identified their challenges for briefing.  As to OIP, Plaintiffs do not intend to challenge the propriety of OIP's withholdings pursuant to FOIA exemptions, and thus this declaration addresses only the adequacy of OIP's searches.

## I. Plaintiffs' FOIA Request to OIP

5.      In a letter dated August 31, 2021, Plaintiffs submitted a FOIA request to the Department's Mail Referral Unit (MRU).  The MRU forwards FOIA requests to the component within the Department deemed most likely to maintain the records that the requestor is seeking. In this case, Plaintiffs' request was forwarded to OIP by the MRU on September 24, 2021.  The MRU tracking number associated with Plaintiffs' request is EMRUFOIA083121-21.  Plaintiffs' request generally sought  "Department of Justice ("DOJ") communications discussing the State of Georgia's recent election law – the Election Integrity Act of 2021 ("Act"), which was enacted on March 25, 2021," and further specified three categories of records requested: (1) "DOJ communications with various non-governmental entities that are involved in the legal challenges

to the Act," and included a list of sixty-two non-governmental individuals and entities; (2) "DOJ communications with members of Congress (or their staff) regarding the Act;" and (3) "internal guidance documents that DOJ uses to determine when a state election law violates the VRA."  A copy of Plaintiffs' request is attached hereto as Exhibit A.

6.      Additionally, Plaintiffs requested a waiver of fees in their request.[1]

7.      By letter dated September 29, 2021, OIP acknowledged receipt of Plaintiffs' request and provided administrative tracking number FOIA-2021-02274.  A copy of OIP's September 29, 2021 acknowledgement letter is attached hereto as Exhibit B.

8.      On December 1, 2021, Plaintiffs filed suit in connection with the above-referenced FOIA request.  See Complaint, ECF No. 1.

**II.  OIP's Processing of and Responses to Plaintiffs' FOIA Request**

9.      By letter dated April 21, 2022, OIP provided a final response to Plaintiffs' FOIA request.  As detailed in OIP's final response letter, OIP informed Plaintiffs that searches had been conducted within OAG, ODAG, OASG, and OLA, as well as in the electronic database of the Departmental Executive Secretariat ("DES").  As a result of those searches, twenty-one pages containing records responsive to Plaintiffs' request were located.  The letter also informed Plaintiffs that all twenty-one pages were appropriate for release with certain information withheld pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 522(b)(6).  A copy of OIP's final response letter, including the twenty-one pages produced to Plaintiffs, is attached hereto as Exhibit C.

---

[1] No fees have been assessed for Plaintiffs' FOIA request.  Accordingly, Plaintiffs' request for a fee waiver is moot.

10.     On June 21, 2022, the Civil Rights Division ("CRT") referred nine pages of records to OIP for processing and direct response to Plaintiffs.  After review of these nine pages, OIP determined that seven pages had previously been located by OIP in the searches described in Paragraph 9 and were provided to Plaintiffs in OIP's April 21, 2022 response.  OIP processed the remaining two pages and determined that they were appropriate for release in full.  OIP informed Plaintiffs of these determinations and provided Plaintiffs with a copy of the two pages accompanied by its June 30, 2022 response letter.  A copy of OIP's response letter, including the two pages produced to Plaintiffs, is attached hereto as Exhibit D.

### III. Searches Conducted by OIP in Response to Plaintiffs' Request

A.   Overview of OIP's Search Process

11.     As noted *supra* in Paragraph 1, OIP processes FOIA requests on behalf of itself and the six DOJ senior leadership offices.  Upon receipt of a FOIA request, OIP makes determinations as to the appropriate office(s) in which to conduct initial records searches, records repositories within the office(s) to search, and search methods to use.  Assessments of where responsive records are likely maintained are based upon a review of the individual FOIA request and the nature of the records sought therein, OIP's familiarity with the types and locations of records that each office maintains, discussions with knowledgeable personnel within the Department, and any research that OIP staff may conduct on the topic of the request.  Moreover, during the course of conducting records searches and in reviewing records located in response to those searches, OIP staff engage in a dynamic search process, wherein OIP follows search "leads" indicative of additional search repositories, custodians, or methods as they may arise.

12.     In order to ensure that reasonably thorough records searches are conducted, during the course of processing a given FOIA request, OIP consistently assesses its search

parameters and will initiate additional search parameters as appropriate.  For example, OIP will evaluate whether other (both current and former) Department staff members' records should be searched or whether supplemental or alternative search methods should be used, such as targeted inquiries to knowledgeable leadership office staff regarding the existence of records that would not be identified via "keyword" searches.  This assessment is based on OIP's review of records located through initial records searches, discussions with Department personnel, or other pertinent factors.  In sum, OIP's record searches are conducted in an agile and comprehensive manner, and the various search steps taken by OIP staff in response to a given request work in tandem to achieve a complete records search.

13.     When conducting a search in response to a given request, OIP staff employ any one of a variety of search methods, or a combination of methods, depending on the factors at hand and on the type of records systems implicated in the search.  As relevant here, OIP determined that potentially responsive records may be located within email systems, individual computer drives which includes a custodian's H: drive and OneDrive, and/or within the Department Executive Secretariat.

B.     <u>Overview of OIP's Search Methods within Email Systems and Individual Computer Drives</u>

14.     OIP, in conjunction with an eDiscovery team within the Department's Justice Management Division (JMD), conducts searches within the email records and individual computer drives of Department leadership employees. As part of this process, OIP identifies a comprehensive list of custodians to be searched, as well as a comprehensive set of search parameters to be used, both by OIP staff and by the eDiscovery team, to effectuate the search. Keyword searches are then conducted within custodians' entire email accounts (including all

folders and calendars) and individual computer drives, to isolate and locate a universe of potentially responsive records.  OIP staff then use an eDiscovery platform to conduct a review of the material retrieved using those initial search parameters.

      C.   Search Parameters Used by OIP to Search Email and Electronic Documents

     15.    As it pertains to Plaintiffs' request, OIP conducted searches consistent with the above-described standard search process and methods.  Additionally, OIP used the specified search parameters discussed within this section.  Plaintiffs agreed to exclude all Trump-era custodians except for former Attorney General William Barr, former Deputy Attorney General Jeffrey Rosen, former OAG official William Levi, and former ODAG official Patrick Hovakimian.  After removing the excluded Trump-era custodians, OIP ultimately searched the records of fourteen OAG custodians, thirty-eight ODAG custodians, twenty-two OASG custodians, and eight OLA custodians.  The following is the list of all eighty-two custodians searched by OIP:

- **Office of Attorney General**: Merrick Garland, Matthew Klapper, Kate Heinzelman, Brian Fletcher, Margaret Goodlander, Tamarra Matthews-Johnson, Tim Visser, Giovanni Sanchez, Marcia Davidson, Theresa Watson-Walker, Mitchell Reich, Monty Wilkinson, William Barr, and William Levi.

- **Office of Deputy Attorney General**: Lisa Monaco, John Carlin, Anita Singh, Frank Lin, Matthew Axelrod, Karl Thompson, Myesha Braden, Kevin Chambers, Iris Lan, Emily Loeb, Jeremy Maltby, David Newman, Bradley Weinsheimer, Lawrence Atkinson, Eun Young Choi, Margy O'Herron, Anders Folk, Megan Lewis, Sara Solow, Sonja Ralston, Kathy Toomey, Margot Benedict, Julie Dickerson, Ashley Robertson, Emily Ryan, Apiyo Oloya, Maya Suero, Jordan Shub, Shomari Figures, SeLena Powell, Adam Braverman, Richard DiZinno, Mark Lytle, Jenn Mascott, Paul Perkins, Michael Keilty, Jeffery Rosen, and Patrick Hovakimian.

- **Office of Associate Attorney General**: Vanita Gupta, Matthew Colangelo, Peter Hyun, Emma West Rasmus, Theron Pride, Rachel Rossi, Ricki Seidman, Sparkle Sooknanan, Patty Brink, Adam Grogg, Diane Kelleher, Gene Kimmelman, Alberto Ruisanchez, Burden Walker, Ashley Wilson, Patrick Davis, Katherine Allen, Sean Day, Jennifer Dickey, Brinton Lucas, Taylor McConkie, Alexander Kazam,

- **Office of Legislative Affairs**: Peter Hyun, Joseph Gaeta, Kira Antell, Christine Calce, Leah Schwartz, Saundra Callier, Helaine Greenfield, and Jessica Hart.

This list is exhaustive of the custodians in each of the four leadership offices identified, with the exception of personnel in roles clearly unrelated to the topic of Plaintiffs' request.  OIP did not search within the records of the remaining two Offices for which OIP processes FOIA requests for: OLP and OPA, as neither office would be likely to maintain records responsive to Plaintiffs' request given the functions of each office.[2]

16.     As to Part 1 of Plaintiffs' request, which sought records of communication between the Department and sixty-two listed non-governmental individuals and organizations discussing the Act, OIP conducted an electronic search within the email and electronic documents of the listed custodians from OAG, ODAG, and OASG.  The email search was constructed so that potentially responsive communications would be identified if they contained one of the relevant search terms within the to, from, cc, and bcc fields of emails *and* one of the relevant search terms within the subject line or text body of the email.  Within the to, from, cc, and bcc fields of the emails of the seventy-four custodians from OAG, ODAG, and OASG who were searched, OIP utilized the following search strings containing identifying information for each of the sixty-two listed individuals and entities:

---

[2] The mission of OLP is to develop and implement the Department's significant policy initiatives, handle special projects that implicate the interests of multiple Department components, coordinate with other interested Department components and other Executive Branch agencies, and serve as the primary policy advisor to the Attorney General and the Deputy Attorney General; it also reviews and coordinates all regulations promulgated by the Department and all of its components, assists the Attorney General with responsibilities in recommending candidates for federal judgeships, and coordinates the judicial nomination and confirmation process with the White House and the Senate.  *See* https://www.justice.gov/olp.  OPA is the principal point of contact for the Department with the news media and is responsible for ensuring that the public is informed about the Department's activities and about the priorities and policies of the Attorney General and the President with regard to law enforcement and legal affairs.  *See* https://www.justice.gov/opa.

