**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STATE OF GEORGIA, et al.,

                          Plaintiffs,

            v.                                              Case No. 1:21-cv-3138 (TNM)

UNITED STATES DEPARTMENT OF JUSTICE,

                          Defendant.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT**
**AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 3

    A.    Litigation challenging SB 202 ................................................................... 3

    B.    Georgia's FOIA Request.............................................................................. 5

LEGAL STANDARD.................................................................................................. 7

ARGUMENT ............................................................................................................... 7

    I.    DOJ Fails to Establish a Common Interest Agreement in Place Before July 28, 2021. ..................................................................................................... 9

    II.    DOJ Also Fails to Establish That it Shared a Common Legal Interest with the Third-Party Organizations. ..................................................................... 12

    III.    DOJ's Attempt to Rely on the Consultant Corollary Also Fails. ............... 18

CONCLUSION............................................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*American. Oversight v. U.S. Dep't of Health & Human Servs.*,
    380 F. Supp. 3d 45 (D.D.C. 2019) ................................................... 15, 18, 21

*American Oversight v. U.S. Dep't of Health & Human Servs.*,
    No. 17-cv-0827-EGS, 2022 WL 1719001 (D.D.C. May 27, 2022)........................ 21

*American Small Business League v. Dep't of Defense*,
    372 F. Supp. 3d 1018 (N.D. Cal. 2019) .................................................. 20

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................. 9

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*,
    370 F. Supp. 3d 116 (D.D.C. 2019).......................................................... 18

*Asian Ams. Advancing Just.-Atlanta v. Raffensperger*,
    No. 1:21-cv-01333-JPB (N.D. Ga.) ....................................................... 3, 4

*Bowles v. Nat'l Ass'n of Home Builders*,
    224 F.R.D. 246 (D.D.C. 2004)........................................................... 12, 16

*Coalition for Good Governance v. Raffensperger*,
    No. 1:21-cv-02070-JPB (N.D. Ga.) ......................................................... 3

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980)............................................................... 13

*Ctr. for Biological Diversity v. United States Env't Prot. Agency*,
  369 F. Supp. 3d 128 (D.D.C. 2019) ........................................................ 20

*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ................................................................................ 2

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................ 2, 17, 18, 19

*Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*,
  889 F.2d 1118 (D.C. Cir. 1989) ...................................................... 18, 21

*Frontier Refin., Inc. v. Gorman-Rupp Co., Inc.*,
  136 F.3d 695 (10th Cir. 1998) ................................................................ 13

*Georgia State Conf. of the NAACP v. Raffensperger*,
  No. 1:21-cv-01259-JPB (N.D. Ga.) ............................................... 3, 4, 15

*Hunton & Williams v. U.S. Department of Justice*,
  590 F.3d 272 (4th Cir. 2010) .................................................................. 11

*In Re Georgia Senate Bill*,
  No. 1:21-mi-55555 (N.D. Ga.) ................................................................ 4

*In re Grand Jury Subpoena: Under Seal*,
  415 F.3d 333, 341 (4th Cir. 2005) .......................................................... 11

*In re Lindsey*,
  158 F.3d 1263 (D.C. Cir. 1998) ................................................................ 8

*In re Pac. Pictures Corp.*,
  679 F.3d 1121 (9th Cir. 2012) ................................................................ 14

*Jud. Watch, Inc. v. Dep't of Energy*,
  412 F.3d 125 (D.C. Cir. 2005) ................................................................ 18

*Jud. Watch, Inc. v. U.S. Secret Serv.*,
  726 F.3d 208 (D.C. Cir. 2013) .................................................................. 7

*Lawyers' Comm. for C.R. Under L. v. U.S. Dep't of Justice*,
  No. 18-cv-0167, 2020 WL 7319365 (D.D.C. Oct. 16, 2020) ................. 14

*McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*,
  647 F.3d 331 (D.C. Cir. 2011) ................................................................ 19

*Minebea Co., Ltd. v. Papst*,
  228 F.R.D. 13 (D.D.C. 2005) ......................... 8, 9, 10, 11, 12, 13, 14, 17

*Mobley v. CIA*,
  806 F.3d 568 (D.C. Cir. 2015) .................................................................. 7

*Nat'l Inst. of Mil. Just. v. U.S. Dep't of Def.*,
  512 F.3d 677 (D.C. Cir. 2008) .......................................................... 18, 20

*Parke, Davis & Co. v. Califano*,
  623 F.2d 1 (6th Cir. 1980) ...................................................................... 13

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) .................................................................................. 7

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
   740 F.3d 195 (D.C. Cir. 2014) .............................................................................. 19

*Ryan v. Dep't of Justice*,
   617 F.2d 781 (D.C. Cir. 1980) ........................................................................ 18, 20

*Senate of Puerto Rico v. U.S. Dep't of Justice*,
   823 F.2d 574 (D.C. Cir. 1987) .............................................................................. 13

*Sixth Dist. of the Afr. Methodist Episcopal Church v. Kemp*,
   No. 1:21-cv-01284-JPB (N.D. Ga.) ........................................................................ 3

*The Concerned Black Clergy of Metro. Atlanta, Inc. v. Raffensperger*,
   No. 1:21-cv-01728-JPB (N.D. Ga.) ........................................................................ 3

*The New Ga. Project v. Raffensperger*,
   No. 1:21-cv-01229-JPB (N.D. Ga.) .............................................................. 3, 4, 15

*United States v. AT&T*,
   642 F.2d 1285 (D.C. Cir. 1980) ................................................................. 7, 10, 13

*United States v. AT&T*,
   86 F.R.D. 603 (D.D.C. 1979) ............................................................................... 12

*United States v. Georgia*,
   574 F. Supp. 3d 1245 (N.D. Ga. 2021) ................................................................. 4

*United States v. Georgia*,
   No. 1:21-cv-02575 (N.D. Ga.) ...................................................................... 1, 3, 4, 15

*United States v. Hsia*,
   81 F. Supp. 2d 7 (D.D.C. 2000) ............................................................................ 9