- @advancingjustice-aajc.org OR "Asian Americans Advancing Justice" OR "AAJC"
- @advancingjustice-atlanta.org
- @advancingjustice-alc.org OR "Asian Law Caucus"
- @keker.com OR "Keker"
- @splcenter.org OR "Southern Poverty Law Center" OR "SPLC"
- @aclu.org OR "ACLU" OR "American Civil Liberties Union"
- @acluga.org
- @dwt.com OR "DWT" OR "Davis Wright Tremaine"
- @wilmerhale.com OR "WilmerHale"
- @ame6.church OR "AME" OR "Sixth District of the African Methodist Episcopal Church"
- @gamvp.org OR "Georgia Muslim Voter Project"
- womenwatchafrika@gmail.com OR "Afrika"
- @lcfgeorgia.com OR "LCF" OR "Latino Community Fund"
- @deltasigmatheta.org OR "Delta Sigma Theta"
- @ga.thearc.org OR "Arc"
- @thearc.org
- @disabilitylink.org OR "Disability Link"
- @thegao.org OR "GAO" OR "Georgia Advocacy Office"
- @nationalsclc.org OR "Southern Christian Leadership Conference" OR "SCLC"
- @concernedblackclergy.com OR "Concerned Black Clergy"
- @kastorflaw.com OR "Kastorf"
- @advancementproject.org OR "Advancement Project"
- @crowell.com OR "Crowell"
- @justiceinc.org "Justice Initiative"
- @sdpconference.info OR "SDPC" OR "Samuel Dewitt"
- @mijente.net OR "Mijente"
- @sankofa.church OR "Sankofa"
- @newbirth.org OR "New Birth"
- @mabmu95.org OR "Metropolitan Atlanta Baptist Ministers Union"
- @firstchurchatl.org OR "First Congregational Church"
- @glahr.org OR "GLAHR" OR "Georgia Latino Alliance"
- @faithinaction.org OR "Faith in Action"
- @greaterworksfamily.com OR "Greater Works"
- "Exousia"
- "Lighthouse"
- @uscgg.org OR "USCGG" OR "Coalition for Good Governance"
- @brucepbrownlaw.com OR "Bruce P. Brown" OR "Bruce Brown"
- @ichterdavis.com OR "Ichter"
- @hmhlaw.com OR "HMH" OR "Hecht"
- @grdlegal.com OR "GRD" OR "Giacoma"
- @jcdcgo.org OR "JCDC" OR "Jackson County Democratic Committee"
- @gappac.org OR "GAPPAC" OR "GAP" OR "Georgia Advancing Progress"
- @naacpga.org OR "NAACP" OR "NAACPGA"

- @bryansellslaw.com OR "Bryan Sells"
- @lawyerscommittee.org OR "Lawyer's Committee"
- @hugheshubbard.com OR "Hubbard"
- @naacpldf.org OR "NAACPLDF"
- @thepeoplesagenda.org OR "People's Agenda"
- @lwvga.org OR "LWV" OR "League" OR "LWVGA"
- @galeo. @ichterdavis.com OR "Ichter"
- @commoncause.org OR "Common Cause"
- "Muskogee"
- @ulgatl.org OR "ULGATL" OR "Urban League"
- @newgeorgiaproject.org "New Georgia Project"
- @khlawfirm.com OR "Krevolin" OR "KHLaw"
- @perkinscoie.com OR "Perkins"
- @blackvotersmatterfund.org OR "Black Voters Matter"
- @risefree.org OR "Rise"
- "VoteAmerica"
- @voterparticipation.org OR "Voter Participation"
- @rh-law.com OR "Hardin" OR "RH-Law"
- @campaignlegalcenter.org OR "CLC" OR "Campaign Legal Center"
- @centerforvoterinformation.org OR "Center for Voter Information"
- @fairfightaction.com OR "Fair Fight"
- "Stacey Abrams" OR Abrams

Within the subject line and text body of the emails, OIP utilized the following search strings:

- (Georgia OR GA) AND ("SB 67" or "Senate Bill 67");
- (Georgia OR GA) AND ("SB 241" or "Senate Bill 241");
- (Georgia OR GA) AND ("SB 202" or "Senate Bill 202");
- (Georgia OR GA) AND ("HB 531" or "House Bill 531");
- (Georgia OR GA) AND "election integrity";
- (Georgia OR GA) AND "election law";
- (Georgia OR GA) AND (vot* NEAR(1) law);
- (Georgia OR GA) AND "voter ID law";
- (Georgia OR GA) AND "voter identification law";
- "Election Integrity Act"; and
- "Special Committee on Election Integrity".

The search terms used within the subject line and text body of the emails were selected to

identify communications addressing Georgia's recent voting law by including multiple potential

names or descriptions that might have been used for the law.  This email search was targeted to

locate emails containing one of the identifying terms related to the listed individuals and entities

*and* one of the search strings listed above.  The electronic documents search for the OAG, ODAG, and OASG custodians all utilized the same search strings listed above.  Given that Part 1 of Plaintiffs' request sought communications between individuals at DOJ and others, it was determined that email systems were the most likely location for any responsive records.  However, OIP also searched the electronic documents of each search custodian, which did not identify any additional responsive documents.

17.    As to Part 2 of Plaintiffs' request, which sought "all communications between DOJ personnel and members of Congress (or their staff) from November 3, 2020, through the date of the search, that discuss the Act," OIP conducted an electronic search within the email and electronic documents of the eight OLA custodians listed above.  OLA was determined to be the office most likely to maintain responsive records, as it has responsibility for the development and implementation of strategies to advance the Department's legislative initiatives and other interests relating to Congress.  OLA is the office within the Department which routinely communicates with Congress and coordinates the Department's responses to Congressional committee oversight requests and other inquiries from individual Members and Congressional staff.   The email search was constructed so that potentially responsive communications would be identified if they contained one of the relevant search terms within the to, from, cc, and bcc fields of emails *and* one of the relevant search terms within the subject line or text body of the email.  Within the to, from, cc, and bcc fields of the emails, OIP utilized the following search terms: "@mail.house.gov," "@senate.gov," "Ossoff," and "Warnock."[3]  Within the subject line

---

[3] "Ossoff" and "Warnock" were included as search terms given Footnote 3 of Plaintiffs' initial request:  "This request includes communications between DOJ personnel and Senators Jon Ossoff and Raphael Warnock (or their staff) from November 3, 2020—including the period before they joined the Senate."

and text body of the emails, OIP utilized the same search strings that were utilized in the search

for Part 1:

- (Georgia OR GA) AND ("SB 67" or "Senate Bill 67");
- (Georgia OR GA) AND ("SB 241" or "Senate Bill 241");
- (Georgia OR GA) AND ("SB 202" or "Senate Bill 202");
- (Georgia OR GA) AND ("HB 531" or "House Bill 531");
- (Georgia OR GA) AND "election integrity";
- (Georgia OR GA) AND "election law";
- (Georgia OR GA) AND (vot* NEAR(1) law);
- (Georgia OR GA) AND "voter ID law";
- (Georgia OR GA) AND "voter identification law";
- "Election Integrity Act"; and
- "Special Committee on Election Integrity".

The search terms used within the subject line and text body of the emails were selected to

identify communications addressing Georgia's recent voting law by including multiple potential

names or descriptions that might have been used for the law.  This email search was targeted to

locate emails containing one of the identifying terms related to the House and Senate email

addresses, or involving Senators Ossoff or Warnock, *and* one of the search strings listed above.

The electronic documents search for the OLA custodians all utilized the same search strings

listed above and was crafted to locate any non-email communications, most likely in the form of

formal letters from Congress, as well as the Department's responses thereto, that may have been

saved as electronic documents and not located in email.

18.     As to Part 3 of Plaintiffs' request, which sought "all internal guidance documents

that DOJ uses to determine when, in DOJ's opinion, a provision of a state's election law violates

the VRA," OIP conducted a search of the email and electronic documents of the above-listed

eighty-two custodians within OAG, ODAG, OASG, and OLA using the following search strings:

- ("Voting Rights Act" OR "VRA") AND guidance;
- ("Voting Rights Act" OR "VRA") AND violat*; and
- ("Voting Rights Act" OR "VRA") AND analysis.

These search terms were selected as reasonably calculated to identify any such internal guidance in the custody of the eighty-two custodians, as each search string included reference to the Voting Rights Act or its common shorthand, VRA, and terms which would likely be included in the type of guidance documents requested by Plaintiffs.  No records were identified as a result of this search.

19.     For all electronic searches discussed herein, OIP utilized the date range of November 3, 2020[4] through December 23, 2021 in order to satisfy Plaintiffs' request which specifically sought records "from November 3, 2020, through the date of the search."  December 23, 2021 was chosen as the end date for the search as it represents the date the search was initiated by OIP.[5]

D.  Overview of the Departmental Executive Secretariat

20.     OIP further conducted a search of a separate records repository, the Departmental Executive Secretariat ("DES").  The DES is the official records repository of OAG, ODAG, and OASG and maintains records of all formal, controlled, unclassified correspondence sent to or from those offices from January 1, 2001 to the present day.  The DES also maintains certain OLA records, including records of formal Departmental correspondence with Congress. Moreover, the DES is used to track internal Department correspondence sent through formal channels.