*VoteAmerica v. Raffensperger*,
   No. 1:21-cv-01390-JPB (N.D. Ga.) ........................................................................ 3

*Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*,
   690 F.2d 252 (D.C. Cir. 1982) ............................................................................... 2

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 7

**Statute**

5 U.S.C. § 552 ........................................................................................................ 17

**Other Authorities**

Mem. from Merrick B. Garland, U.S. Att'y Gen. to Heads of Exec. Dept's & Agencies
   (Mar. 15, 2022) .................................................................................................. 16

Restatement (Third) of the Law Governing Lawyers (2000) ....................................................... 14

**Rule**

Fed. R. Civ. P. 56 .................................................................................................................. 7

## INTRODUCTION

In response to concerns raised during several election cycles, including lessons learned during the 2020 election that took place during an unprecedented global pandemic, the State of Georgia enacted the Election Integrity Act of 2021 ("SB 202"), which increased ballot access for all voters, while also ensuring that Georgians could be more confident in the integrity of the State's elections.  But myriad private organizations fought SB 202 from the outset.  And, once the bill was enacted, those same organizations filed a series of lawsuits claiming that various provisions of SB 202 violated the Voting Rights Act, the U.S. Constitution, the Americans with Disabilities Act, and other laws.

Shortly thereafter, the Department of Justice ("DOJ") joined the fray, filing a separate lawsuit challenging SB 202.  *See United States v. Georgia*, No. 1:21-cv-02575 (N.D. Ga. filed June 25, 2021).  Unlike the other lawsuits, which included various statutory and constitutional claims, DOJ alleged only that SB 202 was enacted for a discriminatory purpose, and for that reason alone violated Section 2 of the Voting Rights Act.  As President Biden put it, in his view SB 202 is "Jim Crow 2.0."  But of course, SB 202 is nothing of the sort:  Many of the provisions that DOJ and the third-party organizations challenge are also in place in other states across the country, including Delaware and New York.  Nevertheless, it is now evident that DOJ worked with these third-party organizations to coordinate their attacks on SB 202 and to burden the State of Georgia with multifarious, expensive litigation that unnecessarily burdens Georgia's elected officials and taxpayers.

However, this lawsuit does not address the merits of SB 202.  Nor does it address the propriety of DOJ's work with third-party organizations to wage a political campaign against a State.  Rather, this lawsuit simply asks whether DOJ may wage such a campaign in private.  The Freedom of Information Act ("FOIA") says it may not.

Indeed, the "basic policy" of FOIA is that "disclosure, not secrecy, is the dominant objective[.]" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7–8 (2001). Where, as here, a federal agency has waged an attack on a State in coordination with non-governmental entities, FOIA plays the important role, as the D.C. Circuit has explained, of ensuring that "the public [may] decide for itself whether government action is proper." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 264 (D.C. Cir. 1982).

Ignoring this "basic policy" of FOIA, DOJ has shielded its activities from the public by claiming they are exempt from FOIA.  According to DOJ, its communications with these third parties may be withheld because DOJ and these organizations share a common interest in the lawsuits they each brought against Georgia.  But DOJ fails to carry its burden of demonstrating that a common interest *agreement* was in place when several of the communications were exchanged.  And, more importantly, DOJ fails to carry its burden of demonstrating that, at that time, it even shared any common legal interest with the various third-party organizations. Specifically, until the litigation challenging SB 202 was consolidated in the Northern District of Georgia, DOJ shared no common legal interest with the various third-party organizations also challenging SB 202.  And, without any common legal interest, DOJ waived any applicable privileges when it exchanged communications with these organizations.  Finally, DOJ also fails to satisfy Exemption 5's internality requirement, which further prevents DOJ from withholding these communications from the public.

For those reasons, the Court should deny DOJ's motion, grant Georgia's motion, and order DOJ to release its communications to the public.  Such a release will satisfy FOIA's "basic purpose … to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976) (cleaned up).

# BACKGROUND

## A.      Litigation challenging SB 202

Georgia enacted SB 202 on March 25, 2021.  Through SB 202, Georgia increased access
to early voting, established a more objective measure to confirm the identity of individuals voting
by absentee ballot, mandated access to drop boxes for returning absentee ballots, ensured that
voters waiting in line to vote would not be subject to undue outside influence, and adopted many
other measures aimed at increasing and securing ballot access.

Once enacted, many private entities filed lawsuits challenging SB 202, including the New
Georgia Project, the NAACP, VoteAmerica, the Center for Voter Information, the ACLU, the
Southern Poverty Law Center, and many others.[1]  Months later, DOJ filed its separate lawsuit
challenging portions of SB 202.  *See United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga. filed
June 25, 2021) (ECF No. 1).

But in those lawsuits, the plaintiffs challenged many different provisions of SB 202.  For
instance, DOJ's lawsuit only addressed a narrow set of SB 202's provisions: the rules regarding
mailing of absentee-ballot applications, the rules for absentee-ballot applications, the statutory
requirement that counties provide drop boxes to allow voters to return absentee ballots, the
prohibition on giving things of value to voters waiting in line to vote, and updated rules regarding

---

[1] *See The New Ga. Project v. Raffensperger*, No. 1:21-cv-01229-JPB (N.D. Ga. filed Mar. 25,
2021) (Field Decl., Ex. 4); *Georgia State Conf. of the NAACP v. Raffensperger*, No. 1:21-cv-
01259-JPB (N.D. Ga. filed Mar. 28, 2021) (Field Decl., Ex. 5); *Sixth Dist. of the Afr. Methodist
Episcopal Church v. Kemp*, No. 1:21-cv-01284-JPB (N.D. Ga. filed Mar. 29, 2021) (Field Decl.,
Ex. 3); *Asian Ams. Advancing Just.-Atlanta v. Raffensperger*, No. 1:21-cv-01333-JPB (N.D. Ga.
filed Apr. 1, 2021) (Field Decl., Ex. 1); *VoteAmerica v. Raffensperger*, No. 1:21-cv-01390-JPB
(N.D. Ga. filed Apr. 7, 2021) (Field Decl., Ex. 7); *The Concerned Black Clergy of Metro. Atlanta,
Inc. v. Raffensperger*, No. 1:21-cv-01728-JPB (N.D. Ga. filed Apr. 27, 2021) (Field Decl.,
Ex. 2); *Coalition for Good Governance v. Raffensperger*, No. 1:21-cv-02070-JPB (N.D. Ga. filed
May 17, 2021) (Field Decl., Ex. 8).