---

[4] In the course of drafting this declaration, an OIP attorney noticed that the search incorrectly used a start date of November 30, 2020 instead of November 3, 2020.  A supplemental search was conducted for the date range of November 3, 2020 through November 29, 2020 and no additional responsive records were located.

[5] *See also* 28 C.F.R. § 16.4(a) (2022).

21.     Records of the designated senior leadership offices are entered into the DES's

Executive Correspondence Action Tracking Service ("eCATs") database by trained analysts,

proficient in the DES's eCATs software.  The data elements entered into the system include such

items as the date of the document, the date of receipt, the sender, and the recipient, as well as a

detailed description of the subject of the record.  Upon entry, these records may be searched in

eCATs using keyword searches by utilizing a single search parameter or combinations of search

parameters.  Search parameters may include the date, custodian, subject, name, or other relevant

information.

### E.  Search Parameters Used by OIP to Search the DES

22.     OIP also conducted searches of the DES for records of responsive to Parts 1 and 2

of Plaintiffs' request for records of formal correspondence responsive to Plaintiffs' request.

Specifically, OIP directed JMD staff to conduct a search in the eCATs software for records

pertaining to Georgia's Election Integrity Act of 2021, using the following search terms: "SB

202," "Georgia election," and "Georgia voter ID."   OIP utilized the same date range, November

3, 2020 to December 23, 2021.[6]  The results of this search were then reviewed by OIP.  This

search of the DES would have located any records responsive to Parts 1 or 2 of Plaintiffs'

request, to the extent that any of the listed organizations and entities or Congress exchanged

formal correspondence with the Department regarding Georgia's Election Integrity Act of 2021.[7]

---

[6] In the course of drafting this declaration, an OIP attorney noticed that the search incorrectly used a start date of November 30, 2020 instead of November 3, 2020.  A supplemental search was conducted for the date range of November 3, 2020 through November 29, 2020 and the only additional responsive records located were those which CRT had previously located and referred to OIP, as discussed in Paragraph 10.  No new responsive records were located as a result of this supplemental search.

[7] Although the DES search would also have located any formal, internal correspondence (*e.g.*, guidance memoranda) containing the above-listed keywords, OIP did not undertake a separate

F.   Results of OIP's Searches

23.     The above-described searches produced a substantial number of potentially responsive records, which OIP staff then manually reviewed for responsiveness.  Through this review, OIP identified twenty-one pages containing records responsive to Plaintiffs' request.  All twenty-one pages were released to Plaintiffs with certain information withheld pursuant to Exemption 6 of the FOIA.

## IV. Summary and Adequacy of OIP's Records Searches

24.     In sum, the searches conducted by OIP staff in response to Plaintiffs' request reflect the agile, dynamic, and comprehensive search process OIP conducts in response to FOIA requests.  As described above, OIP identified the DOJ senior leadership offices, custodians within those offices, and records repositories that were reasonably likely to maintain records responsive to Plaintiffs' request.  And, OIP conducted broad searches within these repositories using search term combinations that would reasonably be expected to identify records potentially responsive to Plaintiffs' FOIA request.  Upon generating the universe of potentially responsive records, OIP staff manually reviewed the results of these searches to identify those records which are responsive to Plaintiffs' request. At the conclusion of this search process, having identified no further leads, OIP determined that any subsequent searches would not be reasonably likely to locate additional records relevant to Plaintiffs' FOIA request.

---

DES search for Part 3 of Plaintiffs' request because it is reasonably likely that any formal guidance documents responsive to Part 3 would have been located by CRT.  CRT's search for records responsive to Part 3 of Plaintiffs' request would have encompassed any formal Voting Rights Act enforcement guidance that otherwise would have been located in the DES, to the extent it existed.  OIP refers to CRT's declaration, filed contemporaneously, for CRT's explanation of the search conducted for records responsive to Part 3.

25.     Based on my experience with the Department, my familiarity with the records maintained by DOJ's senior leadership offices, as well as my understanding of the scope of Plaintiffs' request, and information gathered from the documents themselves, I have determined that OIP's searches were reasonably calculated to uncover all potentially responsive records and that all records repositories likely to contain relevant documents were searched.

I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann

Executed this 25th day of August, 2022.

# Exhibit A



August 31, 2021

By electronic mail to: mrufoia.requests@usdoj.gov

FOIA/PA Mail Referral Unit
Justice Management Division
Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Dear FOIA Officer:

This is a Freedom of Information Act ("FOIA") request submitted pursuant to 5 U.S.C. § 552, on behalf of the State of Georgia and Brad Raffensperger, the Georgia Secretary of State. This request seeks Department of Justice ("DOJ") communications discussing the State of Georgia's recent election law—the Election Integrity Act of 2021 ("Act"), which was enacted on March 25, 2021. That Act is currently subject to several legal challenges in the U.S. District Court for the Northern District of Georgia (including one brought by DOJ under the Voting Rights Act ("VRA")). Additionally, this request seeks internal guidance documents that DOJ uses to determine when an election law violates the VRA.

As discussed in more detail below, this request includes three parts. First, we seek DOJ communications with various non-governmental entities that are involved in the legal challenges to the Act. Second, we seek DOJ communications with members of Congress (or their staff) regarding the Act. Third, we seek internal guidance documents that DOJ uses to determine when a state election law violates the VRA.

This request is directed to the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, DOJ's Civil Rights Division (including, but not limited to, the Voting Section), and any other DOJ component determined reasonably likely to have responsive records under 28 C.F.R. § 16.3(a)(2).

For this request, a communication should be considered to discuss the Act if, at a minimum, it refers to any of the following:[1] Georgia's Election Integrity Act of 2021, Georgia's election law, Georgia's voter law, Georgia's voter ID law, Georgia's voter identification law, Georgia Senate Bill 67 (SB 67), Georgia Senate Bill 241

---

[1] This list is not intended to be exhaustive. Rather, this part of the request should be interpreted broadly to include any communications discussing Georgia's recent election law.

State of Georgia FOIA Request
August 31, 2021
Page 2

(SB 241), Georgia House Bill 531 (HB 531), Georgia Senate Bill 202 (SB 202), or Georgia's Special Committee on Election Integrity.

## I.   Request

### A.   Request for communications with certain non-governmental entities

We request all communications discussing the Act exchanged between DOJ personnel and the following individuals or representatives of the following non-governmental entities from November 3, 2020, through the date of the search:[2]

1.   Asian Americans Advancing Justice (@advancingjustice-aajc.org; @advancingjustice-atlanta.org; @advancingjustice-alc.org)

2.   Keker, Van Nest and Peters LLP (@keker.com)

3.   Southern Poverty Law Center (@splcenter.org)

4.   ACLU Foundation (@acluga.org; @aclu.org)

5.   Davis Wright Tremaine LLP (@dwt.com)

6.   Wilmer Cutler Pickering Hale and Dorr LLP (@wilmerhale.com)

7.   Sixth District of the African Methodist Episcopal (AME) Church (@ame6.church)

8.   Georgia Muslim Voter Project (@gamvp.org)

9.   Women Watch Afrika (womenwatchafrika@gmail.com)

10.  Latino Community Fund Georgia (@lcfgeorgia.com)

11.  Delta Sigma Theta Sorority, Inc. (@deltasigmatheta.org)

12.  The Arc Georgia (@ga.thearc.org)

13.  The Arc of the United States (@thearc.org)

14.  Georgia Adapt (@disabilitylink.org)

15.  Georgia Advocacy Office (@thegao.org)

16.  Southern Christian Leadership Conference (@nationalsclc.org)

17.  The Concerned Black Clergy of Metropolitan Atlanta (@concernedblackclergy.com)

---

[2] Where available, we have provided an e-mail suffix for the listed entity.  However, the suffixes are not intended to be exhaustive.  Any reasonable search would also include the name of the listed organization, as each may use other e-mail platforms.