out-of-precinct voting.  *See* Compl. ¶ 2, *United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga.) (ECF No. 1) (attached as Ex. 6 to the accompanying Field Declaration).  But other plaintiffs challenged various other provisions of SB 202, including:  the prohibition on mobile voting units, allowing challenges to voter qualifications, allowing the State Election Board to conduct performance reviews of county elections superintendents in certain circumstances, the timeline for early voting during runoff elections, and several other provisions.  *See, e.g*, First Am. Compl. for Injunctive and Declaratory Relief ¶¶ 133–69, *Georgia State Conf. of the NAACP v. Raffensperger*, No. 1:21-cv-01259-JPB (N.D. Ga. filed May 28, 2021) (ECF No. 35) (Field Decl., Ex. 5); First Am. Compl. for Declaratory and Injunctive Relief ¶¶ 67–110, *The New Ga. Project v. Raffensperger*, No. 1:21-cv-01229-JPB (N.D. Ga. filed May 17, 2021) (ECF No. 39) (Field Decl., Ex. 4).

In response, Georgia filed motions to dismiss each of these cases.  The U.S. District Court for the Northern District of Georgia denied those motions on December 9, 2021.  *See, e.g., United States v. Georgia*, 574 F. Supp. 3d 1245 (N.D. Ga. 2021), *reconsideration denied sub nom. In re Georgia Senate Bill 202*, 1:21-cv-02575-JPB, 2022 WL 1516049 (N.D. Ga. Apr. 21, 2022). Thereafter, the district court directed the parties to consider whether the cases should be consolidated for discovery purposes.  *See, e.g.*, Order, *United States v. Georgia*, No. 1:21-cv-02575 (N.D. Ga. Dec. 9, 2021).  Understanding that the discovery process may present several similar factual issues, Georgia consented to consolidating several of these cases.  *See, e.g.*, State Defs' Consol. Stmt. on Consolidation of SB 202 Cases, *Asian Ams. Advancing Justice-Atl. v. Raffensperger*, No. 1:21-cv-1333 (N.D. Ga.) (ECF No. 71) (Field Decl., Ex. 9).  And the district court consolidated nearly all these lawsuits for discovery purposes.  *See* Order, *In Re Georgia Senate Bill*, No. 1:21-mi-55555 (N.D. Ga. Dec. 23, 2021) (Decl. of J. Russ, Ex. 4 (ECF No. 14-4)

("Russ Decl.")).  Two of the cases, however, were not consolidated as they presented sufficiently distinct challenges—the ones brought by VoteAmerica and Coalition for Good Governance.  *See id.*

### B.      Georgia's FOIA Request.

Early on, it became clear that DOJ had been involved in coordinating these lawsuits. Indeed, DOJ waited to file its lawsuit until after these other lawsuits were filed.  (Field Decl., Exs. 1–8).  And DOJ waited to file its complaint until it saw the motions to dismiss that Georgia filed in several of the other lawsuits.  Moreover, many of the hyperbolic allegations are similar— for example, DOJ mimicked the other plaintiffs' accusations about Georgia's long-past history in an attempt to infer that SB 202 was based on discriminatory motives.

To understand the depths of this coordination, Georgia submitted a FOIA request to DOJ on August 31, 2021, seeking three categories of records.  *See* Decl. of K. Kagle, Ex. A (ECF No. 14-5) ("Kagle Decl.").  First, Georgia requested: "All communications discussing [SB 202] exchanged between DOJ personnel and the following individuals or representatives of the following non-governmental entities from November 3, 2020, through the date of the search."  *Id.* at 2.  The request listed 62 individuals and entities for which Georgia sought communications.  *Id.* at 2–4.

Second, Georgia requested: "All communications between DOJ personnel and members of Congress (or their staff) from November 3, 2020, through the date of the search, that discuss [SB 202]."  *Id.* at 4.  Finally, Georgia requested: "All internal guidance documents that DOJ uses to determine when, in DOJ's opinion, a provision of a state's election law violates the [Voting Rights Act].  For instance, this request includes, but is not limited to, internal guidance that DOJ uses to evaluate how one state's election law provision violates the [Voting Rights Act], while the same provision enacted in another state does not violate the [Voting Rights Act]."  *Id.* at 4–5.

After DOJ failed to respond to Georgia's request, Georgia was forced to file this lawsuit on December 1, 2021, to compel DOJ's compliance with FOIA.  *See* Compl. ¶¶ 25–28 (ECF No. 1).  Several months later, DOJ finally released several responsive records.  For instance, on March 7, 2022, DOJ's Civil Rights Division ("CRT") released 596 pages of records in full.  *See* Kagle Decl. ¶ 25; *id.*, Ex. C.  Then, on April 18, 2022, CRT issued what it deemed to be its final response, releasing 394 pages of records.  *See id.*, Ex. D.  In this release, CRT withheld material pursuant to Exemptions 5, 6, and 7(C).  *Id.* ¶ 27.  On April 21, 2022, DOJ's Office of Information Policy ("OIP") issued a response to Georgia, releasing 21 pages with portions withheld pursuant to Exemption 6.  *See* Decl. of V. Brinkmann ¶ 9 (ECF No. 14-6).  On June 30, 2022, OIP issued a supplemental release with two pages released in full.  *Id.* ¶ 10.

Through these responses, DOJ admitted that it had been deeply involved in coordinating the various lawsuits filed against the State of Georgia.  Indeed, a review of DOJ's *Vaughn* Index shows extensive coordination and communication about these lawsuits between DOJ and many of the organizations that were separately challenging SB 202.  *See* Kagle Decl., Ex. E (ECF No. 14-5 at 30) (hereinafter, "*Vaughn* Index").  Further, DOJ revealed that, shortly after DOJ filed its complaint against Georgia on June 25, 2021, several CRT officials participated in a coordinating call with representatives of many entities and law firms who were also suing Georgia.  *See* Russ Decl., Ex. 2.