State of Georgia FOIA Request
August 31, 2021
Page 3

18.     Kastorf Law, LLC (@kastorflaw.com)

19.     Advancement Project (@advancementproject.org)

20.     Crowell & Moring LLP (@crowell.com)

21.     The Justice Initiative (@justiceinc.org)

22.     Samuel Dewitt Proctor Conference, Inc. (@sdpconference.info)

23.     Mijente, Inc. (@mijente.net)

24.     Sankofa United Church of Christ (@sankofa.church)

25.     New Birth Missionary Baptist Church (@newbirth.org)

26.     Metropolitan Atlanta Baptist Ministers Union, Inc. (@mabmu95.org)

27.     First Congregational Church, United Church of Christ Inc.
        (@firstchurchatl.org)

28.     Georgia Latino Alliance for Human Rights, Inc. (@glahr.org)

29.     Faith in Action Network (@faithinaction.org)

30.     Greater Works Ministries Network, Inc. (@greaterworksfamily.com)

31.     Exousia Lighthouse International C.M., Inc.

32.     Coalition for Good Governance (@uscgg.org)

33.     Bruce P. Brown Law LLC (@brucepbrownlaw.com)

34.     Ichter Davis LLC (@ichterdavis.com)

35.     Hecht Walker, P.C. (@hmhlaw.com)

36.     Giacoma Roberts & Daughdrill LLC (@grdlegal.com)

37.     Jackson County Democratic Committee (@jcdcgo.org)

38.     Georgia Advancing Progress (@gappac.org)

39.     Georgia State Conference of the NAACP (@naacpga.org)

40.     The Law Office of Bryan Sells, LLC (@bryansellslaw.com)

41.     Lawyers' Committee for Civil Rights Under Law
        (@lawyerscommittee.org)

42.     Hughes Hubbard & Reed LLP (@hugheshubbard.com)

43.     NAACP Legal Defense and Educational Fund (@naacpldf.org)

44.     Georgia Coalition for the People's Agenda, Inc.
        (@thepeoplesagenda.org)

45.     League of Women Voters of Georgia (@lwvga.org)

State of Georgia FOIA Request
August 31, 2021
Page 4

46.   GALEO Latino Community Development Fund, Inc. (@galeo.org)

47.   Common Cause (@commoncause.org)

48.   Lower Muskogee Creek Tribe

49.   The Urban League of Greater Atlanta (@ulgatl.org)

50.   The New Georgia Project (@newgeorgiaproject.org)

51.   Krevolin & Horst, LLC (@khlawfirm.com)

52.   Perkins Coie LLP (@perkinscoie.com)

53.   Black Voters Matter Fund (@blackvotersmatterfund.org)

54.   Rise, Inc. (@risefree.org)

55.   VoteAmerica

56.   Voter Participation Center (@voterparticipation.org)

57.   Rogers & Hardin LLP (@rh-law.com)

58.   Campaign Legal Center (@campaignlegalcenter.org)

59.   Center for Voter Information (@centerforvoterinformation.org)

60.   Fair Fight (@fairfightaction.com)

61.   Care in Action, Inc.

62.   Stacey Abrams

## B.   Request for communications with members of Congress (or their staff)

We request all communications between DOJ personnel and members of Congress (or their staff) from November 3, 2020, through the date of the search, that discuss the Act.[3]  At a minimum, a search for responsive records should include searches for electronic communications involving the following e-mail suffixes: "@mail.house.gov"; "senate.gov."

## C.   Request for internal guidance documents

We request all internal guidance documents that DOJ uses to determine when, in DOJ's opinion, a provision of a state's election law violates the VRA.  For instance, this request includes, but is not limited to, internal guidance that DOJ uses to

---

[3] This request includes communications between DOJ personnel and Senators Jon Ossoff and Raphael Warnock (or their staff) from November 3, 2020—including the period before they joined the Senate.

State of Georgia FOIA Request
August 31, 2021
Page 5

evaluate how one state's election law provision violates the VRA, while the same provision enacted in another state does not violate the VRA.

## II.   Fees

We request a full fee waiver for this request as "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The subjects of the requested records concern government operations. Georgia recently enacted reasonable election rules. Despite the fact that it is a state's responsibility to "set[ ] [the] rules" for the electoral process, *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020), multiple entities (including DOJ) have filed lawsuits seeking to prevent Georgia from implementing those rules. The requested records will contribute to the public's understanding of the coordination between the entities initiating those lawsuits. Such information is not currently public, and the requesters have no commercial interest in the records. Thus, a full fee waiver should be granted.

## III.   Format

We ask that you please provide each responsive record in electronic form. If a portion of the responsive records may be produced more readily than the remainder, please produce those records first, with the remaining records produced on a rolling basis. Also, if you withhold any responsive record in whole or in part pursuant to any FOIA exemption, please provide a *Vaughn* index explaining all such withholdings.

## IV.   Contact

We welcome communication about this request if further discussion would assist in the search and release of the requested records. We ask that you respond to this request without delay given our urgent need for the responsive records. Additionally, please feel free to contact counsel for the requesters should you wish to discuss the request.  Counsel may be contacted by email at gschaerr@schaerr-jaffe.com and bfield@schaerr-jaffe.com or by phone at (202) 787-1060.

Thank you for your attention and assistance.

Sincerely,

Gene C. Schaerr
Brian J. Field

*Counsel for the State of Georgia
and Secretary Raffensperger*

Exhibit B



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

September 29, 2021

Gene Schaerr
Schaerr Jaffe LLP
gschaerr@schaerr-jaffe.com                    Re:    FOIA-2021-02274

Dear Gene Schaerr:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated August 31, 2021, and received in this Office on September 24, 2021, in which you requested records concerning the State of Georgia's Election Integrity Act of 2021 since November 3, 2020. You directed your request to the FOIA/PA Mail Referral Unit (MRU), Justice Management Division, who forwarded it to this Office for handling. The MRU tracking number associated with this request is EMRUFOIA083121-21.

The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances." See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time we have assigned your request to the complex track. In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track. You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options. Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible. If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact this Office by telephone at the above number or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001. Lastly, you may contact our FOIA Public Liaison, Valeree Villanueva, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation

-2-

services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

Sincerely,
Initial Request Staff
Office of Information Policy
U.S. Department of Justice

Exhibit C



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

April 21, 2022

State of Georgia and Secretary of State Brad Raffensperger
c/o Gene Schaerr and Brian Field
Schaerr Jaffee, LLP
1717 K Street, NW Suite 900
Washington, DC 20006                     Re:     FOIA-2021-02274
gschaerr@schaerr-jaffe.com                       21-cv-3138 (DDC)
bfield@schaerr-jaffe.com                         VRB:TAZ:BRV

Dear Gene Schaerr and Brian Field:

This responds to the Freedom of Information Act (FOIA) request of your clients, dated August 31, 202, for records concerning the State of Georgia's Election Integrity Act of 2021. Because you directed your request to the FOIA/PA Mail Referral Unit, Justice Management Division, for appropriate routing, it was not received by this Office until September 24, 2021. The MRU tracking number associated with this request is EMRUFOIA083121-21.

Please be advised that a search has been conducted in the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, and Legislative Affairs, as well as of the electronic database of the Departmental Executive Secretariat, which is the official records repository for these Offices, and records responsive to your request were located.  At this time, we have completed the processing of all twenty-one pages containing records responsive to your request and I have determined that these pages are appropriate for release with certain information withheld pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6), which pertains to information the release of which would constitute a clearly unwarranted invasion of personal privacy.  Please be advised that we have considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

-2-

If you have any questions regarding this response, please contact Rebecca Kopplin of the Department's Civil Division, Federal Programs Branch at 202-514-3953.

Sincerely,

Timothy Ziese
Senior Supervisory Attorney

Enclosures

**Wang, Annie (Warnock)**

| | |
|---|---|
| **From:** | Wang, Annie (Warnock) |
| **Sent:** | Friday, June 25, 2021 1:34 PM |
| **To:** | Greenfeld, Helaine A. (OLA) |
| **Cc:** | Schaumburg, Sara (Ossoff) |
| **Subject:** | United States v. Georgia re: SB 202 |

?
Hi Helaine,

I saw the news about the DOJ suit against Georgia re: SB 202, and our offices were a little caught off guard. It would be very helpful to get additional background and context on this and to speak with the relevant folks involved since it centers on our state and is an issue my boss prioritizes. Happy to work around your team's schedule to find some time to discuss.

Thanks,
Annie

Annie Wang
Counsel
Office of Senator Reverend Raphael Warnock

**From:** Payton, Rayshon (OLA)
**Sent:** Friday, June 25, 2021 6:08 PM
**To:** Ka'ai, Krystal (CAPAC)
**Cc:** Greenfeld, Helaine A. (OLA); Desai, Sonali; Assim, Anisah
**Subject:** RE: CAPAC Follow-Up re Request to Meet with AG Garland

Hey Krystal,

Thank you for the note, we appreciate your kind works. Congratulations on your last accomplishment!! Given your professionalism and steadfast drive to better the community around you, its no surprise President Biden selected you for that position. We at the Department look forward to working with you in that capacity.

Thank you for sending the date information along, Helaine has sent up the chain, we will make sure to correspond with Sonali and Anisah as we get closer to the nailing down the meeting date and time.

Thank you again and keep in touch.

Best,
Rayshon

**Rayshon Payton**
Attorney Advisor
Office of Legislative Affairs
Department of Justice
C (b) (6)

---

**From:** Ka'ai, Krystal (CAPAC (b) (6)
**Sent:** Friday, June 25, 2021 2:30 PM
**To:** Payton, Rayshon (OL (b) (6)
**Cc:** Greenfeld, Helaine A. (OLA (b) (6) ; Desai, Sonal (b) (6) ; Assim, Anisa (b) (6)
**Subject:** CAPAC Follow-Up re Request to Meet with AG Garland

Hi Rayshon and Helaine,

Hope you are well. Thanks for passing this important announcement along. We truly appreciate the work DOJ is doing to prevent voter suppression efforts in Georgia that are meant to suppress voter turnout from communities of color, including AAPIs

I wanted to follow-up with you again on our outstanding CAPAC meeting request to meet with Attorney General Holder. I know I have mentioned this in the past, but it is a priority meeting for the caucus and one the members would like to schedule before the August recess if possible.

CAPAC currently has a standing caucus meeting slot open on Wednesday, July 28th from 4:00pm-5:00pm EST. All of our meetings are still being conducted virtually through zoomgov, and we would love to work with you to lock this meeting down. If that date does not work, please let us know other options that will work for the Attorney General as this

meeting request has been pending for months and our CAPAC members are eager to speak with DOJ regarding the implementation of the COVID-19 Hate Crimes Act.

Also, this is my last week on the Hill before I start with the Administration in July as the new executive director of the WH Initiative on Asian Americans, Native Hawaiians, and Pacific Islanders. I am therefore looping my colleagues, Sonali and Anisah, who will coordinate with you moving forward regarding this request.

Thank you,
Krystal

---

**From:** Payton, Rayshon (OLA (b) (6)         >
**Sent:** Friday, June 25, 2021 1:13 PM
**To:** Payton, Rayshon (OLA (b) (6)
**Cc:** Greenfeld, Helaine A. (OLA (b) (6)
**Subject:** Justice Department Files Lawsuit Against the State of Georgia to Stop Racially Discriminatory Provisions of New Voting Law

---

**Department of Justice**
Office of Public Affairs

---

FOR IMMEDIATE RELEASE
Friday, June 25, 2021

## Justice Department Files Lawsuit Against the State of Georgia to Stop Racially Discriminatory Provisions of New Voting Law

The U.S. Justice Department announced today that it filed a lawsuit against the State of Georgia, the Georgia Secretary of State, and the Georgia State Election Board over recent voting procedures adopted by Georgia Senate Bill 202, which was signed into law in March 2021. The United States' complaint challenges provisions of Senate Bill 202 under Section 2 of the Voting Rights Act.