In fact, the entire premise of DOJ's argument in its motion for summary judgment is that it was working closely with these organizations to coordinate their attacks on the State of Georgia.  According to DOJ, those coordinated attacks were just part of a "common interest agreement."  Mem. in Supp. of Def.'s Mot. for Summ. J. at 1 (ECF No. 14) ("DOJ Mot.").  And, because of that alleged common interest, DOJ's *Vaughn* Index lists many communications for which DOJ claims

privilege despite sharing them with third parties.  *See Vaughn* Index.  As demonstrated below, that

assertion of a common-interest privilege is wrong both as a matter of fact and law.

## LEGAL STANDARD

As in other contexts, summary judgment in a FOIA case is appropriate when "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). As the D.C. Circuit has explained, "[t]o meet this exacting standard in a

FOIA suit, the defending agency must prove that each document that falls within the class

requested either has been produced, is unidentifiable, or is wholly exempt from the FOIA's

inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (cleaned up). The

agency bears the burden of justifying the application of any exemptions, "which are exclusive and

must be narrowly construed." *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015); *accord Wolf v.

CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (courts must construe FOIA exemptions "narrowly," in

keeping with "FOIA's broad disclosure policy"). If the agency's declarations in support of

summary judgment fail to provide "reasonable specificity of detail rather than merely conclusory

statements," or if they are "called into question by contradictory evidence in the record or by

evidence of agency bad faith," summary judgment in favor of the agency is not appropriate. *Jud.

Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quotation omitted).

## ARGUMENT

Under these settled legal standards, DOJ's motion for summary judgment can and must be

denied, and Georgia's motion should be granted.  Here, DOJ claims that FOIA Exemption 5 allows

it to withhold allegedly privileged communications that it exchanged with third parties.  Of course,

it is black-letter law that sharing otherwise privileged communications with third parties generally

waives any such privileges.  *See United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)

("Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential

relationship and thus waives the privilege."). And, while courts have held that DOJ's communications with third parties may remain privileged in *some* circumstances pursuant to the common interest doctrine, DOJ has failed to carry its burden of demonstrating that this doctrine applies to several categories of records it has withheld from Georgia.

Specifically, Georgia challenges a narrow set of DOJ's Exemption 5 withholdings—those communications exchanged before the Northern District of Georgia consolidated the various lawsuits challenging SB 202 on December 23, 2021.[2]  For those communications, DOJ has failed to demonstrate that the common interest doctrine permits it to claim that they are still privileged, notwithstanding that DOJ shared all such communications with third parties.

Indeed, a party relying on the common interest doctrine has the burden of satisfying a two-part test. *See Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005) (citing *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)).  First, the party must establish "the existence of an otherwise valid privilege," where the party must demonstrate that the communications "satisfy the traditional requisites" for the applicable privilege. *Id.*  Second, the party must demonstrate that the communications were "disclosed pursuant to a common legal interest and pursuant to an agreement to pursue a joint defense." *Id.*

In its motion, DOJ focuses almost exclusively on the first part of this test, arguing at length about the applicability of the various privileges it asserts—attorney-client, attorney work product,

---

[2] Given the Northern District of Georgia's consolidation order, Georgia acknowledges that DOJ must thereafter coordinate its discovery activities with the various third-party entities also challenging SB 202.  Because Georgia does not challenge the withholding of communications exchanged after December 23, 2021, the majority of DOJ's motion is irrelevant.  For instance, DOJ's suggestion (Russ Decl. ¶ 31) that Georgia's FOIA request would undermine the instances where courts order DOJ to coordinate with other litigants is misplaced considering that Georgia is not challenging the withholding of communications exchanged after the consolidation order where DOJ was directed to coordinate with the other plaintiffs.  Georgia challenges only the withholding of documents that DOJ *voluntarily* exchanged with third parties before consolidation.

and deliberative process.  But the outcome of this case turns almost entirely on the *second* part of the test, which DOJ largely ignores.  Here, DOJ must demonstrate an "agree[ment] to pursue a joint defense," and that the communications were "disclosed pursuant to a common legal interest[.]"  *Id.*  Unless those requirements are satisfied, the common interest doctrine will not "protect[] from forced disclosure communications between two or more parties and/or their respective counsel[.]"  *United States v. Hsia*, 81 F. Supp. 2d 7, 16 (D.D.C. 2000).

As shown below, DOJ first fails to carry its burden of establishing a common interest agreement when several communications were exchanged.  Second, DOJ fails to establish a common legal interest that it shared with the various third-party organizations.  Finally, DOJ's attempt to analogize this case to those where courts have held that the consultant corollary allows it to withhold communications exchanged with third-party consultants fails because the third-party organizations here differ substantially from such consultants.  For all these reasons, the Court should deny DOJ's motion, grant Georgia's motion, and order DOJ to release the records for which DOJ has not carried its burden.[3]

## I.     DOJ Fails to Establish a Common Interest Agreement in Place Before July 28, 2021.

The clearest reason to deny DOJ's motion is that it attempts to rely on the common interest doctrine to withhold communications exchanged *before* it entered any documented common interest agreement with the various third-party organizations.  As such, DOJ fails to satisfy its burden of demonstrating that "the parties had agreed to pursue a joint defense strategy" covering many of the communications.  *Minebea*, 228 F.R.D. at 16.

In its motion, DOJ relies only on the statement that it entered into a common interest agreement on July 28, 2021.  *See* DOJ Mot. at 18.  And DOJ's declarations fare no better.  Rather,

---

[3] Georgia has determined that it will not also challenge the adequacy of DOJ's searches.