"The right of all eligible citizens to vote is the central pillar of our democracy, the right from which all other rights ultimately flow," said Attorney General Merrick B. Garland  "This lawsuit is the first step of many we are taking to ensure that all eligible voters can cast a vote; that all lawful votes are counted; and that every voter has access to accurate information."

"The right to vote is one of the most central rights in our democracy and protecting the right to vote for all Americans is at the core of the Civil Rights Division's mission," said Assistant Attorney General Kristen Clarke for Justice Department's Civil Rights Division. "The Department of Justice will use all the tools it has available to ensure that each eligible citizen can register, cast a ballot, and have that ballot counted free from racial discrimination. Laws adopted with a racially motivated purpose, like Georgia Senate Bill 202, simply have no place in democracy today."

"One of the fundamental rights of our democracy is the right to vote.  That right should be protected for every citizen of our district, regardless of race," said Acting U.S. Attorney Kurt R. Erskine for the Northern District of Georgia. "The United States Attorney's Office for the Northern District of Georgia is committed to protecting the rights of all Americans to vote."

The United States' complaint contends that several provisions of Senate Bill 202 were adopted with the purpose of denying or abridging the right to vote on account of race.  The Justice Department's lawsuit alleges that the cumulative and discriminatory effect of these laws—particularly on Black voters—was known to lawmakers and that lawmakers adopted the law despite this.

The United States' complaint challenges several provisions of Senate Bill 202, including a provision banning government entities from distributing unsolicited absentee ballot applications; the imposition of costly and onerous fines on civic organizations, churches and advocacy groups that distribute follow-up absentee ballot applications; the shortening of the deadline to request absentee ballots to 11 days before Election Day; the requirement that voters who do not have identification issued by the Georgia Department of Driver Services photocopy another form of identification in order to

Document ID: 0.7.9351.7476

request an absentee ballot without allowing for use of the last four digits of a social security number for such applications; significant limitations on counties' use of absentee ballot drop boxes; the prohibition on efforts by churches and civic groups to provide food or water to persons waiting in long lines to vote; and the prohibition on counting out-of-precinct provisional ballots cast before 5 p.m. on Election Day. The complaint asks the court to prohibit Georgia from enforcing these requirements.

Deputy Attorney General Lisa O. Monaco also issued a memo to United States Attorneys and FBI Field Offices today on investigating and prosecuting threats to election officials. To assist with this important effort the department will also establish an intra-Departmental task force to address the rising threats.

Today's announcements follow Attorney General Garland's recent commitment to expand the Justice Department's efforts to safeguard voting rights.

More information about the Voting Rights Act and other federal voting laws is available on the Department of Justice's website at www.justice.gov/crt/about/vot.  Complaints about discriminatory voting practices may be reported to the Voting Section of the Justice Department's Civil Rights Division at 1-800-253-3931.

For a list of the department's actions to protect voting rights, click here.

**Rayshon Payton**
Attorney Advisor
Office of Legislative Affairs
Department of Justice

3

BOB GIBBS
7TH DISTRICT, OHIO

2217 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-6265

110 COTTAGE STREET
ASHLAND, OH 44805
(419) 207-0650

110 CENTRAL PLAZA SOUTH
CANTON, OH 44702
(330) 737-1631

# Congress of the United States
## House of Representatives
### Washington, DC 20515-3507

TRANSPORTATION AND
INFRASTRUCTURE COMMITTEE
SUBCOMMITTEES
RANKING MEMBER,
COAST GUARD AND MARITIME TRANSPORTATION
HIGHWAYS AND TRANSIT

OVERSIGHT AND REFORM COMMITTEE
SUBCOMMITTEES
ENVIRONMENT
NATIONAL SECURITY

July 14, 2021

The Honorable Merrick Garland
Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Dear Attorney General Garland,

We are writing to express grave concerns regarding the recent lawsuit filed by the Department of Justice on June 25, 2021, against the State of Georgia, the Georgia Secretary of State, and the Georgia State Election Board over recent procedures adopted by Georgia's Senate Bill 202. With this lawsuit, the Department of Justice is at risk of becoming further politicized and credibly accused of pursuing a political agenda.

In the complaint filed by the Department, you allege Senate Bill 202 was adopted with the purpose of denying or abridging the right to vote on account of race, and that lawmakers adopted these provisions knowing there would be cumulative and discriminatory effects on Black voters. We agree with you that "the right of all eligible citizens to vote is the central pillar of our democracy, the right from which all other rights ultimately flow," but we do not believe as Assistant Attorney General Kristen Clarke stated that the Georgia legislators "intended to deny or abridge the right of Black Georgians to vote." [1]

The Department's complaint challenges several provisions of Senate Bill 202 that have governed elections in other states across the country for years, including many states led by Democrats, but curiously only Georgia has been sued.

One such provision is the requirement for voters to list their driver's license or state ID number on their application for an absentee ballot, extending existing ID requirements to vote in person in Georgia. Previously, election workers would verify absentee ballots by signature matching, a process far more subjective. In the Department's complaint, you allege this requirement would have a discriminatory effect on Black voters, ignoring a study conducted by researchers at

---

[1] "Justice Department Files Lawsuit Against the State of Georgia to Stop Racially Discriminatory Provisions of New Voting Law," The United States Department of Justice Office of Public Affairs, June 25, 2021, https://www.justice.gov/opa/pr/justice-department-files-lawsuit-against-state-georgia-stop-racially-discriminatory.

Document ID: 0.7.9351.31591

Stanford, Yale, and the University of Pennsylvania finding there was no evidence in the analyzed data that voter ID laws have a statistically significant impact on voter turnout.[2]

You challenge Senate Bill 202's changing of the deadline to request absentee ballots to 11 days before Election Day and ask the court to prohibit Georgia from enforcing this requirement. What you fail to mention is in July 2020, the U.S. Postal Service recommended "strongly" that states change their deadline for voters to request an absentee ballot, with the optimal deadline being at least 15 days before Election Day "to account for [USPS] delivery standards."[3] This change allows more time to ensure voters receive and are able to cast their votes prior to the election deadline.

It is also worth mentioning Georgia left intact the state's no-excuse absentee voting rules, which is more permissive than the vote-by-mail rules in 16 other states including the President's home state of Delaware. Although Delaware, Connecticut, and New York currently do not offer no-excuse absentee voting, the Department of Justice and the Biden Administration have expressed no concerns about voting rights being infringed upon in these Democratically controlled states.

The Department of Justice must stop participating in partisan politics and vilifying states working to ensure free, fair, secure elections. These actions serve only to further divide and politicize the Justice Department and erode trust in the U.S. government. We encourage you to end the litigation against Georgia, and instead work to address many of the other issues facing our country.

Sincerely,

Bob Gibbs
Member of Congress

Buddy Carter
Member of Congress

Jeff Duncan
Member of Congress

Randy K. Weber
Member of Congress

Andy Biggs
Member of Congress

Diana Harshbarger
Member of Congress

---

[2] Grimmer, Hersh, et al., Comment on "Voter Identification Laws and the Suppression of Minority Votes," August 7, 2017, http://stanford.edu/~jgrimmer/comment_final.pdf.

[3] Cox, Viebeck, et al., "Postal Service warns 46 states their voters could be disenfranchised by delayed mail-in ballots," *Washington Post*, August 14, 2020, https://www.washingtonpost.com/local/md-politics/usps-states-delayed-mail-in-ballots/2020/08/14/64bf3c3c-dcc7-11ea-8051-d5f887d73381_story.html

Tom McClintock
Member of Congress

Ted Budd
Member of Congress

Jodey C. Arrington
Member of Congress

Warren Davidson
Member of Congress

Andrew Clyde
Member of Congress

W. Gregory Steube
Member of Congress

Dan Bishop
Member of Congress

**Greenfeld, Helaine A. (OLA)**

| | |
|---|---|
| **From:** | Greenfeld, Helaine A. (OLA) |
| **Sent:** | Tuesday, October 5, 2021 4:30 PM |
| **To:** | Schaumburg, Sara (Ossoff) |
| **Subject:** | RE: [EXTERNAL] Re: This week's Hearing |

Sorry    didn't realize he hadn't answered.

---

**From:** Schaumburg, Sara (Ossof █(b) (6)█
**Sent:** Tuesday, October 5, 2021 4:25 PM
**To:** Greenfeld, Helaine A. (OLA █(b) (6)█
**Subject:** Re: [EXTERNAL] Re: This week's Hearing

Hi Helaine,

Any word from Rayshon? Just want to confirm the AAG is comfortable with the VRAA line of questioning, particularly that she would express support for the election worker protection bill and would be able to say that preclearance could have helped block the GA law.

Thanks!

--
**Sara Schaumburg** | General Counsel
Office of Senator Jon Ossoff (D-GA)
455 Russell Senate Office Building
(o █(b) (6)█    █(b) (6)█



---

**From:** "Greenfeld, Helaine A. (OLA)" █(b) (6)█
**Date:** Monday, October 4, 2021 at 6:46 PM
**To:** Sara Schaumbur █(b) (6)█
**Cc:** "Adams, Stan (Ossoff) █(b) (6)█
**Subject:** Re: [EXTERNAL] Re: This week's Hearing

Thanks so much. I'll check with Rayshon again in the VRAA question.