DOJ's declarations show inconsistencies on this core issue, precluding summary judgment for DOJ. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

For instance, the Kagle Declaration states that: "There was a 'meeting of the minds' among [DOJ's Civil Rights] Division and the external entities regarding the lawsuit filed by the U.S. Department of Justice against the State of Georgia on June 25, 2021." *Id.* ¶ 33 (citation omitted). To the extent Ms. Kagle suggests that there was a "meeting of the minds" on June 25, 2021, the record does not support that statement. Rather, given that Ms. Kagle is the Chief of CRT's FOIA unit—which is not involved in the prosecution of her division's lawsuit against Georgia—she pointedly relies upon the "separate declaration describing the common interest privilege among the parties and its applicability to the exemptions in this" case that "is being submitted by CRT's Voting Section." *Id.* That declaration—the Russ Declaration (ECF No. 14-4)—says nothing about a "meeting of the minds" on or around June 25, 2021. *See generally* Russ Decl. Rather, the Russ Declaration focuses exclusively on a *July 28, 2021* e-mail, where DOJ officials and representatives of the third-party organizations purportedly enter into a common interest agreement. *See id.*, Ex. 2.

This is significant, considering that CRT's declarant would be in the best position to identify the date on which CRT (on DOJ's behalf) entered into an agreement with the various third-party organizations. And the failure to include any such statement in the CRT declaration casts serious doubts on the accuracy of any suggestion that there was a "meeting of the minds" on or about June 25, 2021. Kagle Decl. ¶ 33. Thus, to the extent Ms. Kagle intended to state that there was a "meeting of the minds" on June 25, 2021, there is a clear dispute or evidentiary gap on this material fact, and summary judgment cannot be entered in DOJ's favor for any

communications that DOJ exchanged with third parties before the July 28, 2021 e-mail.  *Minebea*, 228 F.R.D. at 16.  All such communications must be released because any claim to privilege has been waived by DOJ's sharing the communications with third parties.  *See AT&T*, 642 F.2d at 1299.

But the *Vaughn* Index shows that DOJ withheld several communications (or portions of communications) exchanged *before* the July 28 e-mail.  *See, e.g.*, *Vaughn* Index, Bates # GA000649, GA000662, GA000705, GA000809, GA000823, GA000862, GA000881, GA000886, GA000891, GA000898, GA000907, GA000915, GA000926, GA000978.  Without any evidence, from a person with knowledge of the situation, that DOJ and the various third-party organizations had entered into a common interest agreement before that email, DOJ cannot withhold any communications exchanged before July 28, 2021.  *See Minebea*, 228 F.R.D. at 16.

The Fourth Circuit's decision in *Hunton & Williams v. U.S. Department of Justice*, 590 F.3d 272, 274 (4th Cir. 2010), underscores this point.  In *Hunton*, a party submitted a FOIA request for communications between DOJ and a telecommunications company discussing whether DOJ would participate in litigation involving that company.  *Id.* at 274.  As relevant here, the *Hunton* court considered whether DOJ may rely on the common interest privilege to withhold communications with the company before a "common interest agreement has been formed."  *Id.* at 285.  On that question, the Fourth Circuit held that: "Documents exchanged before a common interest agreement is established are not protected from disclosure."  *Id.* (citing *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005)).

Further, the Fourth Circuit reviewed the district court's conclusion that, although the record did not include an agreement at the time of several communications, "there were 'indicia of joint strategy'" that suggested a common interest agreement.  *Id.*  The Fourth Circuit rejected this

analysis, stating: "While agreement need not assume a particular form, an agreement there must be." *Id.* Indeed, as the Fourth Circuit explained, communications about "the *prospect* that there might one day be a joint litigation effort … seem too preliminary to remove from disclosure under Exemption 5." *Id.* (emphasis added).

The same is true here. There is no clear, undisputed evidence in the record of *any* agreement before the July 28 e-mail. *See* Russ Decl. ¶ 8. Indeed, DOJ does not even provide any undisputed facts suggesting an "indicia of joint strategy" before the July 28 e-mail. Rather, DOJ relies entirely on the July 28 e-mail as the starting point of the common interest, and hardly addresses the fact that it also withheld material pre-dating the July 28 e-mail. Accordingly, DOJ has failed to carry its burden of demonstrating that an agreement was in place before July 28 that allowed it to exchange privileged materials with third parties without waiving those privileges. Accordingly, the Court should deny DOJ's motion with respect to any communications exchanged before the July 28, 2021 e-mail.

## II.   DOJ Also Fails to Establish That it Shared a Common Legal Interest with the Third-Party Organizations.

In addition to DOJ's failure to demonstrate *when* it entered a common interest agreement with the third-party organizations, DOJ also fails to demonstrate that the withheld communications exchanged before the December 23, 2021 consolidation order were "designed to facilitate a common legal interest." *Minebea*, 228 F.R.D. at 16. Rather, as demonstrated below, DOJ was merely one of several litigants challenging SB 202. And, as those litigants were each pursuing their own distinct claims and strategies, DOJ cannot identify a "common legal interest" that allowed DOJ to exchange privileged communications with third parties before the Northern District of Georgia consolidated the SB 202 litigation.

To satisfy its burden on this point, DOJ must "show a substantial identity of legal interest" between separately represented parties. *United States v. AT&T*, 86 F.R.D. 603, 615 (D.D.C. 1979). For this, courts are "careful to note that the privilege is only preserved when the [parties] have a *strong identity of interests*," with "an identical, and not merely similar, legal interest." *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 252 n.7 (D.D.C. 2004) (quotation marks omitted; emphasis added). As the D.C. Circuit explains, separately represented parties must "anticipate litigation against a common adversary on the *same* issue or issues" before they can be said to have "common interests[.]" *AT&T*, 642 F.2d 1299 (emphasis added). Similarly, the Tenth Circuit explains that "[t]he key consideration is that the nature of the interest be *identical*, not similar." *Frontier Refin., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998) (emphasis added).

However, DOJ largely ignores this requirement, relying repeatedly on statements that merely *assume* the existence of a common legal interest. But such conclusory statements will not do, particularly as DOJ has the burden of establishing a common legal interest. *Minebea*, 228 F.R.D. at 16. As the D.C. Circuit confirms: "[C]onclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980). Similarly, the D.C. Circuit confirms that, "in light of the 'overwhelming thrust of FOIA [] toward complete disclosure,' exemption 5 claims must be supported with 'specificity and in detail.'" *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (quoting *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980)). Here, that means DOJ must demonstrate "with specificity and detail" the common legal interest it shared with the third-party organizations before the district court consolidated the various lawsuits filed against Georgia. *Minebea*, 228 F.R.D. at 16.