Sent from my iPhone

On Oct 4, 2021, at 6:43 PM, Schaumburg, Sara (Ossof █(b) (6)█
wrote:

Hi Helaine    just touching base to see if you had any feedback on the VRAA questions.

I also wanted to share the questions we've drafted for tomorrow's VAWA hearing, which I think

are very straightforward:

- How has VAWA helped bring justice to American Indian and Alaska Native women, and what enhancements are needed to strengthen protections and build on the success of the VAWA 2013 reauthorization for implementing tribes?

- Can you explain how the housing grants and protections authorized by VAWA could help ensure that all individuals who seek help get the housing and other supports and services they need?

Thanks!

--
**Sara Schaumburg** | General Counsel
Office of Senator Jon Ossoff (D-GA)
455 Russell Senate Office Building
(o (b) (6)        (b) (6)

<image001.gif>

<image002.gif>

<image003.png>

---

**From:** Sara Schaumburg  (b) (6)
**Date:** Sunday, October 3, 2021 at 6:50 PM
**To:** "Greenfeld, Helaine A. (OLA)"  (b) (6)
**Cc:** "Adams, Stan (Ossoff)"  (b) (6)             >
**Subject:** Re: This week's Hearing

Hi Helaine -

Yes, he's planning to attend all three!

On Voting Rights, I shared one possible question with Rayshon but copying that and another possible line of questioning below. The first question has to do with voter intimidation and helping to lay the groundwork for Title II of the bill, which amends § 245 and expands protections for election workers and polling places. This is language that was incorporated at DOJ's request and we are dropping a standalone bill on it tomorrow (the Election Worker and Polling Place Protection Act). The second line of questioning goes through specific aspects of SB 202 and asks whether the VRAA might have helped block those off at the pass. Please let me know if you think AAG Clarke would have any trouble answering those (as in, whether it'd be hard for her to give a straight "yes" to those and I can redirect them to someone on the second panel.)

On VAWA, I think he's likely to focus on the need for expanding protections for Native American women, but I haven't drafted those yet.

He's currently planning to attend the panel with Kanter, as well. My colleague, Stan, is point on that one. Looping him here.

##

**Question to AAG Clarke re: Need for JLVRAA**

**Wind-up:** Mitch McConnell says the John Lewis voting rights bill is   quote   "unnecessary." According to him, it's already illegal to discriminate in voting based on race, so no one's voting rights are threatened. [See TAB F]

Yet Georgia just recently passed a law restricting voting access that particularly targets voting by mail. These restrictions were adopted right after the November 2020 election, where, incidentally, voters of color relied on absentee ballots at unprecedented levels and   in the case of Black and Asian voters - at higher rates than White voters.

**Questions:**

- That law, for example, drastically reduces the availability of ballot dropboxes, which voters of color relied on heavily as a safe and convenient way to return ballots. **Could the John Lewis bill have kept Georgia from drastically limiting dropbox availability?**

- The Georgia law also makes it harder for voters to get absentee ballots by making it illegal for election officials to mail out absentee ballot applications to all voters. **Could the John Lewis bill have kept Georgia from making it harder for voters to get absentee ballots?**

- **Assistant Attorney General Clarke, is Senator McConnell right? If it's already illegal to discriminate in voting, is this whole bill "unnecessary"?**

### 

**Question to AAG Clarke re: Election Worker and Polling Place Protection Act**

**Wind up**: Fueled by the Big Lie, threats against election workers skyrocketed during the 2020 election. In Georgia, election workers and their families were harassed and targeted by death threats. Polling places around the state received bomb threats   from Atlanta, to Jackson and Franklin counties in the Northeast, to Floyd in the northwest, and Bulloch in the south.

Election workers are vital to free and fair elections. That is why, earlier this week, I introduced legislation to expand and strengthen protections for election workers, as well polling places and other election infrastructure, which is included in the John Lewis bill.

**Question:** Do you expect these threats to continue to grow and why is it important to expand current protections in the law?

> [**Expected answer**: It's critical that the law protects the full complement of people involved in ensuring elections are run smoothly. That means expanding current protections for election officials to make sure they law also protects their families, volunteer election workers, and the people who set up and maintain voting equipment. It also means protecting polling places and other infrastructure involved in voting, like tabulation centers. That's why inclusion of your legislation a critical part of the John Lewis bill.]

--

Sara Schaumburg | General Counsel

Office of Senator Jon Ossoff (D-GA)
455 Russell Senate Office Building
(o ███(b) (6)███  ███(b) (6)███████████

<https://www.ossoff.senate.gov/>  <https://www.facebook.com/SenOssoff>
<https://twitter.com/SenOssoff>

On 10/3/21, 3:39 PM, "Greenfeld, Helaine A. (OLA) ███(b) (6)████████████ wrote:

Sara,

Just checking in to see if you know if your boss is planning to come to the three SJC hearings with DOJ witnesses this week:  VAWA, Antitrust nominee, and Voting Rights, and what questions he might ask if he does come. We'd appreciate any intel you might have.

Thanks so much,

Helaine

Helaine Greenfeld
Deputy Assistant Attorney General
Office of Legislative Affairs
███(b) (6)███████

Sent from my iPhone

**Schaumburg, Sara (Ossoff)**

| | |
|---|---|
| **From:** | Schaumburg, Sara (Ossoff) |
| **Sent:** | Monday, October 25, 2021 6:27 PM |
| **To:** | Greenfeld, Helaine A. (OLA) |
| **Subject:** | [EXTERNAL] Hearing Qs |

Hi Helaine,
Wanted to share some draft questions that Sen. Ossoff may (or may not) raise at Wednesday's hearing. We'll all find out in real time…

He obviously won't get to all of these but sharing the full draft universe just in case. Please let me know if anything causes heartburn. I'm particularly curious if you think the phrasing of the second Voting Rights wind-up/question could be unhelpful in any way. Always happy to hop on the phone. Cell ▮(b) (6)▮.

Best,
Sara

## PRISON REFORM AND OVERSIGHT

**Question to Attorney General re: prison security cameras**

**Wind up:** Last week, the Senate passed legislation that I introduced along with Ranking Member Grassley and Chairman Durbin  the *Prison Camera Reform Act*  to reduce violence and civil rights abuses in prisons by requiring an overhaul of federal prisons' security camera system. As the Justice Department's Inspector General recognized in its report on this issue, outdated and unreliable cameras threaten the safety and wellbeing of incarcerated people as well as employees and the general public.

**Question**: Do you agree that reforming the federal prisons' security camera systems is a critically important safety and civil rights issue?

**Follow-up**: Will you commit to adhering to the requirements laid out in this bill and to prioritizing its implementation should it become law?

###

**Question to Attorney General Garland re: BOP staffing shortages**

**Wind up:** The Federal Bureau of Prisons is responsible for the custody and care of more than 130,000 incarcerated people. Yet chronic staffing shortages undermine the agency's ability to ensure their safety, as well as that of the prison staff and the general public.

Staffing shortages also pose a major obstacle to implementing a range of much needed
prison reform initiatives. Congress can require good security camera systems, but you need staff to monitor those cameras and respond. Congress can  as has - passed laws requiring critically important programming and

activities to help reduce recidivism, but you need the teachers and staff to run those programs.

Earlier this year, the Government Accountability Office   a nonpartisan, independent government watchdog
 concluded that BOP lacks a reliable method for calculating staffing levels and assessing the impact
of staffing shortages, as well as the use of overtime and augmentation, on employees and incarcerated
people. This impedes the agency's -- and Congress's - ability to assess the problem and address workforce
gaps.

BOP agreed with this assessment and hired a contractor to assist the agency in revising its approach.

**Question**: Can you provide this committee a brief update on the status of this effort?

**Follow-up**: Will you commit to prioritizing the implementation of these recommendations and working with my
office to ensure adequate staffing that is vital to a safe prison environment and the success of prison reform
efforts?

### 

## VOTING RIGHTS

**Question to Attorney General Garland re: *Right to Vote Act***

**Question:** Do you agree that voters should be able to challenge laws that restrict or diminish voting access in
cases when the state fails to provide a legitimate justification for such a restriction?

**Follow up:** I introduced the *Right to Vote Act*, which establishes the first-ever affirmative right to vote in federal
statute. It then allows voters to enforce that right by challenging laws that substantially impair or diminish voting
access. Is it fair to say that you support passage of such a bill?

### 

**Question to Attorney General Garland re: *Voting Rights Act***

**Wind up:** The Justice Department's primary tool for challenging discriminatory voting laws is to bring a
lawsuit under Section 2 of the Voting Rights Act. That's exactly what it did in Georgia earlier this year when it
sued the state over its implementation of a voting law, SB 202, that discriminated against Black and Brown
voters. Yet the Supreme Court recently undermined that law in its *Brnovich* decision, making it extraordinarily
difficult to establish that a violation has occurred.

**Question**: What should Congress do to restore Section 2 and ensure that it is able to fulfill the Constitution's
guarantee that the right to vote shall not be denied or abridged based on race?

### 

## SURVEILLANCE

**Question to Attorney General Garland re: Notice of Electronic Surveillance**

**Wind up:** Federal law requires the department of justice to provide notice to individuals who are wiretapped or for whose bank accounts records the DOJ issues subpoenas. The law permits the government to delay notice until doing so will not disrupt an investigation, but eventually Americans must be told. In contrast, federal law does not require that DOJ tell people if it spies on their emails, their private photos, or tracks their location through electronic records.

**Question**: Would you support a requirement that the government eventually notify the targets of these other forms of digital surveillance, and do agree that notice of surveillance is a constitutional requirement of any surveillance statute?