13

Yet DOJ makes no effort to provide such specificity or detail of any common legal interest. Rather, DOJ summarily asserts (at 1) that it shares with the third-party organizations a "common interest in enforcing the Voting Rights Act and prevailing in their lawsuits."  Later, DOJ relies on the equally perfunctory statement (at 13) that it was acting with the third-party organizations "in pursuit of their common interest in enforcing the Voting Rights Act and prevailing in their lawsuits."  Elsewhere still, DOJ relies on the unsupported statement (at 16) that its communications with the third-party organizations were "part of the common project of enforcing the Voting Rights Act and prevailing in the ongoing litigation[.]"  DOJ's declarations offer nothing more.  Rather, the Russ Declaration relies on the equally unsupported statement that: "The Common Interest Group shares a common interest in enforcing the U.S. Constitution and federal voting rights laws to protect the right to vote."  Russ Decl. ¶ 25.  At each turn, DOJ fails to satisfy its burden of demonstrating with specificity that its communications were exchanged as part of a "common legal interest."  *Minebea*, 228 F.R.D. at 16.

Indeed, it is clear that "a shared desire to see the same outcome in a legal matter"—DOJ's only basis for its claim—"is *insufficient* to bring a communication … within the common interest rule."  *Lawyers' Comm. for C.R. Under L. v. U.S. Dep't of Justice*, No. 18-cv-0167, 2020 WL 7319365, at *27 (D.D.C. Oct. 16, 2020) (emphasis added; cleaned up) (quoting *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012), *report and recommendation adopted*, 2021 WL 1197730 (D.D.C. Mar. 30, 2021).).  Thus, "[s]eparately represented clients do not, by the mere fact of cooperation …, impliedly undertake to exchange all information concerning [a] matter of common interest."  Restatement (Third) of the Law Governing Lawyers § 76 cmt. c (2000). Accordingly, DOJ cannot claim a common legal interest simply because it hopes to prevail in its

lawsuit against Georgia, while each third-party organization also wishes to "prevail[] in their lawsuits." DOJ Mot. at 13. More is required.

DOJ's supposition (at 13) of a joint interest in enforcing the Voting Rights Act also falls short. For one thing, many of the cases challenging SB 202 include claims beyond just Voting Rights Act claims. *See* Pls.' Stmt. of Material Facts ¶¶ 17–18. Unlike DOJ, the other plaintiffs variously assert claims against Georgia under such provisions and theories as the First, Fourteenth and Fifteenth Amendments to the U.S. Constitution, violations of the Americans with Disabilities Act, violations of the Civil Rights Act of 1964, and claims of unlawful voter intimidation. If DOJ had a shared legal interest in those claims, DOJ could have included such claims in its lawsuit. And, even under those laws, the plaintiff organizations advance various claims—including substantive and procedural due process claims, First Amendment speech and expression claims, void for vagueness claims, equal protection claims, and many others—that are not advanced by DOJ.

Additionally, beyond the significantly different legal claims brought by DOJ and the various third-party organizations, the lawsuits challenged different parts of SB 202. While DOJ focused its claims on only a small subset of SB 202, *see* Compl. ¶ 2, *United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga.), other plaintiffs challenged various other provisions of SB 202 including the prohibition on mobile voting units, allowing challenges to voter qualifications, and allowing the State Election Board to conduct performance reviews of county elections superintendents in certain circumstances. *See, e.g*, Am. Compl. ¶¶ 133–69, *Ga. State Conf. of NAACP*, No. 1:21-cv-01259-JPB (N.D. Ga. filed May 28, 2021); Am. Compl. ¶¶ 67–110, *New Ga. Proj.*, No. 1:21-cv-01229-JPB (N.D. Ga. filed May 17, 2021). And further, before the Northern District of Georgia consolidated the cases, they were at different procedural postures. Before that court denied the

motions to dismiss, then, it was entirely possible that some cases would be dismissed, some would proceed in part, and others would proceed in full.[4]

Accordingly, before the consolidation order, these lawsuits were proceeding separately, involved different legal claims and theories, and involved different facts. In light of this, DOJ clearly has not shown that it shared the required "*identical … legal interest*" with the third-party organizations. *Bowles*, 224 F.R.D. at 252 n.7 (emphasis added).[5]

This shortcoming of DOJ's motion is confirmed by simply trying to identify the precise common legal interest—something DOJ does not do. Is the shared interest enjoining SB 202? It can't be, as no party in the SB 202 litigation challenges the act in its entirety. Is the shared interest enjoining *specific parts* of SB 202? Again, it can't be that, given that the various parties challenge different parts of SB 202. Or is it a shared interest in advancing certain interpretations of the Voting Rights Act and the U.S. Constitution? Here again, it can't be that, because the various organizations rely on different laws and claims in their lawsuits.

---

[4] This undermines DOJ's argument for a separate reason. After the Supreme Court's *Klamath* decision, courts in this Circuit have held that "it appears that the law in this Circuit does require that outside consultants 'lack an independent interest.'" *Am. Oversight v. U.S. Dep't of Health & Human Servs.*, 380 F. Supp. 3d 45, 54 (D.D.C. 2019). Yet, as noted, the various plaintiff organizations filed their complaints *before* DOJ filed its complaint. It stands to reason, therefore, that each organization had an "independent interest" in its lawsuit and in the decisions about how each such lawsuit would proceed. Indeed, each entity likely has its own independent interest in maintaining the litigation for various fundraising and public relations reasons. Those are certainly independent of any interest DOJ purports to advance.

[5] On this point, DOJ concedes (at 13) that the question of a common legal interest is different before and after the district court's consolidation order. After the consolidation order, DOJ argues that it shares a common interest because that order required it to "make coordinated filings" with the other plaintiffs. As noted above, Georgia does not challenge that proposition. *See supra* n.2. For communications *before* the consolidation order, in contrast, DOJ rests (at 13) entirely on the broad and unsupported statement that it shares a "common interest [with the other plaintiffs] in enforcing the Voting Rights Act and prevailing in their lawsuits." As discussed herein, that argument fails.