###

**Question to Attorney General Garland re: Use of Facial Recognition Tools for Investigations**

**Wind up:** GAO reports that DOJ uses Clearview AI for law enforcement purposes,[1] but the National Institute for Standards and Technology has shown that the majority of facial recognition systems exhibit a higher rate of false positives, in which they make an incorrect match, for certain demographics, especially Black women.[2]

**Question:** Has the DOJ or any other federal agency analyzed the Clearview tool for accuracy, bias, or discriminatory outcomes? (Expected answer: no)

**Follow up**: Does the Department have specific procurement policies relating to its acquisition of new and emerging technologies?

**Follow up:** Several popular websites demanded that Clearview stop using web scraping to obtain images from their sites, asserting that this activity violated their terms of service.[3] Does the Department have a position on the ethics or legality of using data scraped from websites in violation of their terms of service?

###

**Question to Attorney General Garland re: use of commercial data for investigations**

**Wind up:** In 2018, the Supreme Court said in *Carpenter v. United States* that government agents must obtain a warrant before collecting cell phone data that showed the location of a device over a seven day period.

**Question:** To your knowledge, do any federal agencies currently purchase data or contract for services providing device location data from commercial vendors and if so, is this data used in investigations or prosecutions?

**Follow up [if location data is still purchased/used]:** Given the Court's ruling in *Carpenter*, how do you justify the constitutionality of the purchase of location data for law enforcement purposes?

###

<strong>FREEDOM OF THE PRESS</strong>

**Question to Attorney General Garland re: freedom of the press**

**Wind up:** Mr. Attorney General, you issued a memo in July prohibiting the Department from using subpoenas, court orders, or warrants to obtain information on reporters and their confidential sources. While this policy change is appreciated, there has been a disturbing rise in the frequency of harassment and violence toward journalists at protests.

**Question**: What actions will you take as Attorney General to protect the First Amendment rights of peaceful protesters and the journalists who cover protest activity?

--
**Sara Schaumburg** | General Counsel
Office of Senator Jon Ossoff (D-GA)
455 Russell Senate Office Building
(o (b) (6)          (b) (6)

  

**MARC A. VEASEY**
33RD DISTRICT, TEXAS



**COMMITTEE ON ENERGY
AND COMMERCE**
SUBCOMMITTEE ON COMMUNICATIONS
AND TECHNOLOGY

SUBCOMMITTEE ON ENERGY

**COMMITTEE ON ARMED SERVICES**
SUBCOMMITTEE ON TACTICAL AIR
AND LAND FORCES

SUBCOMMITTEE ON MILITARY PERSONNEL

# Congress of the United States
## House of Representatives
### Washington, DC 20515–4333
April 16, 2021

Office of the Attorney General
950 Pennsylvania Avenue Northwest
Washington, D.C. 20530

Dear Attorney General Garland:

We write as Co-Chairs of the Congressional Voting Rights Caucus to request information regarding the Department of Justice's efforts to protect the voting rights of people across America, especially those who live in states that are proposing legislation designed to restrict the right to vote and make it more difficult for communities of color to vote.[1]

During the 2020 election, Americans across the country risked their lives to vote during a deadly pandemic to ensure their voice was heard at the ballot box. The 2020 election had the highest voter participation in a century while maintaining election security and accuracy. Despite the successful administration of the 2020 election, we are seeing a dangerous trend occurring in states across the country, in which state lawmakers are introducing dangerous Jim Crow-style voter suppression laws that will silence the voices of Black, Indigenous, people of color, as well as people with disabilities.[2] According to the Brennan Center for Justice, state lawmakers have introduced 361 bills with restrictive voting provisions in 47 states.[3]

These bills, if passed, aim to specifically suppress minority voter turnout and will make voting harder for the general public. They would undermine the ability of local election officials to encourage voter participation and will create new barriers for voters.

In light of this attack on voting rights, we respectfully request a written response to the following questions by April 30, 2021:

1.  What action, if any, is being taken by the Department of Justice to review/challenge SB202 in the state of Georgia? This bill, amongst other provisions, criminalizes "line

---

[1] *Georgia's new GOP election law draws criticism, lawsuits*, Associated Press (March 29, 2021).
[2] *Texas Republicans begin pursuing new voting restrictions as they work to protect their hold on power*, The Texas Tribune (March 22, 2021).
[3] *State Voting Laws*. Brennan Center for Justice. Retrieved April 6, 2021, from
https://www.brennancenter.org/issues/ensure-every-american-can-vote/voting-reform/state-voting-laws (March 24, 2021).

2348 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-9897

6707 BRENTWOOD STAIR ROAD, SUITE 200
FORT WORTH, TX 76112
(817) 920-9086

1881 SYLVAN AVENUE, SUITE 108
DALLAS, TX 75208
(214) 741-1387

PRINTED ON RECYCLED PAPER

warming" at a time when the state of Georgia has systematically closed polling places in predominantly black precincts resulting in voters waiting in long lines for several hours?

2. Is the Department monitoring similar bills that have been introduced in Texas, Florida, and other states across the country? Will the Justice Department commit to setting aside funds to challenge discriminatory laws that violate section 2 of the Voting Rights Act?

3. Please describe any other current measures the Justice Department is taking to prevent voter suppression.

Thank you for your prompt attention to this important matter. Should you have any questions about this request, please contact Luke Dube at (b) (6)             or (b) (6)                      .

Sincerely,

Marc A. Veasey

Member of Congress

Terri Sewell

Member of Congress

Robert C. "Bobby" Scott

Member of Congress

ONE HUNDRED SEVENTEENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–3951
judiciary.house.gov

August 12, 2021

The Honorable Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Garland:

On July 28, 2021, on behalf of the Department of Justice (DOJ), you issued new guidance regarding state efforts to remove temporary, emergency voting procedures implemented last year during the unprecedented COVID-19 pandemic.[1] The Biden Administration's new guidance bizarrely suggests that states may not return to voting laws and procedures that existed prior to the pandemic, saying those laws and procedures may not be "presumptively lawful."[2] We have serious concerns about the Department's radical attempt to politicize enforcement of the Voting Rights Act of 1965 (VRA).

The Election Clause of the U.S. Constitution gives state legislatures the authority to prescribe "[t]he Times, Places and Manner of holding Elections" within their jurisdictions.[3] Article II of the U.S. Constitution grants state legislatures the power to determine the manner of appointing presidential electors.[4] Thus, in our system of government, state legislatures "bear primary responsibility for setting election rules,"[5] and this responsibility extends to federal elections.[6]

In 2020, state and local governments were tasked with administering elections in a safe manner during a once-in-a-lifetime pandemic. Many states adopted temporary voting procedures to reduce public health risks, despite prominent public health officials saying that in-person voting was safe.[7] Recognizing the temporary nature of these voting procedure changes, Attorney General William Barr directed the Civil Rights Division to adopt an enforcement policy that

---

[1] Press Release, U.S. Dep't of Justice, Justice Department Issues Guidance on Federal Statutes Regarding Voting Methods and Post-election "Audits" (Jul. 28, 2021).

[2] U.S. DEP'T OF JUSTICE, GUIDANCE CONCERNING FEDERAL STATUTES AFFECTING METHODS OF VOTING 1 (2021).

[3] U.S. CONST. art I § 4, cl. 1.

[4] U.S. CONST. art. II, § 1, cl. 2.

[5] *Democratic Nat'l Comm. v. Wisconsin State Legislature,* 141 U.S. 28, 29 (2020) (Gorsuch, J., concurring).

[6] *See* U.S. CONST. art I § 4, cl. 1; U.S. CONST. art. II, § 1, cl. 2.

[7] Nsikan Akpan, *What Fauci says the U.S. really needs to reopen safely,* NAT'L GEOGRAPHIC (Aug. 13, 2020).

The Honorable Merrick B. Garland
August 12, 2021
Page 2

would "presume[] lawful" a state's re-adoption of prior election laws or procedures.[8] Attorney General Barr explained:

> Both the Constitution and federal statutory law recognize that state and local jurisdictions can and will address changing circumstances, sometimes-unique local issues, and different policy preferences related to voting, and that their voting-related laws and processes will change from time to time.
>
> * * *
>
> This care [to respect state and local authority] is particularly important when a state or local jurisdiction maintains a voting-related procedure that is lawful, then changes to another lawful procedure, then changes back to the original procedure. The Department of Justice will presume that enactment of a state or local voting-related procedure that reverts back to or adopts a state or local jurisdiction's prior lawful voting procedures complies with federal law.[9]

On February 3, 2021, then-Acting Attorney General Monty Wilkinson abruptly rescinded Attorney General Barr's guidance.[10] Then, on July 28, you issued a new guidance that upended the constitutional balance between state and federal governments with respect to voting-related laws. You wrote:

> The Department's enforcement policy does not consider a jurisdiction's re-adoption of prior voting laws or procedures to be presumptively lawful; instead, the Department will review a jurisdiction's changes in voting laws or procedures for compliance with all federal laws regarding elections, as the facts and circumstances warrant.[11]

The new guidance is misguided and contrary to Congressional intent. Many of the changes that state and local governments made to voting procedures in 2020 were temporary, emergency changes to "promote both the safety of their citizens and robust democratic participation" during the pandemic.[12] These jurisdictions should be allowed to evaluate the changing circumstances and their experiences in 2020 and make appropriate lawful changes, without the threat of litigation from the federal government. With your new guidance, the Department instead takes the position that these temporary, emergency measures are the new

---

[8] Memorandum from Hon. William P. Barr, Atty Gen., U.S. Dep't of Justice to Assistant Atty Gen. of the Civil Rights Division (Dec. 22, 2020).
[9] *Id.* at 2-3.
[10] Memorandum from Hon. Monty Wilkinson, Acting Atty Gen., U.S. Dep't of Justice, to U.S. Attys (Feb. 3, 2021).
[11] U.S. DEP'T OF JUSTICE, GUIDANCE CONCERNING FEDERAL STATUTES AFFECTING METHODS OF VOTING 1 (2021).
[12] *Id.*