Ultimately, under DOJ's theory, it may conceal nearly all communications it exchanges with every interest group engaged in trying to block common-sense election laws like SB 202. But this runs directly counter to FOIA. Indeed, as Attorney General Garland recently confirmed in DOJ's FOIA Guidelines, FOIA is "a vital tool for ensuring transparency, accessibility, and accountability in government." Mem. from Merrick B. Garland, U.S. Att'y Gen. to Heads of Exec. Dept's & Agencies at 1 (Mar. 15, 2022) (hereinafter "FOIA Guidelines"), https://www.justice.gov/ag/page/file/1483516/download. And, as Attorney General Garland further emphasized, DOJ should operate under a "presumption of openness." *Id.* Here, DOJ's reliance on a broad and unsupported interpretation of a "common legal interest" fails to satisfy this presumption of openness—even as it violates FOIA.[6]

Because DOJ has failed to carry its burden of establishing that it exchanged communications before the December 23, 2021 consolidation order in pursuit of a common legal interest, DOJ waived any privilege over those communications when it exchanged them with third parties. *Minebea*, 228 F.R.D. at 16. Accordingly, DOJ cannot withhold these communications pursuant to Exemption 5 as they were not and are not privileged.

---

[6] The Attorney General's guidelines also emphasize that an agency must consider closely the foreseeable harm it asserts disclosure may cause. FOIA Guidelines at 1. DOJ has not done so here. For instance, DOJ suggests (at 20, 23) that release would "ultimately harm the efficient operation of the courts, which often call upon the Department to coordinate with others, particularly in complex Voting Rights Act cases." Not so here. Georgia only challenges DOJ's withholding of communications that it *voluntarily* exchanged with third parties prior to the district court's consolidation order. Similarly, the Russ Declaration claims (at ¶ 31) that release would cause harm by "hampering the ability of the United States and other plaintiff groups … to coordinate various aspects of discovery to avoid duplication and confusion[.]" Again, not so. Now that the district court has consolidated various SB 202 cases, Georgia is not challenging the withholding of such communications because the district court has ordered the plaintiffs to coordinate their efforts. In short, DOJ fails to identify a foreseeable harm that warrants withholding of communications exchanged before December 23, 2021.

**III.    DOJ's Attempt to Rely on the Consultant Corollary Also Fails.**

DOJ's motion suffers from one final shortcoming.  Even if the Court concludes that DOJ has demonstrated a common legal interest and entered a common interest agreement with the third-party organizations, and even if the various communications are protected by a privilege, that does not mean DOJ has demonstrated that it may withhold the communications it exchanged before the December 23, 2021 consolidation order.  Rather, Exemption 5 has a precursor requirement: internality.  The "communication must be 'inter-agency or intra-agency.'"  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (quoting 5 U.S.C. § 552(b)(5)).  And this requirement is separate from the requirement that DOJ demonstrate the existence of a privilege.  *Id.* ("the first condition [internality] of Exemption 5 is no less important than the second).[7]

Of course, DOJ does not attempt to argue (because it can't) that the withheld communications are internal.  Rather, it asks this Court to import the "consultant corollary" case law.  But those cases are inapplicable here.

To be sure, the D.C. Circuit has recognized "in some circumstances a document prepared outside the Government may nevertheless qualify as an intra-agency memorandum under Exemption 5 under the so-called 'consultant corollary' to Exemption 5."  *Nat'l Inst. of Mil. Just. v. U.S. Dep't of Def.*, 512 F.3d 677, 682 (D.C. Cir. 2008) (cleaned up) [*NIMJ*].  This is because "federal agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unravelling their knotty

---

[7] A few cases might appear to collapse the privilege and internality prongs.  *See, e.g., Ryan v. Dep't of Justice*, 617 F.2d 781, 789–90 (D.C. Cir. 1980).  But both the D.C. Circuit and District Court have confirmed these are distinct requirements.  *Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005); *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 131 (D.D.C. 2019).

complexities." *Id.* at 683 (quoting *Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989)).  In such cases, to satisfy the internality requirement through the consultant corollary doctrine, the consultant must "stand in the shoes of fellow agency employees, when they have been specifically asked to provide input from a neutral perspective." *Am. Oversight*, 380 F. Supp. 3d at 55.  Accordingly, it is not enough that "the agency found the 'perspective' useful and potentially influential," rather, the communications must "play[] essentially the same part in an agency's process of deliberation as documents prepared by agency personnel." *Id.*  In other words, it must be "textually possible" to describe the withheld communications as "intra-agency," otherwise FOIA does not allow the withholding.  *Klamath*, 532 U.S. at 9.

Thus, under these decisions, a purported consultant communicating with the agency cannot be pursuing its own interests rather than advising the agency.  And this important distinction is well illustrated by the Supreme Court's *Klamath* decision, which considered a FOIA request submitted to the Bureau of Indian Affairs.  *Id.* at 6.  The request sought "disclosure of communications between the Bureau and certain Indian tribes—namely, six documents prepared by Indian tribes at the Bureau's request and one document prepared by the Bureau, all of which related to the allocation of water rights among competing users/uses." *McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) (c*iting Klamath,* 532 U.S. at 6). The Supreme Court held that Exemption 5 did *not* apply, because the communications were not intra-agency, and it thus concluded that "we need not reach step two of the Exemption 5 analysis and enquire whether the communications would normally be discoverable in civil litigation." *Klamath*, 532 U.S. at 12 n.3.

19

Further, in rejecting the Bureau's reliance on the consultant corollary doctrine, the Supreme Court "noted that in the 'typical' case in which a court applies the consultant corollary, 'the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it'" and  so the consultant's "'only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do.'"  *McKinley*, 647 F.3d at 336 (quoting *Klamath*, 532 U.S. at 11).   As the D.C. Circuit later explained, "[t]he Indian tribes, by contrast, 'necessarily communicate with the Bureau with their own, albeit entirely legitimate, interests in mind.'"  *Id.* at 336–37 (quoting *Klamath*, 532 U.S. at 12).