The Honorable Merrick B. Garland
August 12, 2021
Page 3

baseline from which to judge compliance with the VRA—contrary to Congress's intention in passing the legislation.[13]

Whether wittingly or not, your new guidance makes you complicit in a broader effort by elected Democrats to politicize federal voting rights laws. Democrats allege that recent lawful state voter integrity measures, such as Georgia's S.B. 202 and proposed Texas legislation, constitutes "Jim Crow 2.0" and "voter suppression."[14] In reality, these states are enacting commonsense voter integrity measures, many of which *increase* voting access beyond what is available in Democrat-run states. For example, Georgia's new law provides 17 days of early voting while President Biden's home state of Delaware will only have ten days beginning in 2022.[15] New York only provides ten days of early voting.[16] In addition, the pending Texas legislation would prohibit drive-through and 24-hour voting, which local jurisdictions implemented temporarily due to the pandemic and the practices were not implemented by the whole state.[17] Both Delaware and New York currently do not allow drive-through or 24-hour voting.[18]

Although it is easier to vote in Georgia than some Democrat-run states, the Department filed suit against the state to enjoin several provisions of S.B. 202.[19] Notably, the Department did not file suit against Delaware or New York. These facts make it appear that you are attempting to enforce the VRA based on partisan considerations rather than blindly applying the facts to the law. One commentator rightly noted that your complaint against Georgia read "more like a press release from the Democratic National Committee than a serious lawsuit by an apolitical Justice Department."[20]

You and the Justice Department are sadly playing into the hands of the baseless and partisan Democrat opposition to state voting reform efforts by politicizing VRA enforcement and making it the policy that any change from temporary, emergency COVID-19 voting methods is presumed to be evidence of voter suppression.[21] At a time when Congressional Democrats are considering unprecedented and brazen attempts to federalize our nation's election processes, we strongly urge you to rescind the July 28, 2021 guidance and to reimplement Attorney General Barr's thoughtful guidance. In addition, we request that you provide the following information:

---

[13] *See generally* S. REP. NO. 109-295, at 2 (2006).

[14] *See* Karl Rove, *Biden's election-reform deception,* WALL ST. J. (Mar. 31, 2021); Chandelis Duster, *Abrams on GOP efforts to target voting: "It is a redux of Jim Crow in a suit and tie',* CNN (Mar. 14, 2021); Kathryn Watson, *Biden denounces "21ˢᵗ century Jim Crow assault" on voting access,* CBS NEWS (Jul. 13, 2021).

[15] S.B. 202, 2021 Gen. Assemb., Reg. Sess. (Ga. 2021). *See also* Nat'l Conference of State Legislatures, State Laws Governing Early Voting, https://www.ncsl.org/research/elections-and-campaigns/early-voting-in-state-elections.aspx (last visited Jul. 29, 2021).

[16] *Id.*

[17] *'No constitutional right to have 24-hour voting,' Gov. Abbott speaks to KHOU II about voting rights, results of 2020 election,* KHOU-11 (Jul. 14, 2021).

[18] Karl Rove, *Texas Democrats Suppress the Vote*, WALL ST. J. (Jul. 14, 2021).

[19] Erin Doherty, *Justice Department sues Georgia over GOP voting restrictions,* AXIOS (Jun. 25, 2021).

[20] Hans A. von Spakovsky & Zack Smith, *In the feds versus Georgia's voting law, bet on Georgia,* Heritage Found. (Jul. 6, 2021).

[21] *See generally* Editorial Board, *Biden Justice Plays Election Politics*, WALL ST. J. (Jun. 27, 2021).

The Honorable Merrick B. Garland
August 12, 2021
Page 4

1. All documents and communications referring or relating to the memorandum entitled "Guidance Concerning Federal Statutes Affecting Methods of Voting" and dated July 28, 2021;

2. All documents and communications referring or relating to the complaint filed by the Department of Justice against the State of Georgia in the Northern District of Georgia on June 25, 2021; and

3. All documents and communications between or among the Department of Justice and the Executive Office of the President referring or relating to state reforms to voting laws.

Please provide this information immediately but no later than 5:00 p.m. on August 23, 2021.

Americans deserve free, fair, and accurate elections—and ones in which all Americans have confidence in the results. To achieve this ideal, enforcement of the VRA and other federal statutes protecting the right to vote must be apolitical. Thank you for your attention to this serious matter.

Sincerely,

Jim Jordan
Ranking Member

Mike Johnson
Ranking Member Subcommittee on Constitution, Civil Rights, and Civil Liberties

cc:     The Honorable Jerrold Nadler, Chairman

        The Honorable Steve Cohen, Chairman, Subcommittee on Constitution, Civil Rights, and Civil Liberties

Exhibit D



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

June 30, 2022

State of Georgia and Secretary of State Brad Raffensperger
c/o Gene Schaerr and Brian Field
Schaerr Jaffee, LLP
1717 K Street, NW Suite 900
Washington, DC 20006                           Re:     FOIA-2022-01447
gschaerr@schaerr-jaffe.com                             21-cv-3138 (DDC)
bfield@schaerr-jaffe.com                               VRB:JMB:BRV

Dear Gene Schaerr and Brian Field:

       While processing your Freedom of Information Act (FOIA) request dated August 31,
2021, for records concerning the State of Georgia's Election Integrity Act of 2021, the Civil
Rights Division (CRT) referred nine pages to this Office for processing and direct response to
you.  For your information, this material was received by this Office on June 21, 2022.

       At this time, we have reviewed all nine pages and determined that seven of these pages
have previously been provided to you as part of this Office's April 21, 2022 response.  The
corresponding records are located on pages 7-9 and 20-23 of the April 21, 2022 response PDF.
Finally, I have determined that the remaining two pages are appropriate for release without
withholdings, and copies are enclosed.

       For your information, Congress excluded three discrete categories of law enforcement
and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c)
(2018).  This response is limited to those records that are subject to the requirements of the
FOIA.  This is a standard notification that is given to all our requesters and should not be taken
as an indication that excluded records do, or do not, exist.

       If you have any questions regarding this response, please contact Rebecca Kopplin of
the Department's Civil Division, Federal Programs Branch at 202-514-3953.

                                        Sincerely,

                                        *Jonathan Breyan*

                                        Jonathan Breyan
                                        Senior Supervisory Attorney
                                        <u>for</u>
                                        Vanessa R. Brinkmann
                                        Senior Counsel

Enclosures



**U.S. Department of Justice**

Office of Legislative Affairs

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

OCT 15 2021

The Honorable Jim Jordan
Ranking Member
Committee on the Judiciary
U.S. House of Representatives
Washington, DC  20515

The Honorable Mike Johnson
Ranking Member
Subcommittee on the Constitution, Civil Rights,
    and Civil Liberties

Dear Congressman Jordan and Congressman Johnson:

This responds to your letter to the Attorney General, dated August 12, 2021.

Your letter expresses concern regarding the Department of Justice's (Department) July 28, 2021 guidance on how federal law impacts certain methods of voting, and the Department's June 25, 2021 lawsuit under Section 2 of the Voting Rights Act challenging Georgia's SB 202 (2021), *United States v. State of Georgia*, Civil Action No. 1:21-cv-02575 (N.D. Ga.).  Thank you for bringing your concerns to our attention.

The Department takes very seriously the trust that Congress has placed in it, and is committed to vigorous, even-handed and non-partisan enforcement of all of the federal voting rights laws within its jurisdiction to protect the right to vote for all eligible citizens in our country.  Partisan considerations play no part in the Department's decision-making in any respect.

The Department's July 28 guidance regarding how federal voting rights laws impact on methods of voting is carefully considered and aims to provide straightforward descriptions for the public of various federal laws we enforce.  In particular, your letter expresses concern about reference in the July 28 guidance to the Department's February 3, 2021 rescission of an earlier December 22, 2020 guidance document.  There is simply no legal support for the idea of affording a "safe harbor" to jurisdictions seeking to return to prior voting practices.  The Department's consistent position across decades and administrations has been to evaluate each change that a jurisdiction makes in its voting practices on its own merits, without applying a thumb on the scale in either direction.  It may be that a jurisdiction's decision to return to a prior

The Honorable Jim Jordan
The Honorable Mike Johnson
Page Two

voting practice is undertaken for a benign purpose, and that the return otherwise complies with applicable federal law.  But history also provides examples of jurisdictions undertaking such a return to a prior practice with bad intentions and of jurisdictions where the return reinstates a practice that itself violates one of our federal voting rights statutes.  The Department does not pre-judge the outcome of its consideration of any such change and will instead evaluate such a change based on the fact-intensive and localized assessment that the case law requires.

Likewise, the Department's June 25 lawsuit challenging Georgia's SB 202 is well-grounded in both the facts and the law.  The basis for the Department's lawsuit has been extensively explained in its filings in that case, including the complaint and opposition to motions to dismiss.  These filings are publicly available on the court's docket.

Your letter also requests certain documents and communications related to the July 28 guidance document, the Department's June 25 lawsuit against Georgia's SB 202 and state voting laws.  With respect to the Georgia case, those documents that are public have been filed with the court.  In all other respects, to the extent that documents or communications exist, they are covered by well-established privileges and will not be produced.

The Department will carefully consider your concerns, along with all other pertinent information, in the course of carrying out our enforcement responsibilities under the relevant federal statutes.  If you have any other information that you wish to share, the Department would be pleased to receive it from you.

We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Sincerely,

Joseph Gaeta
Deputy Assistant Attorney General