In light of *Klamath*, the D.C. Circuit has repeatedly emphasized that the purported consultant must not be representing its own interests.  *See, e.g.*, *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 201–02 (D.C. Cir. 2014) ("In the wake of *Klamath*, we have confined the consultant corollary to situations where an outside consultant did not have its own interests in mind").   And, as another Court in this District explained: "To fall within the consultant corollary, defendant must establish that [the purported consultant] did not represent its own interests 'or the interest of any other client' when it advised the [agency]."  *Ctr. for Biological Diversity v. United States Env't Prot. Agency*, 369 F. Supp. 3d 128, 135 (D.D.C. 2019).  A true "consultant" for purposes of the consultant corollary thus gives advice sought out by the agency, and acts solely with the agency's interests in mind.

Here, DOJ fails to provide any evidence that the third-party organizations were consulted as advisors to DOJ.  Rather, one can reasonably assume that the organizations wanted DOJ to follow *their* own litigation strategy, serve *their* own desired legal ends, and reduce *their* expenses

with DOJ bearing as much of the litigation costs as possible.[8]   This is a far cry from the true

consultants, brought in for pure legal analysis, seen in *NIMJ*.[9]   And, while DOJ and the third-party

organizations may have planned litigation together, those organizations did not do so "stand[ing]

in the shoes of fellow agency employees[.]"   *Am. Oversight*, 380 F. Supp. 3d at 55.

Lastly, DOJ's reliance on the consultant corollary faces one additional obstacle.   Given

DOJ's expertise in the area of voting rights and litigation, it is difficult to understand how it could

argue that it was receiving advice from the outside organizations acting as consultants.   Indeed,

this is not a "problem[] outside [DOJ's] ken," where it "clearly is preferable that they enlist the

help of outside experts skilled at unravelling their knotty complexities."   *Formaldehyde Inst.*, 889

---

[8] This also underscores why DOJ's reliance on the out-of-circuit decision in *Hunton* is misplaced. There, DOJ and the private third party alleged they had a common interest in challenging the same preliminary injunction. 590 F.3d at 281.  Here, DOJ and the private parties do not, as did the parties in *Hunton*, seek the same legal result.  The parties here seek to enjoin different provisions of SB 202—a far cry from seeking to obtain or reverse the same injunction.  And DOJ's reliance (at 19) on the non-binding district court decision in *American Small Business League v. Department of Defense*, 372 F. Supp. 3d 1018, 1030 (N.D. Cal. 2019), fails for the same reason.  In that case, the Northern District of California relied on *Hunton*, which, as just explained, is inapplicable. Accordingly, this out-of-circuit district court decision should not guide the outcome here.

[9] To be sure, as DOJ notes (at 14–16), courts have held that an agency may rely on Exemption 5 to withhold certain communications that it exchanges with non-governmental entities.  However, none of those cases helps DOJ here.  Indeed, its reliance (at 14–15) on *NIMJ*, *Ryan*, and other similar cases underscores why DOJ's argument is misplaced here.  In *NIMJ*, DOD stated that it communicated with outside entities to obtain information "because their previous experience in government and/or their expertise made them uniquely qualified to provide advice to the General Counsel's office on the Military Commissions procedures."   512 F.3d 677, 679 (quoting agency declaration).  Yet, unlike *NIMJ* and the other cases DOJ cites, DOJ cannot claim here to have been relying on advice from these third-party entities for advice or because of their expertise.  DOJ, if anything, was likely giving *its* expertise to these organizations.   Equally misplaced is DOJ's reliance (at 17) on cases applying the consultant corollary to agency communications with Congress.  Indeed, as the court in *American Oversight v. U.S. Department of Health and Human Services* confirmed, the consultant corollary focuses, among other things, on the third-party consultant providing advice at the solicitation of the agency.  *See* No. 17-cv-0827-EGS, 2022 WL 1719001, at *14 (D.D.C. May 27, 2022).  But as noted herein, there is no basis to conclude that DOJ needed, or even sought, advice from the various third-party entities.  Accordingly, these cases provide DOJ no support.

F.2d at 1122.  Rather, election litigation and litigation strategy are squarely in "[DOJ's] ken," *id.*, and it is more likely that DOJ was *giving* advice rather than receiving it.  And, because DOJ's motion and *Vaughn* index fail to address this distinction, DOJ has not carried its burden of proof on this issue.

## CONCLUSION

DOJ's motion suffers from several fatal flaws and should be denied.  For all communications exchanged before July 28, 2021, DOJ failed to establish that it had entered into any common interest agreement with the third-party organizations.  Without such a showing, DOJ cannot withhold those communications.  And, for all communications exchanged before the Northern District of Georgia consolidated the SB 202 litigation on December 23, 2021, DOJ failed to establish any common legal interest that it shared with the various third-party organizations.  Finally, for these same communications, DOJ has failed to satisfy its independent burden of demonstrating that they satisfy Exemption 5's internality requirement.  Accordingly, the Court should deny DOJ's motion and order DOJ to produce all communications exchanged before December 23, 2021, that it has withheld pursuant to Exemption 5.

September 29, 2022

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
State Law Department
40 Capitol Square, S.W.
Atlanta, Georgia 30334

Respectfully submitted,

*/s/ Gene C. Schaerr*
Gene C. Schaerr
D.C. Bar # 416368
Erik S. Jaffe
D.C. Bar # 440112
H. Christopher Bartolomucci
D.C. Bar # 453423
Brian J. Field
D.C. Bar # 985577
SCHAERR | JAFFE LLP
1717 K Street, N.W.
Suite 900
Washington, D.C. 20006
202-787-1060
gschaerr@schaerr-jaffe.com

Bryan P. Tyson*
Georgia Bar # 515411
Bryan F. Jacoutot*
Georgia Bar # 668272
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: (678) 336-7249
btyson@taylorenglish.com

* *Pro hac vice* motions forthcoming